**Nos. 2024-1243, 2024-1244**

# United States Court of Appeals
# for the Federal Circuit

---

THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,

*Plaintiff-Appellee*

v.

GEN DIGITAL INC., FKA SYMANTEC CORPORATION, FKA NORTONLIFELOCK, INC.,

*Defendant-Appellant*

QUINN EMANUEL URQUHART & SULLIVAN, LLP.,

*Sanctioned Party-Appellant*

---

Appeal from the District Court for the Eastern District of Virginia in 3:13-cv-00808-MHL, Judge M. Hannah Lauck

---

## COLUMBIA'S CORRECTED NONCONFIDENTIAL OPPOSED MOTION FOR LEAVE TO FILE A SUPPLEMENTAL APPENDIX

---

GARRARD R. BEENEY
DUSTIN F. GUZIOR
STEPHEN J. ELLIOTT
ALEXANDER N. GROSS
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000

June 12, 2024

JEFFREY B. WALL
MORGAN L. RATNER
OLIVER ENGEBRETSON-SCHOOLEY
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW, Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500

*Counsel for Appellee The Trustees of Columbia University in the City of New York*

## CERTIFICATE OF INTEREST

Counsel for Appellee Trustees of Columbia University in the City of New York certifies the following:

1. **Represented Entities.**  Provide the full names of all entities represented by undersigned counsel in this case.  Fed. Cir. R. 47.4(a)(1).

    The Trustees of Columbia University in the City of New York

2. **Real Party in Interest.**  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.  Fed. Cir. R. 47.4(a)(2).

    None.

3. **Parent Corporations and Stockholders.**  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  Fed. Cir. 47.4(a)(3).

    None.

4. **Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

    **Sullivan & Cromwell LLP:**
    Brittany Sonia Bruns, Christopher Alan Graham, Gillian Palmer Seaman, Jessica Rogers Ecker, Rohiniyurie Tashima, Steve Hsieh, Wen-Ying Angela Chang, William Rudolph Kleysteuber, IV

**Irell & Manella LLP:**
Crawford Maclain Wells, David I. Gindler, Douglas Allen Fretty, Gavin Snyder, Jason G. Sheasby, Michael Henry Strub, Jr., Richard M. Birnholz, Thomas Charles Werner, Xinlin Li

**Spotts Fain PC:**
Clay Sutton Hester, Dana Duane McDaniel, John Michael Erbach, Maurice Francis Mullins, Robert Michael Tyler

5. **Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

- *The Trustees of Columbia University in the City of New York* v. *Gen Digital Inc.*, Federal Circuit Appeal No. 24-1244, appeal from Case No. 3:13-cv-00808-MHL in the United States District Court for the Eastern District of Virginia
- *The Trustees of Columbia University in the City of New York* v. *Symantec Corporation*, Federal Circuit Appeal No. 15-1146, appeal from Case No. 3:13-cv-00808-JRS in the United States District Court for the Eastern District of Virginia
- *The Trustees of Columbia University in the City of New York* v. *Symantec Corporation*, Consolidated Appeal Nos. 16-2551, 16-2554, 16-2630, 16-2631, appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2015-00375, IPR2015-00377

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: New York, New York
      June 12, 2024

                                    */s/ Garrard R. Beeney*
                                    GARRARD R. BEENEY
                                    SULLIVAN & CROMWELL LLP
                                    125 Broad Street
                                    New York, New York 10004
                                    Telephone:  (212) 558-4000

                                    *Counsel for Appellee The Trustees of Columbia University in the City of New York*

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ................................................................... 1

BACKGROUND ..................................................................... 3

    A.   Proceedings Before The District Court ................................... 3

    B.   Proceedings Before This Court ............................................ 9

ARGUMENT ........................................................................ 11

    THIS COURT SHOULD EXERCISE ITS INHERENT
    EQUITABLE AUTHORITY TO SUPPLEMENT THE
    RECORD WITH DACIER'S DECLARATION ................................... 11

    A.   The Declaration Establishes the Proper
        Resolution of the Quinn Appeal ......................................... 13

    B.   The Declaration Is Relevant To Quinn's
        Misrepresentations To The District Court
        And This Court ............................................................. 15

    C.   The Declaration Was Previously Unavailable ......................... 17

    D.   Supplementation Is Efficient And In The
        Interests Of Justice ....................................................... 18

CONCLUSION ..................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Amstar Corp.* v. *Envirotech Corp.*,
  730 F.2d 1476 (Fed. Cir. 1984) ............................................. 19

*Anthony* v. *United States*,
  667 F.2d 870 (10th Cir. 1981) ............................................... 11

*Apple, Inc.* v. *Zipit Wireless, Inc.*,
  No. 21-1760, Dkt. 22-1, Dkt. 38 (Fed. Cir. Jan. 25, 2022) ............ 12, 15

*Bell* v. *Pfizer, Inc.*,
  716 F.3d 1087 (8th Cir. 2013) ............................................... 17

*Cabalceta* v. *Standard Fruit Co.*,
  883 F.2d 1553 (11th Cir. 1989) ............................................. 17

*Cedar Coal Co.* v. *United Mine Workers of Am.*,
  560 F.2d 1153 (4th Cir. 1977) ............................................... 11

*Colbert* v. *Potter*,
  471 F.3d 158 (D.C. Cir. 2006) ..................................... 12, 13, 17

*CSX Transp., Inc.* v. *City of Garden City*,
  235 F.3d 1325 (11th Cir. 2000) .............................. 11, 13, 18

*Dakota Indus.* v. *Dakota Sportswear, Inc.*,
  988 F.2d 61 (8th Cir. 1993) ............................... 11, 12, 15, 16

*Fort James Corp.* v. *Solo Cup Co.*,
  412 F.3d 1340 (Fed. Cir. 2005) ............................................. 14

*Gibson* v. *Blackburn*,
  744 F.2d 403 (5th Cir. 1984) ................................................ 17

*Hawkins* v. *Stables*,
  148 F.3d 379 (4th Cir. 1998) ................................................ 14

*Landreth* v. *United States*,
797 F. App'x 521 (Fed. Cir. 2020) (per curiam) ............................ 12, 17

*M Welles & Assocs., Inc.* v. *Edwell, Inc.*,
69 F.4th 723 (10th Cir. 2023) ................................................ 14

*United States ex rel. Minna Ree Winer Children's Class Tr.*
v. *Regions Bank of La.*,
1997 WL 119971 (5th Cir. Mar. 13, 1997) (per curiam) .................... 11

*Ross* v. *Kemp*,
785 F.2d 1467 (11th Cir. 1986) ............................................. 13

*Simpson* v. *Brown Cnty.*,
860 F.3d 1001 (7th Cir. 2017) ............................................. 11

*Teamsters Local Union No. 117* v. *Wash. Dept. of Corr.*,
789 F.3d 979 (9th Cir. 2015) ........................................... 11, 17

*Thompson* v. *Bell*,
373 F.3d 688 (6th Cir. 2004) .............................................. 11

*United States* v. *Aulet*,
618 F.2d 182 (2d Cir. 1980) ............................................... 11

*United States* v. *Balderama-Iribe*,
490 F.3d 1199 (10th Cir. 2007) ......................................... 11, 15

*United States* v. *Farrell*,
921 F.3d 116 (4th Cir. 2019) .............................................. 13

*United States* v. *Kennedy*,
225 F.3d 1187 (10th Cir. 2000) ............................................ 12

*United States* v. *Murdock*,
398 F.3d 491 (6th Cir. 2005) .............................................. 13

## Other Authorities

16A Charles Alan Wright & Arthur R. Miller,
*Federal Practice & Procedure* § 3956.4
(5th ed. 2019 & Supp. 2023) .............................................. 11

20 Moore's Federal Practice—Civil § 310.10 (2024) ............................... 11

American Bar Association Model Rules of Professional
    Conduct, Rule 3.3 .................................................................... 19

**CONFIDENTIAL MATERIAL**

Pursuant to Federal Circuit Rule 25.1(e)(1)(B), Appellee The Trustees of Columbia University in the City of New York (Columbia) identifies redacted material appearing in two locations in the Addendum to this motion. The general nature of the redacted material at Appx16063 is an email from Nathan Hamstra (Quinn Emanuel Urquhart & Sullivan, LLP (Quinn)) to Marc Dacier regarding Columbia's trial witness list, which Quinn and Gen Digital, Inc. (Norton) designated as confidential in the district court. The general nature of the redacted material at Appx19383-88 is an excerpt of Norton's memorandum in support of its motions *in limine* 5 and 6, which Quinn and Norton designated as confidential in the district court, requesting that the district court not give a missing witness instruction and arguing that evidence regarding out-of-court conversations with Marc Dacier should be excluded from trial.

# INTRODUCTION

Pursuant to Federal Circuit Rules 27 and 30, Appellee The Trustees of Columbia University in the City of New York (Columbia) requests that this Court exercise its equitable authority to supplement the record with a recent declaration from Dr. Marc Dacier (Declaration). Dacier is a key third-party witness for issues raised in the appeal by Sanctioned Party-Appellant Quinn Emanuel Urquhart & Sullivan, LLP (Quinn). The district court held Quinn in contempt for its refusal to comply with a court order requiring Quinn to disclose certain information obtained from Dacier (Order), whom Quinn claimed to represent personally. In its appeal, Quinn argues that it could not have complied with the Order because compliance would have violated Dacier's attorney-client privilege. The Declaration contradicts that defense and other representations central to Quinn's appeal. Dacier states, among other things, that he did not want Quinn's representation, that he agreed to that representation only when informed that he had no choice, and that he has no recollection of Quinn ever consulting with him about the Order or seeking—much less receiving—his authorization to assert privilege. In short, the Declaration disposes of Quinn's appeal.

Columbia had no way to obtain this dispositive evidence sooner. Quinn's argument on appeal is different from its post-trial argument to the district court, which focused on the contention that Quinn had substantially complied with the district court's Order—a factual contention that the district court rejected. At that time, Dacier, located in Saudi Arabia, declined to discuss with Columbia's counsel the representations that Quinn made in support of its substantial-compliance argument. But when Dacier was informed of what Quinn argued in this appeal—that complying with the Order would have violated *Dacier's* privilege—he agreed to correct the record with the facts.

The current record contains more than enough evidence for this Court to affirm the district court's contempt holding. The Declaration, however, provides direct evidence of the misconduct that the district court inferred from other strong evidence. It also establishes that Quinn's contempt cannot be justified by the need to protect any attorney-client privilege, since the client did not assert the privilege. Quinn's non-compliance with the disclosure Order was about hiding its misconduct—telling Dacier that he had to accept Quinn as his counsel and

misrepresenting Dacier's decisions to the district court—not protecting a client's privilege.[1]

Counsel for Norton and counsel for Quinn have indicated that they oppose the motion. Counsel for Quinn has indicated that they will respond. Counsel for Norton has indicated that they will review this motion before deciding whether to file a response.

## BACKGROUND

### A.    Proceedings Before The District Court

In the district court, Columbia claimed that Norton had both infringed Columbia's patents and fraudulently patented other computer-science technology invented and disclosed to Norton by Columbia professors. Dacier, who was a Norton employee at the time of the fraud but left about six months after this litigation began, was a critical witness for the fraud claim. Several years after his 2014 deposition in this case—at which he gave testimony adverse to Norton—Dacier told Columbia professors at a professional conference that Norton's patenting of Columbia's technology was "wrong," that he had

---

[1] To be clear, Columbia has no basis to believe that Quinn's *appellate* counsel was aware of the facts stated in the Declaration. It was attorneys at Quinn who made the relevant representations in the district court.

tried to stop Norton from doing it, and that he was "sorry" for what Norton had done. Appx15988-90; Appx52266-67; Appx52479. Dacier had direct knowledge of Norton's fraudulent intent, and he told Columbia that he would be willing to provide that knowledge by testifying at trial, Appx15983-84.

Dacier repeated that he was willing to testify at trial to a Columbia professor, to Columbia's counsel, to Norton, and to Quinn. Appx15988-90; Appx15980-87; Appx16022-23; Appx16061-62. During this period, Dacier repeatedly stated orally and in writing that he did not believe that he was represented by counsel, that he did not want to be represented by counsel, and that he "[was] not asking for [Norton's counsel at Quinn] to represent [him]." Appx16062; *see* Appx15980-87.

When it became clear in 2020 that Dacier was willing to testify at trial, Quinn—which had not communicated with Dacier since 2014, Appx16060—asserted that it continued to represent Dacier personally. Dacier said that he did not want Quinn's representation, but a Norton lawyer told Dacier that Quinn "do[es] in fact continue to represent [him]." Appx16073. To avoid "any possible [] interference" with his testimony, Dacier copied Columbia's counsel into his e-mails with Quinn and

4

Norton. Appx16060. After those e-mails, direct communication from Dacier to Columbia ceased, and until April 2022, the district court and Columbia had only Quinn's representations about what Dacier (Quinn's purported "client") had said and decided.

In addition to Quinn's statements to the district court that it represented Dacier personally, Quinn produced a declaration dated June 17, 2020, and signed by Dacier that stated: "Quinn Emanuel has represented me since June 18, 2014, and continues to represent me, in connection with the Columbia case." Appx16552.[2] In subsequent briefs, Quinn continued to claim that Dacier wished to be represented by Quinn. Quinn also repeatedly represented to the district court that Dacier had changed his mind and was no longer willing to testify. *See*, *e.g.*, Appx20356, Appx21475.

---

[2]    In the recent Declaration, Dacier says he was advised that Norton "could assert Quinn's representation over [him], regardless of [his] own views." Ex. A ¶ 9. Dacier explains that Quinn "demanded" that he sign the 2020 declaration, and he even quotes his e-mail transmitting the signed declaration "as a follow up to [Quinn's] demand." *Id.* ¶¶ 7, 9. Dacier says that he would not have signed the 2020 declaration if he had known that he was not obligated to accept Quinn as his personal counsel. *Id.* ¶ 10.

5

Before trial, Quinn filed two motions *in limine*, on behalf of Norton, relating to Dacier.  Quinn asked the court to exclude from evidence Dacier's statements to the Columbia professors that Norton's misappropriation of Columbia's invention was "wrong" and that he was "sorry" for what Norton had done.  Appx43, Appx19386-88.  Quinn also asked that the court not give a missing-witness instruction because it was Dacier who had "decided" not to testify, and argued that "Norton did not cause Dr. Dacier to be unavailable at trial" because "Dacier's decision not to [testify] is not the result of any 'wrongful' action by Norton." Appx19387-88, Appx37278.

The district court found that Norton, through Quinn, had "rendered Dr. Dacier unavailable," and found that a missing-witness instruction was appropriate, Appx53, Appx40478—a finding neither Norton nor Quinn challenges on appeal.  The district court also questioned the truth of the representation that Dacier had decided not to testify at trial, noting an "aura of gamesmanship:" "[o]nce Quinn Emanuel entered the conversation, Columbia and the Court were told by Norton's counsel that Dr. Dacier reversed his previously unequivocal and oft-expressed willingness to testify," and "Dacier's complete turnabout on whether he

would testify has the unfortunate appearance that counsel for Norton" was "shielding adverse testimony." Appx49-51.

In addition, the district court questioned whether Dacier's one-sentence 2020 declaration—which was the only direct evidence from Dacier himself—accurately represented Dacier's wishes.  As the court observed, "Dacier stated more than once that he did not want representation and did not seek it," and "[n]othing shows that Dr. Dacier knew he could disengage Quinn Emanuel." Appx46-49.  The court was "most disturbed by counsel for Norton *misrepresenting* to Dr. Dacier in 2021, 'that the Court concluded he is represented by Norton's Counsel.'" Appx49.  The court noted that that statement was "manifestly untrue" because the court had specifically declined to make any such finding. Appx49, Appx17738.  The court concluded that Quinn could not comply with its ethical obligations to Dacier—who wanted to testify against Norton's interests—while also representing Norton.  Appx50.

In March 2022, to determine the actual facts regarding Dacier's decisions, the district court ordered Quinn to disclose on the record "any information garnered from Dr. Dacier" after he made his statements to the Columbia professors in 2017 (which effectively encompassed only

7

information Dacier provided to Quinn after Quinn asserted representation over Dacier in April 2020 because Quinn had not communicated with Dacier between 2014 and April 2020, not even to inform its "client" that the case had resumed in 2018). Appx57; *see* Appx34353. Quinn refused to comply. Appx34041. After the compliance deadline, Quinn submitted its own declaration purporting to disclose some, but not all, of the information it had obtained from Dacier. Appx35936-43 (Quinn Declaration). The Quinn Declaration asserted that Dacier "stated that he did not want to travel to the United States for trial, and would prefer to end his involvement in the litigation." Appx35940. The Quinn Declaration also asserted that Dacier had "confirmed that he wanted to continue to be represented by Quinn," and had "voluntarily signed a declaration to that effect." *Id.* In the district court, Quinn argued that it should not be held in contempt because the Quinn Declaration substantially complied with the Order. Appx43950.

The district court held that the Quinn Declaration did not comply with the Order because it was incomplete—due at least to gaps in the chronology of the Quinn-Dacier contacts—and also was "explicitly contradict[ed] [by] email correspondence from Dr. Dacier already in the

record." Appx92. That correspondence included Dacier's repeated statements in 2019 and 2020 that he was willing to testify and that he was "not asking for [Norton's counsel, Quinn] to represent [him]." Appx16061-62. It also included Dacier's e-mails to Norton's new counsel in April 2022 stating that he "ha[d] continuously said" that he was "happy to help the judicial process" and "could have frozen some days to make [him]self available" to testify; that he believed his testimony would be "harmful for Norton's case;" and that he could "see now why the Quinn team has done what they have done over the years, while pretending to 'represent' [him]," including "the Quinn team" repeatedly instructing Dacier "that they did not want [him] to do anything" with respect to the trial. Appx35887-90. Rejecting Quinn's factual contention about substantial compliance with the Order, the district court held Quinn in contempt. Appx100.

### B.    Proceedings Before This Court

On appeal, Quinn argues that its non-compliance was compelled by Dacier's privilege, and in support makes critical representations about Dacier's purported decisions. Quinn repeats that Dacier "wanted to continue to be represented by Quinn," and asserts that his 2020

declaration "leaves no doubt that Dr. Dacier and Quinn Emanuel remained in an attorney-client relationship … until March 2022, when Quinn Emanuel withdrew from the representation." Br. 14, 51. Quinn now argues that, because of that supposed attorney-client relationship, it could not "compl[y] with the district court's order by disclosing Dr. Dacier's privileged communications without his waiver or consent." Br. 49. As Quinn's argument acknowledges, privilege is controlled by the client—not counsel. So any attorney-client communications were privileged only if Dacier had decided to assert his privilege and declined to provide the waiver or consent that Quinn claims was necessary for it to comply with the Order.

Because Quinn now asserts attorney-client privilege as its defense to contempt, Columbia's counsel contacted Dacier to ask about that assertion. Dacier, who lives in Saudi Arabia, had declined to speak with Columbia's counsel in 2022, expressing fear of retaliation from Quinn and Norton. Appx47474-77. But this time he felt differently, expressing surprise that Quinn had invoked his privilege as an excuse for non-compliance with a court order.

Dacier provided the Declaration that is attached as Exhibit A to this motion.  In the Declaration, Dacier states that he does not recall Quinn ever consulting with him about the Order; he never asserted privilege; and he does not recall being informed that Quinn was invoking privilege on his behalf as a basis to refuse compliance with the Order. Dacier further states that if Quinn *had* consulted with him, he would have instructed Quinn to comply with the Order.[3]

## ARGUMENT

## THIS COURT SHOULD EXERCISE ITS INHERENT EQUITABLE AUTHORITY TO SUPPLEMENT THE RECORD WITH DACIER'S DECLARATION.

Courts of appeals have "an inherent equitable power to supplement the record on appeal with matters that were not before the district court." *United States* v. *Balderama-Iribe*, 490 F.3d 1199, 1202 n.4 (10th Cir. 2007); *see* 16A Charles Alan Wright & Arthur R. Miller, *Federal Practice*

---

[3] Quinn also asserts on appeal that "Dacier ... informed Quinn Emanuel that he had decided not to … testify at trial." Br. 14.  The Declaration refutes any such alleged change of heart, and confirms the district court's inference that Dacier was willing to testify.  Ex. A ¶ 12. Quinn also argues that the 2020 declaration "leaves no doubt" that Quinn represented Dacier, Br. 51, but the Declaration explains that Dacier was informed that he had to accept Quinn's "representation" and that Quinn "demanded" that he sign the 2020 declaration, Ex. A ¶¶ 7, 9-10.

*& Procedure* § 3956.4 (5th ed. 2019 & Supp. 2023) ("In special circumstances, a court of appeals may supplement the record to add material not presented to the district court."); 20 Moore's Federal Practice—Civil § 310.10 (2024) ("In extraordinary situations, the circuit court may consider material not presented to the district court when it believes the interests of justice are at stake."). Although that inherent authority is invoked judiciously, courts have exercised it where exceptional circumstances warrant.[4]

Courts have enumerated several non-exclusive factors to consider in determining whether to supplement the record, among them

---

[4] *See, e.g., United States* v. *Aulet*, 618 F.2d 182, 185-87 (2d Cir. 1980); *Cedar Coal Co.* v. *United Mine Workers of Am.*, 560 F.2d 1153, 1166 (4th Cir. 1977); *United States ex rel. Minna Ree Winer Children's Class Tr.* v. *Regions Bank of La.*, 1997 WL 119971, at *3 (5th Cir. Mar. 13, 1997) (per curiam); *Thompson* v. *Bell*, 373 F.3d 688, 690 (6th Cir. 2004), *rev'd on other grounds*, 545 U.S. 794 (2005); *Simpson* v. *Brown Cnty.*, 860 F.3d 1001, 1004 n.1 (7th Cir. 2017); *Dakota Indus.* v. *Dakota Sportswear, Inc.*, 988 F.2d 61, 63-64 (8th Cir. 1993); *Teamsters Local Union No. 117* v. *Wash. Dept. of Corr.*, 789 F.3d 979, 986 (9th Cir. 2015); *Anthony* v. *United States*, 667 F.2d 870, 875 (10th Cir. 1981); *CSX Transp., Inc.* v. *City of Garden City*, 235 F.3d 1325, 1330 (11th Cir. 2000); *Colbert* v. *Potter*, 471 F.3d 158, 165-67 (D.C. Cir. 2006). This Court recently allowed a party to supplement the record with evidence not before the district court to determine the veracity of a party's statements in a brief. *See Apple, Inc.* v. *Zipit Wireless, Inc.*, No. 21-1760, Dkt. 22-1 (Motion); Dkt. 38 (Order) (per curiam) (Fed. Cir. Jan. 25, 2022).

(i) "whether acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending issue," *United States* v. *Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000), *reh'g en banc denied*, (Nov. 17, 2000); (ii) whether the supplemental material is relevant to a misrepresentation before the district court, *Dakota Indus.*, 988 F.2d at 63-64; (iii) whether the supplemental material was previously unavailable, *Landreth* v. *United States*, 797 F. App'x 521, 524 (Fed. Cir. 2020) (per curiam); and (iv) "whether remand for the district court to consider the additional material would be contrary to the interests of justice and a waste of judicial resources," *Kennedy*, 225 F.3d at 1191. All of those factors weigh in favor of supplementing the record in the extraordinary circumstances here.

### A.    The Declaration Establishes the Proper Resolution of the Quinn Appeal.

"A primary factor [courts] consider in deciding a motion to supplement the record is whether acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending issues." *CSX Transp.*, 235 F.3d at 1330; *see Ross* v. *Kemp*, 785 F.2d 1467, 1474-75 (11th Cir. 1986); *United States* v. *Murdock*, 398

13

F.3d 491, 500 (6th Cir. 2005); *Colbert*, 471 F.3d at 165-66 (supplementing record where new evidence went "to the heart of the contested issue").

The Declaration offered here would resolve Quinn's appeal. Quinn argues that it could not "compl[y] with the district court's order by disclosing Dr. Dacier's privileged communications without his waiver or consent." Br. 49. That argument relies heavily on the proposition that "Dr. Dacier and Quinn Emanuel remained in an attorney-client relationship … until March 2022, when Quinn Emanuel withdrew from the representation." Br. 51. It also rests on the implicit premise that Quinn could not have complied with the Order because Dacier had asserted his privilege and would not waive it. After all, attorney-client privilege is controlled by the client, not the attorney. *United States* v. *Farrell*, 921 F.3d 116, 136 (4th Cir. 2019) ("[T]he privilege belong[s] to the client, not the lawyer." (second alteration in original)); *Hawkins* v. *Stables*, 148 F.3d 379, 384 n.4 (4th Cir. 1998).[5]

---

[5]   This Court "applies the law of the regional circuit, here the [Fourth] Circuit, with respect to questions of attorney-client privilege." *Fort James Corp.* v. *Solo Cup Co.*, 412 F.3d 1340, 1346 (Fed. Cir. 2005).

The Declaration refutes those two factual predicates of Quinn's appeal:  (i) that Dacier wanted Quinn to represent him and (ii) that Dacier asserted his privilege.  In fact, Dacier states that he never said that he "wanted Quinn to represent [him]," and did not voluntarily sign the 2020 declaration.  Ex. A ¶¶ 9-10.  And Dacier states that he has no recollection of Quinn's consulting with him about the Order, much less that he authorized Quinn to assert his privilege.  Indeed, the Declaration states that had he been asked, Dacier "would have wanted disclosure." *Id.* ¶¶ 4-5.  Thus, Dacier's declaration goes "to the heart of the contested issue."

## B.  The Declaration Is Relevant To Quinn's Misrepresentations To The District Court And This Court.

Several courts have recognized that supplementing the record on appeal is appropriate where new evidence is relevant to a party's misrepresentations or misstatements.  *See, e.g.*, *M Welles & Assocs., Inc.* v. *Edwell, Inc.*, 69 F.4th 723, 729-30 (10th Cir. 2023) ("recogniz[ing] that [a court's] inherent authority may be used 'to correct misrepresentations'").  For example, in *Dakota Industries*, the Eighth Circuit exercised its authority to supplement the record where a party was "less than forthcoming with the [district] court" and its

"misrepresentation, willful or otherwise, left the district court with an incomplete picture of" a particular issue. 988 F.2d at 63-64. As the Eighth Circuit recognized, "[i]f an appellate court could never consider new evidence in such cases, parties would have a distinct incentive to deceive the district courts, and the appellate courts would be powerless to remedy such deceptions." *Id.*; *see Balderama-Iribe*, 490 F.3d at 1202 n.4 (exercising authority to consider letter relevant to a "misstatement at the pretrial hearing"); *see also Apple*, No. 21-1760, Dkt. 22-1 (Motion); Dkt. 38 (Order) (ordering supplementation of record to include document showing that statements made in a party's brief were inaccurate).

Similar concerns are present here. The Declaration directly contradicts representations repeatedly made to the district court and this Court. First, the Declaration states that Quinn's repeated representation—to the district court and in Quinn's opening brief on appeal—that he "changed [his] mind and was unwilling to testify at trial … *is false.*" Ex. A ¶ 12 (emphasis added). Second, Dacier explains that Quinn and Norton misled him to believe that "Norton could assert Quinn's representation over [him], regardless of [his] own views." *Id.* ¶ 9. According to Dacier, Quinn demanded that he sign the 2020 declaration.

*Id.* ¶¶ 7, 9.  Dacier says that if he had "been informed that [he] was not obligated to accept the Quinn lawyers as [his] personal counsel, [he] would not have signed the [2020] declaration." *Id.* ¶¶ 9-10.  This directly contradicts the statements in the 2022 Quinn Declaration that Dacier "confirmed that he wanted to continue to be represented by Quinn" and "voluntarily signed a declaration to that effect."  Appx35940.  The Declaration is therefore necessary to correct Quinn's "misrepresentation[s]," which provide an "incomplete picture" of the core issue in Quinn's appeal—namely, whether Dacier's purported privilege can excuse contempt. *Dakota Indus.*, 988 F.2d at 63.

## C.    The Declaration Was Previously Unavailable.

The information in the Declaration was not previously available to Columbia.  In April 2020, Quinn instructed Columbia not to communicate with Dacier because Quinn claimed to represent him.  Appx16068.  In 2022, when Quinn finally abandoned its argument that it represented Dacier, Dacier was unwilling to speak with Columbia's counsel, expressing fear of retaliation.  Appx47474-77.  Only after the passage of time—combined with Quinn's attempt to use Dacier on appeal as the premise to excuse its contempt—was Dacier willing to correct the record.

17

The previous unavailability of this evidence, and the fact that it has become available because of Quinn's position on appeal, supports supplementation. *Cf. Landreth*, 797 F. App'x. at 524 (declining to supplement because evidence "was [not] previously unavailable"); *Bell* v. *Pfizer, Inc.*, 716 F.3d 1087, 1092 (8th Cir. 2013) (same).

### D.     Supplementation Is Efficient And In The Interests Of Justice.

This case has been pending since 2013, and this is the third appeal to this Court relating to this case.  Supplementation in this Court is the most efficient way to introduce the Declaration.  The direct evidence in the Declaration simply confirms the reasonable inferences that the district court drew from the circumstantial evidence, so a remand to the district court "would serve no good purpose and would ultimately amount to a waste of judicial resources." *Colbert*, 471 F.3d at 166; *see Teamsters*, 789 F.3d at 986 (supplementing where "a remand or dismissal on procedural grounds would merely prolong resolution of the underlying issues"); *Cabalceta* v. *Standard Fruit Co.*, 883 F.2d 1553, 1555 (11th Cir. 1989) (supplementing record "in the interest [of] judicial economy"); *Gibson* v. *Blackburn*, 744 F.2d 403, 405 n.3 (5th Cir. 1984) (exercising discretion to supplement "rather than to remand this case to the district

18

court and prolong a case which has wound its way through courts for the past six years").

Given the extraordinary circumstances here, supplementation also would serve the interests of justice. The Declaration reveals misconduct in forcing a critical witness into an unwanted attorney-client relationship and then misrepresenting to a court the purported client's wishes with respect to privilege and other matters. It would be a miscarriage of justice not to consider this newly available evidence, which disposes of Quinn's appeal. *See CSX Transp.*, 235 F.3d at 1330 (supplementing record "in the interests of justice").

Indeed, the conduct is so serious that Columbia's counsel is filing this motion in part because ethics counsel has advised that counsel *must* bring this issue to the Court's attention. Upon receiving the Declaration, Columbia's counsel sought ethics advice about its responsibility to this Court and counsel's duty of candor from Michael E. McCabe, Jr., a member of the Virginia bar. Mr. McCabe's declaration is attached as Exhibit B to this motion. McCabe is the former Chair of the Ethics and Professional Responsibility Committee of the Intellectual Property Law Section of the American Bar Association, Ex. B ¶ 4, and he has advised

"hundreds of patent and trademark attorneys" in ethics matters, *id.* ¶ 2. He advised Columbia's counsel that without disclosure of the Declaration, "Columbia's counsel could [not] respond to the representations made in Quinn's opening brief in a manner that is fully consistent with the duty of candor" counsel owes to this Court. *Id.* ¶ 17; *see* American Bar Association Model Rules of Professional Conduct (ABA Rules), Rule 3.3; *Amstar Corp.* v. *Envirotech Corp.*, 730 F.2d 1476, 1486 (Fed. Cir. 1984) (ABA Rule 3.3 imposes a duty of candor to the Court). Mr. McCabe thus advised Columbia's counsel that it had an obligation to disclose this new evidence to the Court.

## CONCLUSION

Columbia respectfully requests that this Court exercise its inherent equitable authority to supplement the record with the newly obtained Dacier Declaration.

Dated: New York, New York
        June 12, 2024

/s/ Garrard R. Beeney

GARRARD R. BEENEY
DUSTIN F. GUZIOR
STEPHEN J. ELLIOTT
ALEXANDER N. GROSS
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000

JEFFREY B. WALL
MORGAN L. RATNER
OLIVER ENGEBRETSON-SCHOOLEY
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW, Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500

*Counsel for Appellee The Trustees of Columbia University in the City of New York*

# CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 27(d), it contains 3,982 words.

This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in 14-point font using a proportionally spaced typeface.

Dated: New York, New York
      June 12, 2024

*/s/ Garrard R. Beeney*
GARRARD R. BEENEY

*Counsel for Appellee The Trustees of Columbia University in the City of New York*

## CERTIFICATE OF SERVICE

I certify that on June 12, 2024, I caused the foregoing Motion to be electronically filed with the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the CM/ECF system. The confidential version of the foregoing was also served on counsel for all parties by electronic mail.

Dated: New York, New York
      June 12, 2024

/s/ Garrard R. Beeney
GARRARD R. BEENEY

*Counsel for Appellee The Trustees of Columbia University in the City of New York*

## DECLARATION OF GARRARD R. BEENEY IN SUPPORT OF APPELLEE'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL APPENDIX

I hereby declare as follows:

1. I am a member in good standing of the bar of this Court.

2. I am principal counsel for Appellee The Trustees of Columbia University in the City of New York, in the above-referenced appeal. I submit this declaration in support of Columbia's motion for leave to file a supplemental appendix.

3. Counsel for Appellant Gen Digital Inc. and counsel for Appellant Quinn Emanuel Urquhart & Sullivan LLP, have represented that their clients oppose this request.

4. All of the facts set forth in the foregoing motion are, to the best of my knowledge, true and correct, and are based either on my personal knowledge or on conversations I have had with other attorneys working on this appeal.

I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated: New York, New York
      June 12, 2024

                              */s/ Garrard R. Beeney*
                              GARRARD R. BEENEY

                              *Counsel for Appellee The Trustees of Columbia University in the City of New York*

# Exhibit A

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE
CITY OF NEW YORK,

        *Plaintiff-Appellee,*

    v.

GEN DIGITAL INC., fka Symantec Corporation,
fka NortonLifeLock, Inc.,

        *Defendant-Appellant,*

QUINN EMANUEL URQUHART & SULLIVAN, LLP.,

        *Sanctioned Party-Appellant.*

Nos. 2024-1243, 2024-1244

## DECLARATION OF DR. MARC DACIER

DR. MARC DACIER hereby declares under penalty of perjury:

1.     My name is Marc Dacier.  I am currently a professor at the King Abdullah University of Science and Technology in Thuwal, Saudi Arabia.

2.     I understand that on March 15, 2022, the trial court in this case ordered lawyers at Quinn Emanuel to "disclose on the record in writing any information" they obtained from me during a period from at least April 2020 through March 15, 2022.

3.     I also understand that the lawyers at Quinn have represented to the courts that they could not comply with the trial court's order because the information they would have disclosed was subject to an attorney-client privilege controlled by me.

4.     I have no recollection that the lawyers at Quinn consulted with me on whether to assert privilege, nor that those lawyers informed me that they were purporting to assert my privilege as a basis to refuse compliance with the trial court's order.  I cannot recall having ever

asserted privilege or having authorized Quinn to assert privilege. I do not remember having been informed before recently that Quinn had done so.

5.     Had the lawyers at Quinn consulted with me about the trial court's order, I would have had no problem with disclosure of Quinn's communications with me. To assist with the judicial process, I would have wanted disclosure.

6.     Had the lawyers at Quinn complied with the trial court's order, there are a number of communications they would have disclosed. From 2014 through mid-April 2020, I do not remember having communicated with lawyers from Quinn. But I exchanged e-mails with those lawyers at least in April 2020, June 2020, October 2021, November 2021, and March 2022. I also spoke with them on calls at least in June 2020 and November 2021.

7.     I wish to address, in particular, communications in June 2020 that concerned a June 17, 2020 declaration, which the Quinn lawyers wrote and demanded I sign. Although I cannot remember having been informed at the time, I now understand that this declaration was submitted by the Quinn lawyers to support a motion to sanction Columbia University's lawyers, which purportedly was made to protect my "attorney-client relationship" with Quinn.

8.     I cannot find any trace that Quinn ever consulted with me on whether to file a motion for sanctions, nor that I would have authorized them to file. Had the lawyers at Quinn consulted me, I would have told them that I did not want them to file the motion, much less use my declaration to support it.

9.     I also wish to make clear that my June 17, 2020 declaration does not say that I personally asked or wanted Quinn to represent me. Quinn lawyers wrote the declaration, and after e-mail correspondence with Symantec/Norton and Quinn, and a call with the Quinn lawyers, I had understood that Quinn and Symantec/Norton could assert Quinn's representation

over me, regardless of my own views, and demand that I sign the declaration. As I said to the Quinn lawyers in a June 17, 2020 e-mail, transmitting the signed declaration, "as a follow up to your demand made during today's call, please find here attach [*sic*] the signed document that you have sent me."

10.     Had I been informed that I was not obligated to accept the Quinn lawyers as my personal counsel, I would not have signed the declaration. At a minimum, I would have changed the third paragraph of that declaration to state the facts: "*I am told that* Quinn Emanuel … continues to represent me in connection with the Columbia case."

11.     As I stated in an April 7, 2022 e-mail to Latham & Watkins: "I am no fool and I can see now why the Quinn team has done what they have done over the years, while pretending to 'represent' me." I believe that Quinn was purporting to "represent" me to keep me in the dark about this case because my testimony was unhelpful to their client, Symantec/Norton.

12.     I repeatedly said that, given sufficient notice, I would have been happy to testify at trial to help the judicial process. The Quinn lawyers, however, said that they did not need or want me to do anything. I understand that the Quinn lawyers have represented to the courts that, at some time after April 2020, I informed them that I changed my mind and was unwilling to testify at trial. That is false. I never changed my mind, and given sufficient notice, I would have been happy to travel to the United States to testify at trial, as I said to the lawyers from Latham & Watkins in April 2022. I never suggested otherwise.


Executed on May 9, 2024 in Thuwal, Saudi Arabia.

Dr. Marc Dacier

-3-

# Exhibit B

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW
YORK,

          *Plaintiff-Appellee*,

    v.

GEN DIGITAL, INC., fka Symantic
Corporation, fka NortonLifeLock, Inc.,

          *Defendant-Appellant*,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP,

          *Sanctioned Party-Appellant*.

---

## <u>DECLARATION OF MICHAEL E. MCCABE, JR.</u>

I, Michael E. McCabe, Jr., do hereby declare as follows:

1.      I have practiced as an attorney for 31 years.  I am the managing partner of McCabe & Ali LLP ("McCabe Ali").  Since 2011, my professional interests have focused on the representation of intellectual property professionals, including attorneys, agents, law firms, in-house counsel, and government attorneys in connection with compliance with their ethical, legal and professional duties.  Prior to that, I spent two decades as an IP litigator and prosecutor in patent and trademark matters.  I am a member of the bars of the Maryland, Virginia and the District of Columbia and all federal courts within those geographic areas, including this Court, the Fourth Circuit Court of Appeals, and the U.S. District Court for the Eastern District of Virginia.  I am a registered patent attorney (Reg. No. 37,182).

2.      I have represented hundreds of patent and trademark attorneys in confidential ethics investigations as well as in matters where they seek my guidance on ethical and malpractice related matters.  I frequently advise patent and trademark lawyers regarding issues involving their ethical and legal duty of candor before the courts and administrative agencies before which they appear.

3.      I am a current faculty member of the Virginia State Bar's Harry L. Carrico Professionalism Course (appointed three separate times to 3-year terms), where I co-lead sessions on ethics specifically in the practice of intellectual property law.  I have previously taught design patent law as an adjunct professor at The George Mason (now Antonin Scalia) School of Law, and I have guest lectured on patent law at the Johns Hopkins University Carey School of Business.

4.      From 2016-2022, I served as chair or vice chair of the Ethics and Professional Responsibility Committee of the Intellectual Property Law Section (IPLS) of the American Bar Association (ABA). I am the current chair the ABA IPLS Professional Issues Division, which includes the Ethics Committee.  I frequently speak on ethics and related issues at the ABA, AIPLA, and many other professional conferences and bar organizations on legal compliance as it relates to the practice of IP law.  I have testified at trial and by deposition as an expert on legal ethics, the standard of care, and compliance or non-compliance with lawyers' professional obligations in the course of IP representation.  A copy of my CV is attached as Exhibit A.

5.      I have been asked by counsel for The Trustees of Columbia University in the City of New York ("Columbia") for my opinion about whether any ethical or other professional conduct rules require Columbia to disclose the May 9, 2024 Declaration of Dr. Marc Dacier (2024 Dacier Declaration) to this Court or to another authority.

6.      The 2024 Dacier Declaration indicates that certain representations made in Sanctioned Party-Appellant Quinn Emanuel Urquhart & Sullivan LLP's ("Quinn") opening brief in this appeal (ECF No. 30, "Opening Brief") and in the documents identified in the below

paragraph are not true. In particular, Dr. Dacier indicates that representations that Quinn made in those documents concerning Dr. Dacier's desire to testify at trial "are false," that Quinn "demanded" that Dr. Dacier sign a declaration on June 18, 2020 stating that he was represented by Quinn, and that Dr. Dacier was not consulted concerning the assertion of his attorney-client privilege in response to a March 15, 2022 order from the trial court and, had he been consulted, would not have asserted his privilege.

7.      In addition to Quinn's Opening Brief, in connection with my assignment I have reviewed the following documents from the trial court record:  (1) Norton's Motions *in Limine* (ECF Nos. 494, 769 and 852); (2) Norton's Motion for Reconsideration (ECF No. 933); (3) Norton's Objections to Columbia's Proposed Jury Instructions (ECF No. 1048-1); (4) Quinn Emanuel Urquhart & Sullivan LLP's ("Quinn") April 8, 2022 Response to the Court's Order (ECF No. 1089-1); (5) the April 8, 2022 Declaration of David A. Nelson (ECF No. 1089-2); (6) Quinn's Opposition to Columbia's Motion for an Order to Show Cause (ECF No. 1240-1); and (7) the trial court's September 30, 2023 Memorandum Opinion and Order finding Quinn in civil contempt (ECF Nos. 1331 and 1332).

## Choice of Rules Analysis

8.      Counsel who engage in litigation owe ethical and legal duties of to the tribunals before which they practice as well as to opposing parties and counsel.  Some of those duties are set forth in lawyer codes of ethics.

9.      The Federal Circuit has not by local rule adopted a specific code of ethics.  For ethics issues arising from the district court proceeding that are not "unique to patent law," the Federal Circuit applies the law of the regional circuit.  *Atasi Corp. v. Seagate Tech.,* 847 F.2d 826, 829 (Fed. Cir. 1988).  The regional circuit here, the Fourth Circuit, applies the rules of professional conduct of the state in which the district court is located—here, the Virginia Rules of Professional

Conduct ("Virginia Rules").  *See Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 154 (4th Cir. 1992) (applying professional conduct rules of Virginia as forum state); *see also* E.D. Va. L.R. Civ. 83.5(J) (adopting Virginia Rules).

10.     In addressing issues of candor that arise in the Federal Circuit, the Federal Circuit typically applies the American Bar Association Model Rules of Professional Conduct ("ABA Model Rules").  *See, e.g., Amoco Oil Co. v. United States*, 234 F.3d 1374, 1378 (Fed. Cir. 2000) ("By failing to cite controlling adverse authority [in its opening brief], the conduct of appellant's counsel was inappropriate and potentially a violation of counsel's duty of candor toward the court.") (citing ABA Model Rule 3.3(a)(3)); *Chem Eng'g Corp. v. Essef Indus.*, 795 F.2d 1565, 1575 n.11 (Fed. Cir. 1986) ("The notion that [appellant] was free to refuse to admit the truth because the truth might have defeated its lawsuit is contrary to the duty of candor owed to the court" (citing ABA Model Rule 3.3); *In re Oximetrix, Inc.*, 748 F.2d 637, 643 (Fed. Cir. 1984) (party's "lack of candor" in failing to cite negative cases "is regrettable" (citing ABA Model Rule 3.3)); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1486 (Fed. Cir. 1984) ("Distortion of the record, by deletion of critical language in quoting from the record, reflects a lack of the candor required by the MODEL RULES OF PROFESSIONAL CONDUCT, Rule 3.3 (1983).").

11.     In the context of the present matter, there is no conflict between the relevant ethics rules applied by the regional circuit and the trial court (both of which apply the Virginia Rules), which largely are consistent with the ABA Model Rules.  As discussed below, the relevant ethical duties of candor imposed by Virginia Rule 3.3 are substantively the same as the duties imposed by ABA Model Rule 3.3.

## Duty of Candor

12.     Rule 3.3 of the Virginia Rules, entitled "Candor Toward the Tribunal," prohibits, in relevant part, a lawyer from, *inter alia*, knowingly "mak[ing] a false statement of fact . . . to a

tribunal" or from "offer[ing] evidence that the lawyer knows to be false" (and, once a lawyer "comes to know of its falsity, the lawyer shall take reasonable remedial measures").  Va. R. Prof. Cond. 3.3(a)(1) and 3.3(a)(4).  Rule 3.3 of the ABA Model Rules of Professional Conduct, also entitled "Candor Toward the Tribunal," similarly prohibits a lawyer from knowingly making a "false statement of fact . . . to a tribunal" or from "offer[ing] evidence that the lawyer knows to be false" (and if the lawyer has offered evidence and "comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal").  *See* ABA M.R. 3.3(a)(1) and 3.3(a)(3).

13.    Codes of professional conduct are not the only basis for the lawyer's duty of candor to a tribunal.  Courts have broad "inherent power to impose sanctions for" bad faith conduct and "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 49-50 (1991).  For example, in *United States v. Shaffer Equip. Co.*, the Fourth Circuit affirmed sanctions for attorneys' misconduct based upon *both* the broad general duty of candor to the court as well as the duties imposed by Rule of Professional Conduct 3.3.  11 F.3d 450, 456 (4th Cir. 1993).  The Fourth Circuit described the "duty of candor more broadly as that duty attendant to the attorney's role as an officer of the court with a 'continuing duty to inform the court of any development which may conceivably affect the outcome of litigation'" and stated that lawyers "have the first line task of assuring the integrity of the process" and thus have "a duty to guard against the corruption that justice will be dispensed on an act of deceit."  *Id.* at 457-58; *see also Tiverton Board of License Comm'rs v. Pastore,* 469 U.S. 238, 240 (1985) (rebuking counsel for failure to follow duty of candor broader than Rule 3.3 and reiterating continuing duty to inform the court of developments which may affect outcome).

14.    Thus, based upon the general duty of candor to the tribunal and related ethical rules, attorneys, as officers of the court, have a "continuing duty," to inform the court of "developments"

that "may conceivably affect the outcome," including a "duty to guard against" acts of "deceit" that may have occurred before the court.

### Duty to Disclose Ethical Violations

15.     The Virginia Rules and the ABA Model Rules both require counsel in certain situations to report another practitioner's ethical violations to appropriate authorities.  Pursuant to the Virginia Rules, a lawyer having "reliable information that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness to practice law shall inform the appropriate professional authority."  Va. R. Prof. Cond. 8.3(a).  The ABA Model Rule is identical to the Virginia Rule, except that its reporting obligation is triggered when the reporting lawyer "knows" that another lawyer has committed a violation of the professional conduct rules.  ABA M.R. 8.3(a).  Under the ABA Model Rules, "knows" "denotes actual knowledge of the fact in question," but "[a] person's knowledge may be inferred from the circumstances."  ABA M.R. 1.0(f).  Virginia intentionally chose the lower "reliable information" standard because that phrase "indicate[s] more clearly than the *ABA Model Rule*'s 'knowledge' the sort of information which should support a report of attorney misconduct."  Va. R. Prof. Cond. 8.3(a) (committee commentary).

16.     Where a lawyer has a duty to report an ethical violation under the Virginia Rules or the ABA Rules, the lawyer must make the report to "the bar disciplinary agency unless some other agency, such as a peer review agency, is more appropriate in the circumstances."  Va. R. Prof. Cond. 8.3, cmt. 3; ABA Rule 8.3, cmt. 3.  However, under the Virginia Rules, a lawyer may "choose to postpone reporting attorney misconduct until the end of litigation."  Va. R. Prof. Cond. 1.6, cmt. 14.

**Opinion**

17.    In my opinion, the duty of candor—which includes a "duty to inform the court of any development which may conceivably affect the outcome of litigation" and a "duty to guard against" acts of "deceit" before the court—requires Columbia's counsel to disclose the 2024 Dacier Declaration to this Court. Without disclosure, I do not believe that Columbia's counsel could respond to the representations made in Quinn's opening brief in a manner that is fully consistent with the duty of candor.

18.    It also is my opinion that Columbia's counsel can comply with its duty to report misconduct, under the Virginia Rules, to the disciplinary authority after the conclusion of this litigation.

19.    I have not been asked to, nor have I, formed any opinion on the merits of any of the allegations of misconduct.

I declare under penalty of perjury that the foregoing is true and correct.

Dated June 4, 2024

Michael E. McCabe, Jr.

# ATTACHMENT A

# Michael Edward McCabe, Jr.
## McCabe Ali LLP
9233 Fall River Lane, Potomac, MD 20854
mike@mccabeali.com; (301) 798-1110
Blog: www.IPethicsLaw.com
Website: www.mccabeali.com

## LEGAL EXPERIENCE:

Experienced counselor, advocate and expert witness in the field of Intellectual Property Law, focused on the representation of patent and trademark attorneys, registered patent agents, IP and General Practice law firms, corporate counsel, and federal government employees involving legal ethics matters and disciplinary proceedings before the U.S. Patent and Trademark Office and in state and federal court proceedings. Represented hundreds of patent and trademark practitioners in confidential ethics investigations or disciplinary proceedings brought by the USPTO Office of Enrollment and Discipline. Decades of Intellectual Property and commercial litigation experience for multi-national corporate clients in patent and trademark related cases before federal courts in many jurisdictions. Nationally-recognized speaker on legal ethics and regulatory compliance, particularly relating to Intellectual Property law. Credited as a leading attorney in matters involving application of rules of ethics in the practice of patent and trademark law.

## INTELLECTUAL PROPERTY ETHICS & USPTO BAR DISCIPLINE DEFENSE:

**McCabe Ali LLP**, Intellectual Property (IP) Ethics Law, Potomac, MD       2020 to Present
**McCabe Law LLC**, Intellectual Property (IP) Ethics Law, Potomac, MD        2017-2020

- Managing Partner and Co-Founder of practice as registered Patent Attorney to better serve IP clients with proactive risk management counsel by ensuring that business and legal affairs are compliant with applicable federal and state Rules of Professional Conduct
- Utilize knowledge as prior Officer and Director of multinational IP Law Firm to assist clients, including in-house corporate counsel and law firms, in formulating best practices within their organizations regarding risk management, avoidance of conflicts of interest, proper identification of clients, and management oversight responsibilities
- Expert in representing clients involved in USPTO Ethics Investigations and commended for detailed knowledge in unique and complex niche of ethics within IP law, including prosecution and litigation matters
- Consultant for internal law firm and corporate investigations pertaining to risk management, ethics compliance, and professional liability
- Provide expert witness consulting and testifying services on USPTO ethics rules and practices and procedures before the Office of Enrollment and Discipline (OED)
- Defend lawyers and patent agents charged with ethics violations in disciplinary enforcement actions brought by the USPTO, state and federal courts, including matters involving allegations of breach of fiduciary duty, lack of competency, unauthorized practice of law, conflicts of interest, duties to clients and courts, inequitable conduct and violation of the

1

duty of candor, Rule 11 violations, sanctions, disqualification motions, litigation misconduct, patent and trademark prosecution misconduct, lawyer mobility issues, personal misconduct and criminal convictions
- Recognized as dynamic speaker, authoritative commentator, and published author on ethical and legal issues in practice of intellectual property law

**Funk & Bolton, PA**, General Practice Law Firm                                    2011-2017
*Partner & Attorney Ethics Practice Group Founder*
- Created and initiated practice group in general practice law firm focused on representation of patent and trademark lawyers in ethics counseling, government investigations, and formal disciplinary proceedings against IP practitioners
- Hired by U.S. Department of Justice as Special Ethics Counsel to represent a federal government patent attorney accused by the USPTO of unethical conduct
- Publicly commended by prominent legal commentators for launching first-ever niche-focused law blog concentrating on intellectual property and legal ethics, which addresses new developments, interpretations, resources, and best practices in informative and user-friendly format
- Published chapter by American Bar Association in multiple editions of reference book regarding confidentiality and the attorney-client privilege in the practice of IP law
- Represented institutional clients in patent and other commercial claims before federal courts and administrative agencies

**Oblon, Spivak, LLP,** Intellectual Property Law, Alexandria, VA                  1999-2011
*Partner, Director & Risk Management Chair*
- Represented domestic and foreign clients in patent litigation involving diverse areas of technology, drafted opinions relating to patent validity and infringement, and prepared and prosecuted patent applications before the USPTO
- Promoted by senior management to Risk Management Committee Chair to manage firm's functions in legal ethics, professional responsibility, risk management, and malpractice avoidance to ensure PTO, federal and state ethics compliance
- Served as Arbitrator in binding proceeding to resolve ownership dispute of IP rights between competing clients through review of legal briefs, documentary evidence and witness testimony to reach appropriate decision
- Elected to Shareholder and Board of Directors due to trusting reputation for liaison and discretion with strong analytical and communication skills to serve interests of attorneys and firm
- Recognized as Intellectual Property expert through IP published works and speaking engagements in legal and academia communities (see below list)

**McDermott, Will & Emery**, *Partner,* IP Litigation, Washington, DC              1995-1999
  (Merged with Lowe, Price, LeBlanc & Becker)
**Shapiro & Olander,** *Associate,* General Practice, Baltimore, MD                1992-1995
- Represented corporate and individual clients in litigating patent, trademark, and copyright disputes before federal district courts and the International Trade Commission

- Initiated IP Department (at Shapiro) to represent inventors and companies in patent and trademark clearances, opinions, applications, IP licensing rights, and employer contract protocols for ownership of intellectual property

**ENGINEERING WORK EXPERIENCE:**

**NASA / Goddard Space Flight Center**, Greenbelt, MD                    1985-1989
Advanced Development and Flight Experiments Section
*Mechanical Engineer*
- Conducted ground-based and microgravity testing aboard the Space Shuttle of new types of two-phase capillary pump loop heat transfer systems for integration in the International Space Station, analyzed performance data, worked with other NASA centers, and delivered recommendations to senior NASA management
- Served as Goddard representative in collaboration with U.S. Air Force to jointly test and develop high-power spacecraft thermal management systems, and authored and presented technical paper on project results at international engineering conference

**HONORS/AWARDS:**

- Seven-time Chair or Vice-Chair, **ABA-IP Law Section Ethics and Professional Resp. Committee (**Chair, 2018-21; Vice Chair, 2016-18 & 2021-23)
- Chair, **ABA-IP Law Section Professional Issues Division** (Aug. 2023-Present)
- Vice Chair, **ABA-IP Law Section Professional Issues Division (**2021-23)
- Chair, Ethics Subcommittee of the **American Intellectual Property Law Association Patent Agents Committee** (2021-2023)
- Appointed by ABA President to **Lawyer Assistance Programs Advisory Commission** (2023-Present)
- Liaison, **ABA Pro Bono Committee**, ABA-IP Law Section (2019-Present)
- Liaison, **SOC Committee on Ethics and Professionalism,** ABA-IP Law Section (2018-19)
- Member, **ABA Working Group** on Resolution 10A (2019)
- Named as one of **World's Leading IP Strategists** by Intellectual Asset Management (2018)
- Rated **"AV Preeminent Peer Review"** (2018-Present)
- **Maryland Super Lawyers** for Professional Liability: Defense (2018-Present)
- **Washington DC Best Lawyer's List** for patent and intellectual property law and litigation (2014-Present)
- Named Baltimore **"Patent Lawyer of the Year"** by *Best Lawyers* (2015)
- Awarded **"Best Legal Blog of 2016"** for niche and specialty area

**EDUCATION / LICENSING:**

**University of Baltimore School of Law**, Baltimore, MD, Juris Doctor, 1992
*Magna cum laude*
- Law Review and National Moot Court Competition (Team Captain)
- *American Jurisprudence* book award for highest grade in Civil Procedure, Torts, Criminal Law and Constitutional Law

**University of Maryland**, College Park, MD.
Bachelor of Science in Mechanical Engineering – 1985

**Professional Licenses:**
- Maryland (1992), District of Columbia (1993) and Virginia (2009)
- U.S. District Courts – Maryland, District of Columbia, E.D. Virginia and W.D. Virginia
- U.S. Court of Appeals – First, Fourth, D.C. and Federal Circuits
- Supreme Court of the United States
- USPTO Registered Patent Attorney (No. 37,182)

## TEACHING / LECTURING EXPERIENCE:

**Johns Hopkins University**, Baltimore, MD                          2014-2020
- *Guest Lecturer* – Introduction to Patent Law

**Antonin Scalia Law School - George Mason University**, Arlington, VA    2008-2011
- *Guest Lecturer* – Advanced Patent Law
- *Adjunct Professor* – Design Patent Law

**Virginia State Bar Professionalism Course**, Arlington, VA           2011-2014;
- *Faculty* – Annual all-day ethics course for new Virginia Bar members.     2019-Present
  General ethics issues and co-lead specialty lectures on ethics and professional responsibility
  in the practice of intellectual property law

## SPEECHES / PRESENTATIONS:

- *Sanctions and Discipline at the USPTO: Best Practices for Staying Out of Trouble*, presented at **2024 IP Owners Annual Spring Summit, Intellectual Property Owners Association**, Washington, D.C. (Mar. 7, 2024) (speaker)

- *The Ethics of Errors & Top 10 Tips*, webinar presented to **Cohen & Gresser LLP** (Nov. 16, 2023) (speaker)

- *Patent Prosecution Malpractice: Minimizing the Risk of Claims*, webinar presented by **Strafford** (Oct. 23, 2023) (speaker)

- *The USPTO's War Against Unauthorized Practice of Patent and Trademark Law by Foreign Associates: Best Practices for Protecting Yourself and Your Clients from Sanctions and Discipline,* presented at **ABA International Law Section Fall Conference 2023**, Yonsei University, Seoul, South Korea (Oct. 11, 2023) (moderator)

- **Virginia State Bar Harry L. Carrico Professionalism Course**, faculty and co-leader of IP breakout section for new VSB members, Alexandria, VA (Oct. 4, 2023)

4

- *Risk, Regulation & Resilience: Sound Strategies for Your IP Practice*, webinar hosted by **Continental Casualty Company Inc. and Herbert L. Jamison and Company, LLC** (June 22, 2023) (speaker)

- *Recent Ethics Enforcement Trends in Patent and Trademark Matters Before the USPTO*, presented at **Boston Intellectual Property Law Association Third Annual Symposium**, Boston, MA (May 4, 2023) (speaker)

- *Signing Away Your License: USPTO's Vigorous Enforcement of "Personal" Signature Rules and Pre-Filing Duties Under 37 C.F.R. 11.18*, webinar presented to **Ledig, Voit & Mayer, Ltd.** (Apr. 13, 2023) (speaker)

- *Managing IP Malpractice Risks*, presented at **2023 ABA-IP Law Section Annual Meeting**, Washington, D.C. (Apr. 12, 2023) (moderator)

- *Mentoring 101: A Guide for IP Practitioners in Any Stage of Your Career*, presented at **2023 ABA-IP Law Section Annual Meeting**, Washington, D.C. (Apr. 11, 2023) (moderator)

- **Virginia State Bar Harry L. Carrico Professionalism Course**, faculty and co-leader of IP breakout section (with Judge Michael Nachmanoff, E.D. Va.) for new VSB members, Alexandria, VA (March 14, 2023)

- *Practicing Law Across Borders: Managing Legal & Ethical Risks of Multijurisdictional Practice*, webinar presented for the **ABA-IPLS Ethics and Professional Responsibility and Law Practice Management Committees** and **ABA-International Law Section Life Science and Health Committee** (Mar. 13, 2023) (speaker)

- *OED's War Against Rule 11.18 Violations and the Unauthorized Practice of Law: Navigating Ethics Minefields and Avoiding USPTO Discipline*, presented at **IP Summit 2023 - Utah State Bar IP Section**, Salt Lake City, UT (Feb. 24, 2023) (speaker)

- *No Treats for You: Ethics and Malpractice Issues for IP Practitioners and Transactional Attorneys*, webinar presented for the **Licensing Executive Society** (Nov. 2, 2022) (speaker)

- *Creating and Running an Ethical IP Law Firm: A Survival Guide for Patent and Trademark Practitioners*: *Part 1*, webinar presented for the **American Intellectual Property Law Association** (Oct. 6, 2022) (speaker)

- *Current Ethics Issues for Patent and Trademark Practitioners Before the USPTO*, presented at **33ʳᵈ Annual Virginia Intellectual Property Section Seminar 2022**, Richmond, VA (Sept. 30, 2022) (speaker)

- **Virginia State Bar Harry L. Carrico Professionalism Course**, faculty and leader of IP breakout section for 2020-22 new VSB members, Alexandria, VA (Sept. 28, 2022)

- *Hot IP Ethics Issues for Patent and Trademark Lawyers at the USPTO*, presented at **47th Annual Intellectual Property Law Institute** for **The Institute for Continuing Legal Education of the State Bar of Michigan**, Mackinac Island, MI (July 23, 2022) (speaker)

- *Dabbling in Trademark Law: A Primer on Ethics and Malpractice Risks for the Occasional IP Practitioner*, webinar presented for the **American Bar Association Center for Professional Responsibility** (July 18, 2022) (speaker)

- *Five Things You Should Know About Running a Successful Patent Practice*, webinar presented as part of **Harrity & Harrity Minority Firm Incubator 2.0** (July 12, 2022) (speaker)

- *Current Trends in OED Actions*, webinar presented at **2022 Electronic and Computer Patent Law Summit** for **the American Intellectual Property Law Association** (June 16, 2022) (speaker)

- *Ethical Considerations for Life Sciences Patent Lawyers*, presented at **ACI's 20th Advanced Summit on Life Science Patents**, Harvard Club, New York, NY (June 2, 2022) (panelist)

- *Common Ethical Issues in Patent Prosecution: Conflicts and Fee Sharing*, webinar presented for the **American Intellectual Patent Law Association Patent Agents Committee** (February 17, 2022) (speaker)

- *Ethics in Trade Secret Cases and Before the USPTO*, presented at 2021 Annual Meeting of the **American Intellectual Property Law Association**, National Harbor, MD (Oct. 29, 2021) (moderator)

- *Avoiding Discipline at the USPTO: Recent Developments in Patent and Trademark Ethics*, webinar presented by **Lawline** (Oct. 25, 2021) (panelist)

- *Ethics for IP Practitioners Part II: Avoiding Discipline Before the USPTO*, webinar presented to the **22nd Annual Virginia Intellectual Property Legal Institute** (Oct. 22, 2021) (speaker)

- *Risk, Regulation & Reality – Best Practices for You and Your IP Firm*, webinar presented to **Schwegman Lundberg Woessner, P.A.** (Oct. 19, 2021) (speaker)

- *Ethics for U.S. IP Counsel Working with Foreign Associates*, webinar presented at **2021 ABA-Intellectual Property Law Section IP Fall Institute** (Sept. 30, 2021) (moderator)

- *Ethics of IP Attorney Marketing and Advertising*, webinar presented to **Alt Legal Connect 2021** (Sept. 13, 2021) (speaker)

- *Conflicts of Interest in Patent Prosecution: Ethical Problems and Their Solutions*, webinar presented to the **Japan Patent Attorney Association – American Intellectual Property Law Association Joint Meeting** (Aug. 19, 2021) (speaker)

- *Entry Into an International World: The Civil Trade Secrt Case Morphs into a Criminal Trade Secret Case*, webinar presented to the **Georgia Bar IP Section** (July 13, 2021) (speaker)

- *Trademark Representation Risks: Best Practices for Reducing Malpractice and Ethics Complaints*, webinar presented for **Strafford CLE** (May 6, 2021) (speaker)

- *Current Ethics Issues and Developments for Trademark Attorneys*, webinar presented for **Snell & Wilmer LLP** (May 4, 2021) (speaker)

- *Ethics Traps for Patent Agents: Avoiding USPTO Discipline*, webinar presented for the **American Intellectual Property Law Association** (Jan. 21, 2021) (speaker)

- *Navigating Common Pitfalls in IP Practice*, webinar presented for **Oregon State Bar IP Section** (Nov. 6, 2020) (speaker)

- *Ethics Issues Relating to Working Remotely*, webinar presented for the **American Intellectual Property Law Association** (Nov. 5, 2020) (panelist)

- *Patent Prosecution Malpractice: Minimizing the Risk of Claims*, webinar presented for **Strafford CLE** (July 14, 2020) (speaker)
- *Reducing Stress and Avoiding Mistakes in the Post-COVID-19 Era*, webinar presented for the **ABA-Intellectual Property Law Section Spring CLE** (June 18, 2020) (moderator)

- *The USPTO's Focus on Declarations*, webinar presented for the **2020 ABA-Intellectual Property Law Section Annual Meeting** (June 1, 2020) (moderator)

- *Ethics for IP Lawyers*, presented at **State Bar for Arizona Sixth Annual CLE in the Garden**, Phoenix, AZ (Feb. 25, 2020) (speaker)

- *Harry L. Carrico Virginia State Bar Professionalism Course*, presented on **General Ethics and Intellectual Property Ethics**, McLean, VA (Jan. 8, 2020) (speaker)

- *Recent Developments in Patent and Trademark Ethics*, presented at **2019 Intellectual Property Law and E-Commerce Seminar, Iowa State Bar Association**, Des Moines, IA (Dec. 17, 2019) (speaker)

- *Avoiding Conflicts of Interest and Other Ethical Dilemmas on the IP Bridge*, presented at **Sixth Annual Meeting of the Center for the Protection of Intellectual Property, Antonin Scalia Law School, George Mason University**, Arlington, VA (Oct. 4, 2019) (speaker)

- *Inadvertent Disclosure and Waiver of Privilege: Legal and Ethical Dilemmas for the IP Practitioner*, presented at the **American Bar Association IP Law Section Fall Meeting**, San Antonio, TX (Oct. 3, 2019) (speaker)

- *2019 IP Ethics and Risk Management Update*, **Avoiding Common Conflicts of Interest in IP Law Practice**, webinar sponsored by **CNA Intellectual Property / Lawyers Professional Liability Webinar Series** (June 26, 2019 and Sept. 27, 2019) (speaker)

- *Navigating Conflicts and Other Ethical Dilemmas in IP Law Practice*, in-house CLE presented to **McDonnell Boehnen Hulbert & Berghoff LLP**, Chicago, IL (June 21, 2019) (speaker)

- *Ethics Issues for IP Counsel Working Through Foreign Associates and Intermediaries*, in-house CLE presented to **Loeb & Loeb LLP**, Chicago, IL (June 20, 2019) (speaker)

- *Navigating Conflicts of Interest in Patent and Trademark Law,* webinar presented to the **Virginia State Bar Intellectual Property Law Section** (May 9, 2019) (speaker)

- *Trademark Representation Risks: Best Practices for Reducing Malpractice and Ethics Complaints*, webinar sponsored by **Strafford CLE** (May 8, 2019) (speaker)

- *Intellectual Property Malpractice – The Parade of Horribles*, presented via phone to the **Tennessee Intellectual Property Law Association 2019 Spring Symposium**, Nashville, TN (May 3, 2019) (speaker)

- *Ethics for the IP Practitioner*, presented at the **Washington State Bar Association 24th Annual Intellectual Property Institute**, Seattle, WA (Apr. 17, 2019) (speaker)

- *The Rocks and Hard Places for IP Practitioners*, presented at **2019 ABA-IP Law Annual Meeting and 34th Annual Intellectual Property Law Conference**, Arlington, VA (Apr. 12, 2019) (moderator)

- *Disqualification: Lessons from Recent Cases*, webinar sponsored by **IPO Chat Channel** (Apr. 10, 2019) (speaker)

- *Introduction to Patent Law,* guest lecture at **Johns Hopkins University – Carey Business School**, Baltimore, MD (Apr. 3, 2019) (speaker)

- *2019 IP Ethics and Risk Management Update*, **Avoiding Common Conflicts of Interest in IP Law Practice**, webinar sponsored by **CNA Intellectual Property / Lawyers Professional Liability Webinar Series** (Mar. 27, 2019) (speaker)

- *Patent Prosecution Malpractice: Minimizing the Risk of Claims*, webinar sponsored by **Strafford CLE Webinars** (Feb. 21, 2019) (speaker)

- *Attorney Wellness and Competency*, moderator of panel discussion, presented to **the Giles S. Rich American Inns of Court and the George Washington University School of Law**, Washington, D.C. (Feb. 19, 2019) (moderator)

- *Getting Physical: The Ethics of Attorney-Client Sexual Relations*, presented at **2019 AIPLA Mid-Winter Institute**, Tampa, FL (Feb. 2, 2019) (speaker)

- *2018 IP Ethics and Risk Management Update*, webinar sponsored by **CNA Intellectual Property / Lawyers Professional Liability Webinar Series** (Dec. 12, 2018) (speaker)

- *The Ethics of Legal Process Outsourcing for the IP Attorney*, presented to **Cincinnati Intellectual Property Law Association**, Cincinnati, OH (Dec. 11, 2018) (speaker)

- *No Candy for You: Tricky Ethics Issues for IP Lawyers*, presented at **UT Law 23rd Annual Advanced Patent Law Institute**, Austin, TX (Nov. 1, 2018) (speaker)

- *Conflicts of Interest in Intellectual Property Law*, presented at **Intellectual Property Owners Association Annual Meeting**, Chicago, IL (Sept. 25, 2018) (speaker)

- *2018 IP Ethics and Risk Management Update*, webinar sponsored by **CNA Intellectual Property / Lawyers Professional Liability Webinar Series** (Sept. 6, 2018) (speaker)

- *The 7 Habits of Highly Ethical IP Lawyers*, presented at **13th Annual Door County (Wisconsin) Intellectual Property Academy**, Sturgeon Bay, WI (July 19, 2018) (speaker)

- *Exploring Ethical Requirements When Working Through the Patent and Trademark Practice*, presented at **ACI's 4th Annual Post Grant PTO Proceedings**, Washington, D.C. (July 18, 2018) (speaker)

- *Evaluating Ethical Concerns for the Biosimilars Industry*, presented at **ACI's 9th Annual Summit on Biosimilars**, New York, NY (June 26, 2018) (speaker)

- *Ethical Issues for IP Lawyers*, in-house ethics seminar presented for **Hauptman Ham, LLP**, Alexandria, VA (May 30, 2018) (speaker)

- *2018 IP Ethics and Risk Management Update*, webinar sponsored by **CNA Intellectual Property / Lawyers Professional Liability Webinar Series** (May 21, 2018) (speaker)

- *Social Media Policies for Law Firms*, presented at the **ABA Section of Taxation 2018 Annual Meeting**, Washington, D.C. (May 12, 2018) (speaker)

- *Multijurisdictional Practice and the Modern IP Attorney*, presented at the **ABA-IP Law Section 33rd Annual Intellectual Property Law Conference**, Arlington, VA (Apr. 19, 2018) (speaker)

- *Ethical Considerations for Teleworking and Multijurisdictional Practice for the IP Lawyer*, presented at **Oregon Patent Law Association (OPLA) – Salishan Patent Law Conference**, Gleneden Beach, OR (Apr. 14, 2018) (speaker)

- *2018 IP Ethics and Risk Management Update*, webinar sponsored by **CNA Intellectual Property / Lawyers Professional Liability Webinar Series** (Mar. 26, 2018) (speaker)

- *Ethics Before the PTAB*, presented at **2018 PTAB Bar Association Annual Conference**, Washington, DC (Mar. 23, 2018) (speaker)

- *Risky Business – Ethical Issues & Professional Considerations for Young Lawyers*, webinar sponsored by **ABA-Young Lawyers Action Group (YLAG) and ABA-IP Section Ethics and Professional Responsibility Committee** (Mar. 9, 2018) (speaker)

- *Brave New World: Technology Advances Create Ethical Risks for IP Attorneys*, presented at **13th Annual Advanced Patent Law Institute – The University of Texas School of Law**, Alexandria, VA (Mar. 1, 2018) (speaker)

- *IP and Technology: Ethical Risks*, presented at **2018 Utah IP Summit – Intellectual Property Section of the Utah State Bar**, Salt Lake City, UT (Feb. 23, 2018) (speaker)

- *Conflicts of Interest in IP Law: Ethical Problems & Their Solutions*, in-house ethics seminar presented for **Pillsbury Winthrop Shaw Pittman**, McLean VA (Feb. 6, 2018) (speaker)
- *What Every IP Lawyer Should Know About Conflicts of Interest*, in-house ethics seminar presented for **Birch Stewart Kolasch Birch**, Fairfax, VA (Jan. 31, 2018) (speaker)

- *Ethics Issues in PTAB Proceedings*, a 90-minute ethics webinar sponsored by the **American Intellectual Property Law Association** (Dec. 13, 2017) (speaker)

- *Keeping the Lights on and the OED off Your Back: Ethical Conduct in the Practice of IP Law*, a two-hour ethics presented at **2017 Iowa State Bar Association eCommerce & Intellectual Property Seminar**, Des Moines, IA (Dec. 1, 2017) (speaker)

- *Outsourcing Patent Work: Avoiding Pitfalls*, a webinar sponsored by **Intellectual Property Owners Association (IPO)** (Nov. 16, 2017) (speaker)

- *Tales from the OED Crypt: Scary (and True) Stories About Ethics & Discipline at the PTO* and *Ethics Issues in Dealing with Foreign Associates and Foreign Clients*, two speeches presented at **IPRP 2017 Fall Seminar, Washington, D.C. (Nov. 1, 2017)** (speaker)

10

- *Advanced Intellectual Property Ethics for the IP Practitioner*, broadcast live by **Lawline**, New York, NY (Oct. 26, 2017) (speaker)

- *Ethics in the Practice of Patent and Trademark Law*, presented at **2017 American Bar Association IP Law Section IP West Program**, Long Beach, CA (Oct. 12, 2017) (speaker)

- *An Intellectual Property Ethics Roundtable Discussion*, presented to **Boston Patent Law Association Ethics Committee**, Boston, MA (Oct. 2, 2017) (speaker)

- *Conflicts of Interest for the IP Practitioner*, presented at **27th All Ohio Annual Institute on Intellectual Property**, Cincinnati, OH (Sept. 13, 2017) and Cleveland, OH (Sept. 14, 2017) (speaker)

- *Patent Counsel Ethical Engagement and Disengagement Letters*, sponsored by **Strafford Webinars** (July 27, 2017) (speaker)

- *The Ethics of Working Remotely: Preventing Problems Before They Happen*, a 90-minute webinar sponsored by the **American Intellectual Property Law Association** (June 21, 2017) (speaker)

- *When Good Lawyers Go Bad: Common Ethics Mistakes by IP Practitioners*, a webinar sponsored by the **Association of Intellectual Property Firms** (June 20, 2017) (speaker)

- *Identifying and Resolving Ethical Conflicts of Interest in Patent Prosecution*, a webinar sponsored by the **American Bar Association Landslide Webinar Series (**Apr. 18, 2017) (speaker)

- *IP Ethics Panel Discussion*, presented at the **ABA Section of Intellectual Property Law, 32nd Annual Intellectual Property Law Conference**, Arlington, VA (Apr. 6, 2017) (speaker)

- *Advice of Counsel Defense in Patent Litigation: Protecting Attorney-Client Privilege*, sponsored by **Strafford Webinars** (Mar. 16, 2017) (speaker)

- *Surviving the Perfect Protostorm: An Anthology of Recent IP Malpractice Decisions*, presented at **Washington State Bar Association 22nd Annual IP Institute**, Seattle, WA (Mar. 10, 2017) (speaker)

- *Bringing Home the Bacon: It's All About the Clients*, presented at **Maryland State Bar Association's Law Office Management Assistance** program, Baltimore, MD (Mar. 4, 2017) (speaker)

- *Mind Your Manners! Or, Ethics and Inequitable Conduct Before the PTAB*, presented at the **PTAB Bar Association Inaugural Conference**, Washington, DC (Mar. 3, 2017) (speaker)

- *Recent Developments in IP Malpractice Litigation*, presented at the **2017 Utah IP Summit CLE Symposium**, Salt Lake City, UT (Feb. 24, 2017) (speaker)

- *So You Want to Live in Timbuktu? Ethical Considerations for the IP Practitioner Working in a Virtual Law Office*, presented at the **2017 American Intellectual Property Law Association – Mid-Winter Institute**, Ft. Lauderdale, FL (Feb. 4, 2017) (speaker)

- *The Dangers of Dabbling: IP Ethics Issues at the USPTO*, presented at the **2016 Iowa State Bar Annual Intellectual Property Law Seminar,** Des Moines, IA (Dec. 2, 2016) (speaker)

- *Ain't Misbehavin: Avoiding Ethical Problems at the USPTO*, live broadcast presented by **LawLine**, New York, NY (Oct. 28, 2016) (speaker)

- *Legal Ethics for the Paraprofessional–What You Don't Know Can Hurt You*, presented at **The National Association for Legal Professionals 2016 Education Conference and National Forum**, Nashville, TN (Oct. 7, 2016) (speaker)

- *Why Me? Ethical Issues in IP Law and Avoiding USPTO Discipline*, presented at **The Carolina Patent, Trademark & Copyright Law Association Fall Meeting,** Kiawah Island, SC (Sept. 23, 2016) (speaker)

- *IP Ethics Panel***,** presented at the **American Conference Institute Paragraph IV Master Disputes Symposium,** Chicago, IL (Sept. 20, 2016) (speaker)

- *Hack This: Cyber Security Practices and Ethical Duties for IP Law Firms* and *Risky Business: Ethical Challenges Facing IP Law Firm Management*, two speeches presented at the **Association of Legal Administrators 2016 Intellectual Property Conference for Legal Professionals**, Washington, DC (Sept. 15, 2016) (speaker)

- *Hot Ethics Topics for the Patent Practitioner*, ethics webinar sponsored by **Iowa State Bar Association** (September 13, 2016) (speaker)

- *Recent Developments at the USPTO Office of Enrollment and Discipline*, presented at the **Attorneys' Liability Assurance Society Patent Consultation Group Roundtable,** Chicago, IL (August 4, 2016) (speaker)

- *Legal Ethics and Professional Responsibility: Avoiding Conflicts of Interest, Maintaining Confidentiality, and other Special Concerns for the Biosimilars Space*, presented at the **ACI Biosimilars Summit,** New York, NY (June 15, 2016) (speaker)

- *The Ethics of Outsourcing Legal Services and Functions*, presented at the **Practicing Law Institute 10th Annual Patent Law Institute,** San Francisco, CA (May 5, 2016) and New York, NY (Apr. 14, 2016) (speaker)

- *Conflicts and Ethical Issues in IP Practice*, a two-hour ethics program presented at the **Arizona Bar IP Section Meeting, Second Annual CLE in the Gardens**, Phoenix, AZ (Apr. 8, 2016) (speaker)

- *Roger Boisjoly and the Ethical Lessons Learned from the Space Shuttle Challenger Disaster*, keynote speech presented at the **2016 University of Maryland Order of the Engineer** induction ceremony, College Park, MD (Mar. 29, 2016) (keynote speaker)

- *Deja Vu All Over Again – Recurring Ethics Issues in IP Law*, a two-hour ethics CLE presented at the **Washington State Bar Association Spring 2016 IP Institute**, Seattle, WA (Mar. 11, 2016) (speaker)

- *The Duty of Candor to the Tribunal*, a panel discussion moderated by Michael E. McCabe, Jr. at the George Washington University School of Law for the **Giles S. Rich American Inns of Court**, Washington, DC (Feb. 23, 2016) (moderator)

- *Conflicts of Interest in Patent Prosecution after Maling v. Finnegan*, a webinar sponsored by the **Intellectual Property Owners Association** (Feb. 10, 2016) (speaker)

- *Gotcha! Fee-Shifting in IP Litigation Can Trigger OED Ethics Investigation and USPTO Discipline*, presented at the **American Intellectual Property Law Association Mid-Winter Institute**, La Quinta, CA (Jan. 30, 2016) (speaker)

- *Issues in IP Ethics*, presented at a meeting of the **Houston Intellectual Property Lawyer's Association**, Houston, TX (Nov. 17, 2015) (speaker)

- *IP Ethics and Risk Management*, presented at **IPRP Fall 2015 Seminar**, New York, NY (Nov. 9, 2015) (speaker)

- *IP Ethics – Recent Developments*, an in-house firm-wide ethics seminar presented to **McCarter & English, LLP,** Boston, MA (Oct. 16, 2015) (speaker)

- *Breaking Good–Essentials for the Ethical IP Attorney*, presented at the **American Bar Association IP Law Section Annual Meeting**, Chicago, IL (July 31, 2015) (speaker)

- *Subject Matter Conflicts in IP Practice*, presented at the **Association of Professional Responsibility Lawyers Annual Meeting**, Chicago, IL (July 31, 2015) (speaker)

- *Ethics in IP*, presented at a meeting of the **New Jersey Intellectual Property Law Association (NJIPLA),** Iselin, NJ (Dec. 10, 2014) (speaker)

- *Ethical Issues in Patent and Trademark Practice: A Practitioner's Guide to the USPTO's New Ethics Rules and Responding to OED Disciplinary Investigations*, presented live and by video at **Virginia CLE**, Charlottesville, VA (Apr. 4, 2013) (speaker)

- *Recent Developments in Intellectual Property Prosecution and Litigation Ethics*, webinar sponsored by the **Virginia State Bar Intellectual Property Section** (May 10, 2011) (speaker)

- *Recent Trends in Inducing Infringement and Divided Infringement*, webinar sponsored by **Managing Intellectual Property** (Dec. 2010) (speaker)

- *The Growing Popularity of the International Trade Commission as a Preferred Forum for Enforcing U.S. Patent Rights*, presented at **Domestic Impact of Intellectual Property in a Global Economy Symposium** sponsored by University of Baltimore School of Law (Mar. 26, 2010) (speaker)

- *Attorney-Client Privilege in Patent Proceedings - Strategies for Preserving Confidential Communications*, webinar sponsored by **Insurance Law and Litigation Reporter of Strafford Publications** (June 2008) (speaker)

- *Navigating the Risks of Inequitable Conduct*, keynote speech presented at **CNA's Fourth Forum on Addressing the Risks of Intellectual Property Practice** (May 2007) (keynote speaker)
- *Understanding the Discovery Process in U.S. Patent Litigation*, presented at **EuroLegal Conference**, London, England (Oct. 1, 2002) (speaker)

## PUBLICATIONS REGARDING INTELLECTUAL PROPERTY / ETHICS:

- Michael E. McCabe, Jr. and Tracy L. Kepler, *Dibble Dabble Double Trouble: Mitigating the Risks of Dabbling in Your Law Practice,* 2023 Issue 3, **In Practice . . . with CNA – A Practitioner's Perspective on Emerging Legal Trends** (June 2023)

- Co-creator of *Creating and Running an Ethical IP Law Firm: A Survival Guide for Patent and Trademark Practitioners*, a monthly webinar series sponsored by the **American Intellectual Property Law Association** (first part presented Oct. 6, 2022)

- Michael E. McCabe, Jr. and Emil J. Ali, *Balancing Newly Divergent State, USPTO Ethics Rules*, co-authored by, published in **Law360** (Sept. 23, 2020)

- Michael E. McCabe, Jr., *Avoiding USPTO Discipline: Five Recommendations for Patent Agents,* Vol. 2, Issue 3, **The Agent**, an AIPLA Patent Agents Committee Publication (Sept. 18, 2020)

- Michael E. McCabe, Jr., *5 Things IP Practitioners Should Do to Avoid U.S. Patent and Trademark Office Discipline*, **NWSidebar**, a publication of the Washington State Bar Association (July 22, 2019)

- Michael E. McCabe, Jr., *Are Your Firm's Foreign Associate Practice's Ethical?* Vol. 29, Issue 1, **Michigan IPLS Proceedings**, a quarterly journal published by the Intellectual

Property Law Section of the Michigan State Bar (Feb. 2018)

- *Maryland Conflict of Interest Law*, Vol. 27, Issue 2, **DRI Happenings – The Newsletter of the Life, Health and Disability Committee** (June 7, 2016)

- Michael E. McCabe, Jr., *Representing Clients with Diminished Capacity*, published in **Wealth Management.com** (Oct. 19, 2015)

- Michael E. McCabe, Jr., *The Rat Rule in IP Litigation—A Threat to Report Another's Unethical Conduct for Strategic Advantage is Unethical and May be Illegal*, Vol. 21, No. 5, **IP Litigator** (Sept./Oct. 2015)

- Michael E. McCabe, Jr., *USPTO No Safe Haven for Suspended or Disbarred Attorneys*, Vol. 21, No. 4, **IP Litigator** (July/Aug. 2015)

- Michael E. McCabe, Jr., *Ethics are Not Just for Lawyers – The Legal Duties of Law Firm Paraprofessionals*, published in **@Law, the NALS Magazine for Legal Professionals** (Summer 2015)

- Michael E. McCabe, Jr., *USPTO is on the Lookout for Ethical Misconduct*, published in **Law360** (May 26, 2015)

- Michael E. McCabe, Jr., *IP Counsel Who Blindly Follow Client "Instructions" Risk Losing Law License*, published in Vol. 21, No. 3, **IP Litigator** (May/June 2015)

- Michael E. McCabe, Jr., *USPTO's New Ethics Rocket Docket for Attorney Discipline*, published in **Law360** (Oct. 30, 2013)

- *Attorney-Client Privilege and Work-Product Immunity in Patent Litigation*, chapter 17 in **The Attorney-Client Privilege in Civil Litigation – Protecting and Defending Confidentiality** (5th ed., 2012; 4th ed. 2008) (American Bar Association)

- *Recent Developments in Patent Law and their Impact on the Pharmaceutical and Biotechnology Industries*, Vol. 19, No. 2 **University of Baltimore Intellectual Property Law Journal** (Spring 2011) and speech (March 2011)

- *Richardson v. Stanley Works, Inc.*, **Maryland State Bar Association, Intellectual Property Section** (June 2010 Annual Meeting)

- *Egyptian Goddess Puts Teeth Back in US Industrial Design Rights*, **Intellectual Property Watch** (Nov. 12, 2008)

- *A Renewed Interest by the Supreme Court in the Field of Patent Law: eBay v. MercExchange and KSR v. Teleflex*, Vol. 44, No. 1 **Computer Law Reporter** (Sept. 2006) and Vol. 7 **Internet Law & Business** (Sept. 2006)

- *Look Again! Capitalizing on IP Assets*, **Trademark World: The Price of IP** (May 2006) (published in Europe)

- *May a Practitioner Both Act as a Counsel in an Interference and Testify as to His or Her Diligence In Preparing an Application?*, Vol. 13, No. 3 **Intellectual Property Today** (Mar. 2006)

- *Back in the Box - Retiring the Adverse Inference Rule*, Issue 168 **Patent World** (Dec. 2004/Jan. 2005) (published in Europe)

- *Impact of the CAFC's Knorr-Bremse Decision and Answers to Japanese Companies' Most Important Questions About Opinions of Counsel in U.S. Patent Litigation*, Vol. 54, No. 13 **Intellectual Property Management** (Dec. 2004) (translated into Japanese/published in Japan)

- *Understanding Discovery in U.S. Patent Litigation*, **Patent World**, a three-part series No. 147 (Nov. 2002); No. 148 (Dec. 2002/Jan. 2003); No. 149 (Feb. 2003/Mar. 2003)

- Michael E. McCabe, Jr., *Attorney-Client Privilege and Work Product Immunity in Patent Litigation*, book chapter published in Anthony B. Askew and Elizabeth C. Jacobs **2001 Intellectual Property Law Update** (Aspen Law & Business) (Jun. 2001)

- *Ethical and Local Rule Restrictions on Investigations of Potential Jurors and Post-Trial Contact with Jurors*, **ABA-IP Law Section** (Dec. 1995)

- **IPethics & INsights**, a law blog published by McCabe Ali LLP and predecessor organizations (2014-present), www.ipethicslaw.com

## QUOTED AS LEGAL AUTHORITY IN MEDIA:

- *"One Firm" or Separate Entities? Vereins' Growth Bumps into Conflicts, Liability Concerns*, **Law.com** (Feb. 23, 2024)

- *Coke's Quest to Disqualify Paul Hastings Faces Big Hurdles*, **Law.com** (May 3, 2023)

- *IP Ethics Atty Urges Justices to Take Up Standards Case*, **Law360** (Jan. 5, 2021)

- *The Biggest Legal Ethics Moments of 2020*, **Law 360** (Dec. 11, 2020)

- *IP Firm Founders Predict "Onslaught" of Ethics Issues for Lawyers Under Pressure*, **Reuters** (Aug. 12, 2020)

- *Full Fed. Circ. Asked to Rethink Voiding IP in Ethanol MDL*, **Law360** (Apr. 15, 2020)

- *Fed. Cir. Inequitable Conduct Case Alarms IP Ethics Attys*, **Law360** (Mar. 11, 2020)

- *$32M Dentons Verdict Could Put Vereins in the Crosshairs*, **Law360** (Feb. 25, 2020)

- *Patent Lawyer Fights Identity Theft Over Fraudulent USPTO Filings from China*, **Corporate Counsel** (Mar. 4, 2019)

- *How Law Firms Can Avoid Conflicts Involving Corporate Affiliates*, **Law360** (Mar. 1, 2019)

- *Lawyers Warn Employees About Social Media Use*, **Bloomberg Law** (Sept. 11, 2018)

- *Drafting and Implementing Social Media Policies for Law Firms*, **Bloomberg Law** (May 30, 2018)

- *California Adopts Modified ABA Model Rules*, **Bloomberg Law** (May 11, 2018)

- *Lawyers Have an Ethical Duty to Safeguard Confidential Information in the Cloud*, **ABA Journal** (April 2018)

- *Legal Combat – When Companies Sue Their Outside Counsel, It Can Be One Brouhaha*, **Corporate Counsel** (Mar. 2018)

- *USPTO Trying Out Diversion for Struggling Practitioners*, **Bloomberg BNA** (Nov. 15, 2017)

- *Patent Office Unveils Program for Attorneys with Addiction Issues*, **Reuters Legal** (Nov. 5, 2017)

- *Did McKool Smith Violate Prosecution Bar in High-Profile Patent Case?*, **The Recorder** (Sept. 15, 2017)

- *Ex L'Oreal Atty Faces Tough Road in Wrongful Firing Case*, **IP Law360** and **Legal Ethics 360** (July 31, 2017)

- *Greenberg Traurig Agrees to Withdraw from Case in Which it was Faced with Conflict of Interest*, **The American Lawyer Daily Business Review** (May 24, 2017)

- *USPTO Suspends Former Niro Junior IP Attorney for 18 Months*, **The American Lawyer** (Mar. 6, 2017)

- *Dispute Between USPTO and Controversial Trademark Filer Ends*, **World Trademark Review** (Feb. 21, 2017)

- *IP Atty-Client Privilege Faces Challenges After Halo*, **Law360** (Jan. 20, 2017)

- *A New Front in the IP Wars*, **The American Lawyer** (Dec. 2016)

- *Is It Disrespectful to Send an Associate to Court? Maybe Not*, **Law.Com** (Sept. 27, 2016)

- *Order Disqualifying Dentons is Vacated, Leaving Verein Conflicts Issue Unresolved*, Vol. 21, No. 8 **ABA/BNA Lawyers' Manual on Professional Conduct** (Apr. 20, 2016)

- *Texas Ruling Sets High Bar for Patent Malpractice Claims*, **Law360** (Mar. 30, 2016)

- *5 Tips to Avoid IP Malpractice Suits*, **Law360** (Nov. 20, 2015)

## PRIOR TESTIMONY

Expert Trial Testimony (March 23, 2023); Expert Deposition (June 21, 2022); and Expert Report (June 14, 2022) in ***Thomas Ward** v. Commscope, Inc.*, Case No. 3:21-CV-370-H-DEB, United States District Court for the Southern District of California

Expert Deposition Testimony (Dec. 9, 2022); Supp. Expert Report (Oct. 29, 2022); Expert Report (Jan. 8, 2022) in *Inexian Corporation, f/k/a Plowshare Technologies, Inc. v. **Venable LLP**,* Case No. 24-C-21-00200, Baltimore City Circuit Court

Expert Declaration in *The Florida Bar v. **John H. Faro***, Case No. SC18-1279, Supreme Court of Florida (Dec. 3, 2020)

Trial Testimony (non-expert) in *Attorney Grievance Comm'n of Maryland v. **Samuel Sperling** et al.*, Misc. Docket AG Nos. 40 & 76, before Judge H. Patrick Stringer, Circuit Court of Baltimore County, Maryland (Aug. 22, 2017), appointed by Maryland Court of Appeals, decision of the Maryland Supreme Court published at 459 Md. 194, 185 A.3d 76 (May 21, 2018)

Deposition Testimony (non-expert) in *Attorney Grievance Comm'n of Maryland v. **Samuel Sperling,** et al.* Misc. Docket AG Nos. 40 & 76, Circuit Court of Baltimore County, Maryland (April 10, 2017)

18

# Addendum

# Table of Contents

| Date | ECF No. | Description | Appx. No. |
|---|---|---|---|
| 3/15/2022 | 889 | Memorandum Opinion on Defendant's Motions *in Limine* Nos. 5 and 6 | Appx37 |
| 3/15/2022 | 890 | Order on Defendant's Motions *in Limine* Nos. 5 and 6 | Appx57 |
| 9/30/2023 | 1331 | Memorandum Opinion on Motion for an Order to Show Cause | Appx58 |
| 6/1/2020 | 547 | Plaintiff's Opposition to Defendant's Motion for Sanctions (Declarations and Exhibits 3, 4, 7, 8, 9) | Apx15944 |
| 6/19/2020 | 562 | Defendant's Reply to Plaintiff's Response to Motion for Sanctions (Exhibit 7) | Appx16552 |
| 9/29/2021 | 663 | Memorandum Order on Defendant's Motion for Sanctions | Appx17734 |
| 2/28/2022 | 769 | NortonLifeLock Inc's Memorandum In Support of Motions *in Limine* | Appx19359 |
| 2/28/2022 | 768 | NortonLifeLock Inc's Memorandum In Support of Motions *in Limine* (Exhibit 45) | Appx20355 |
| 3/4/2022 | 803 | Plaintiff's Opposition to Defendant's Motions *in Limine* (Exhibit QQ) | Appx21471 |
| 3/22/2022 | 945 | Memorandum Order on Defendant's Motion for Reconsideration | Appx34351 |
| 4/8/2022 | 1084 | Columbia's Notice of Norton's Communications With Dr. Dacier on April 5-7, 2022 | Appx35884 |
| 4/8/2022 | 1089 | Notice of Quinn Emanuel Urquhart & Sullivan's Response to Court's Order (Dkt. No. 1083) (Exhibits A-B) | Appx35923 |
| 4/18/2022 | 1139 | NortonLifeLock's Response to the Court's April 15, 2022 Order (Dkt. No. 1130) | Appx37277 |
| 4/25/2022 | 1167 | Memorandum Order on Missing Witness Instruction | Appx40466 |
| 6/3/2022 | 1240 | Quinn Emanuel's Opposition to Plaintiff's Motion for an Order to Show Cause (Exhibits A-B) | Appx43937 |
| 07/22/2022 | 1294 | Columbia's Reply Regarding Attorneys' Fees Under 35. U.S.C.§ 285 (Exhibit Q) | Appx47438 |
| 4/13/2023 | 1210 | Day 2 Trial Transcript | Appx52057 |
| 4/14/2023 | 1211 | Day 3 Trial Transcript | Appx52370 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**THE TRUSTEES OF COLUMBIA**
**UNIVERSITY IN THE CITY OF**
**NEW YORK,**

        **Plaintiff,**

    **v.**

**NORTONLIFELOCK, INC.,**

        **Defendant.**

                                   **Civil Action No. 3:13cv808**
                                        **UNDER SEAL**

### MEMORANDUM OPINION

This matter comes before the Court on two of Defendant NortonLifeLock, Inc.'s ("Norton") Motions *in Limine*: **Norton V** and **Norton VI**, part of ECF No. 768, at 20-25. **Norton V** seeks to exclude any arguments and comments regarding the absence from trial of Dr. Marc Dacier. (ECF No. 768.) **Norton VI** seeks to exclude any out-of-court statements, described below, made by Dr. Dacier to Dr. Keromytis at a time well beyond his 2014 deposition and 2014 departure from Norton's employ.

### Introduction

Norton seeks to exclude statements made by Dr. Marc Dacier in 2017-2019 that he was sorry about how Norton handled Dr. Keromytis' and Dr. Stolfo's (the "professors") decoy technology when applying for a provisional patent in 2010, and, ultimately, the '643 Patent in 2011. (ECF 803, Ex. OO; *see* Patent number 8,549,643.) The '643 Patent—listing Mr. Shou and Dr. Dacier as inventors (but listing the professors nowhere)— issued on April 4, 2011. (ECF 803, Ex. OO.) It was entitled "INTEGRATING DECOYS AND DATA LOSS

"The hallmark of Federal Rule of Evidence 807 is that the hearsay sought to be admitted is trustworthy." *United States v. Lucas*, 836 F. App'x 142, 145 (4th Cir. 2020). Courts should focus on the circumstances of the hearsay statement itself over "other evidence offered" at trial when evaluating trustworthiness. *Lucas*, 836 F. App'x at 145–46 (4th Cir. 2020) (quoting *United States v. Shaw*, 69 F.3d 1249, 1253 n.4 (4th Cir. 1995). "[A] court should consider the "'totality of the circumstances that surround the making of the statement' in determining whether the statement has a 'ring of reliability' about it." *Lucas,* 836 F. App'x at 146 (quoting *United States v. Clarke*, 2 F.3d 81, 84–85 (4th Cir. 1993)) (citing *Idaho v. Wright*, 497 U.S. 805, 822 (1990)). "This trustworthiness requirement [] serves as a surrogate for the declarant's in-court cross-examination." *Shaw*, 69 F.3d at 1253 (citing *Wright*, 497 at 820)).

## II.  Background

A.     **The Previous Challenge to the Admission of Dr. Dacier's Statements: Norton's Motion for Sanctions Seeking Exclusion of Evidence from Dr. Dacier**

This issue has come before the Court before.  In June of 2020, Norton sought exclusion of evidence from Dr. Dacier as a sanction against Columbia for communicating with Dr. Dacier because Norton deemed him a represented party. (ECF No. 477.)  Dr. Keromytis had seen Dr. Dacier at work-related events, and, sometime between 2017 and 2018, Dr. Dacier had told Dr. Keromytis that he was "sorry about what Norton had done with the decoy technology" the professors had developed.  Dr. Dacier also said he was against Norton's decisions with respect to the decoy technology because Norton was wrong. (ECF 801, Ex. BB.)  Dr. Dacier said he had opposed Norton's actions at the time.  In 2019, after speaking to Dr. Keromytis, Dr. Dacier agreed to testify as a fact witness here about this belief.

7

record, this Court specified that whether Dr. Dacier was or was not represented by Norton's counsel in October of 2019 remained an open question. (ECF No. 663 n.3 ("It remains undetermined whether Dr. Dacier was or was not represented by Norton's attorneys in October 2019.").)

### C.    Evidence Offered During Sanctions Briefing

Columbia presented the June 2020 declaration of attorney Leslie A.T. Haley with its Memorandum in Opposition to Norton's Motion for Sanctions. (ECF No. 547-3.) Ms. Haley thoroughly examined the case and offered expert testimony regarding legal ethics and professional responsibility (for which the Court finds her qualified under Federal Rule of Evidence 702). *Ms. Haley determined that the "only [] reasonable conclusion [was] that Dr. Dacier was not represented by Norton's counsel" in 2019.* (ECF No. 547-3, at 7, 10 (emphasis added).) Ms. Haley based her opinion not only on her expertise but also on the following (and other) commonsensical facts:

(1)    When initially spoken to, Dr. Dacier stated more than once that he did not want representation and did not seek it (suggesting—even under Norton's theory—constructive discharge);

(2)    Counsel for Norton had not been in contact with Dr. Dacier between 2014 and 2019;

(3)    Dr. Dacier had not been employed by Norton since approximately April of 2014;

(4)    Before speaking in depth, Dr. Dacier consulted his daughter (a lawyer), who told him she did not think Norton's counsel represented him;

(5)    Counsel for Norton failed to apprise Dr. Dacier, pursuant to Virginia Code of Conduct Rule 1.4 and its duty of loyalty under Rule 1.7, that actions were being taken on behalf of Norton without apprising Dr. Dacier;

(6)    Dr. Dacier's 2014 deposition, though facilitated and attended by a Qunin Emanuel attorney, included testimony from Dr. Dacier that was adverse to Norton's interests, rendering a conflict about which Norton would have had to conduct a conflict analysis;

10

(7)    Dr. Dacier's statements between 2017-2019 to Dr. Keromytis also were
        contrary to Norton's interests, which created another basis for conflict of
        interest as to Quinn Emanuel; and,

(8)    Virginia State Bar LEO 1589 was "directly on point" when concluding
        that "a company's attorney cannot create an attorney-client relationship
        simply by telling that former employee that the company's counsel
        represents him or her.

(ECF 547-3.) Ms. Haley opined that, given these circumstances, counsel for Norton had an

ethical obligation to conduct a Conflict Check in order to continue representing both parties.

(ECF 547-3.) A Bar Opinion also could have been attained.

During Sanctions briefing, Norton tried to create a record. Norton countered these

conclusions by producing a June 18, 2014 retainer agreement signed by Dr. Dacier "conditioned

on the fact that [he] and [Norton] share a common interest in the matters." (ECF 562-4.) Norton

also placed on the record a barebones three-paragraph declaration from Dr. Dacier in which he

stated that he had been represented by Quinn Emanuel since June 18, 2014, and that the law firm

continued to represent him. (ECF 562-1.) Norton offered these documents in June 2020, well

after Dr. Dacier said anything to Dr. Keromytis between 2017-19. These documents also

appeared after Dr. Dacier agreed to testify (not thinking Norton's attorneys represented him).

Finally, Norton retained a qualified expert who indicated that counsel for Columbia had violated

Rule 4.1 when contacting Dr. Dacier. (ECF 562-3.) *That ethics expert did not challenge or even

speak to Ms. Haley's finding that a conflict existed.*

**D.    Conclusion**

Any 2014 conduct aside, the Court identifies a conflict of interest for Quinn Emanuel as

to Dr. Dacier's 2019 statement that he was "sorry" about what Norton did as to the 643 Patent

and that he felt or expressed his disagreement at the time. First, this statement clearly runs

contrary to Norton's defense against the Fraudulent Concealment Count, as well as the Sole

11

Inventorship and Joint Inventorship Correction of Inventorship Counts. Dr. Dacier, a named inventor of the Integrating Decoy and Data Loss Prevention '643 Patent, has worked with Dr. Kerotymis while the patent was developed. Dr. Dacier's statements show that he thought Dr. Keromytis should be considered an inventor.

Second, the effect of that testimony was to void the retainer agreement that was "conditioned on the fact that [Dr. Dacier] and [Norton] share a common interest in the matters." (ECF 562-4.) Consequently, this statement is obviously material to a jury's consideration inventorship, and of fraudulent concealment, which turns on how and why the professors were not told about the issuance of the '643 patent.

Ms. Haley has opined that the apparent conflict required Quinn Emanuel to conduct a conflict check or seek a Bar opinion. This record does not demonstrate—or even suggest—that Quinn Emanuel did so.

### E. Quinn Emanuel Fails to Establish a Lack of Conflict in "Personally" Representing Dr. Dacier Since at Least 2017

In the Motions *in Limine* at bar, Norton again presses its position that its counsel, Quinn Emanuel, has represented Dr. Dacier personally and continuously since one of its lawyers attended his deposition for this litigation in 2014, shortly after Dr. Dacier left Norton's employ. As it did its Sanctions Motion, Norton seeks to exclude information obtained from Dr. Dacier and to exclude any testimony from him at trial. (ECF No. 663, at 3–5.)

*Tellingly, throughout these motions, Norton has never denied that Dr. Dacier made the statements against Norton's interest that Dr. Keromytis says he did.* Nor does it identify any direct statement from Dr. Dacier denying the 2017-2019 comments. Quinn Emanuel has not offered a conflict waiver form signed by Dr. Dacier or by Norton. While counsel for Norton states that Dr. Dacier *now* does not want to come to testify from Saudi Arabia, Dr. Dacier has not

12

said so directly on this record. (ECF No. 801, Ex. QQ.) Nothing shows that Dr. Dacier knew he

could disengage Quinn Emanuel. Indeed, the record is bereft of *any* document (absent bald

assertions by Quinn Emanuel) showing that no conflict existed or that Norton confirmed whether

one existed. That Quinn Emanuel has not offered evidence of a non-conflict shows that it has no

such evidence. It is evident that, at least in 2017 through 2020, Quinn Emanuel developed a

conflict in representing both Norton and Dr. Dacier.

In addition to constituting a conflict, Norton's assertion in 2020 of representation of Dr.

Dacier is, at best, questionably timed. Only after it learned that Dr. Dacier would testify against

Norton's position on inventorship of the '643 Patent, and only after Dr. Dacier was brought into

this litigation, did Quinn Emanuel resurrect its communication with him. This was after more

than five years of silence. Once Quinn Emanuel entered the conversation, Columbia and the

Court were told by Norton's counsel that Dr. Dacier reversed his previously unequivocal and oft-

expressed willingness to testify, and communication with Columbia or Dr. Keromytis ceased.

And Columbia had to scurry to respond to a virtually meritless motion for sanctions. This timing

does not inure to the benefit of finding Quinn Emanuel acted fully in Dr. Dacier, and not

Norton's, interest.

More than any conflict or strategically obstructive conduct, however, the Court is most

disturbed by counsel for Norton *misrepresenting* to Dr. Dacier in 2021, "that the Court

concluded he is represented by Norton's Counsel." (ECF 803-31, Ex. QQ.) This is manifestly

untrue. This conclusion could not have been more clearly left *open*. (ECF No. 663, n.3 ("It

remains undetermined whether Dr. Dacier was or was not represented by Norton's attorneys in

October 2019.").) This is direct evidence that Quinn Emanuel has exerted improper control over

Dr. Dacier since at least that time in 2021. Circumstantial evidence since 2020 also bespeaks

gamesmanship by Quinn Emanuel when improperly barring Columbia from access to this material witness and obstructing a full and fair trial by interfering with the availability of a material witness.

This Court concludes that a conflict existed when Dr. Dacier contacted Quinn Emanuel in 2020, and that the firm knew or reasonably should have known that to be the case. And the actual misrepresentation about its representation of Dr. Dacier as late as November compounded the damage done.

### III. Analysis

**A.    Norton V: Missing Witness Instruction**

Norton seeks to thwart Columbia's effort to have the Court issue a missing witness instruction should Dr. Dacier fail to testify. It is established that the unexplained "failure of a party to call an available material witness gives rise to an inference, sometimes called a presumption, that the testimony of such absent witness would be adverse to such party." *Scott v. Watsontown Trucking Co.*, 920 F. Supp. 2d 644, 653 (E.D. Va. 2013), *aff'd* 533 F. App'x 259 (4th Cir. 2013) (quotations omitted).

"The essential elements of the rule . . . are availability and materiality." *Id.* (quoting *Neeley*, 211 S.E.2d at 107). Of course, as with any testimony, the complaining party must establish that the testimony is relevant and non-cumulative. *Id.*

Columbia asserts convincingly that Dr. Dacier is available to Norton, who, while lacking subpoena power, likely has "the power to produce" him. *Id.* Dr. Dacier's "unavailability" exists "in a . . . practical sense" and does not turn "solely" on accessibility by subpoena. *Id.* (citation omitted). "Rather, availability also will turn on the witness's relationship to the nonproducing party." *Id.* (citation omitted).

Courts recognize, as they should, that "[a]vailable is equated to 'control' in some cases, that is the witness is available if [he or she] is in such a relationship with the party that it is likely [the witness's] presence could be procured." *Scott*, 920 F. Supp. 2d at 653. Some courts dub this being "peculiarly within [the] power of one of the parties." *United States v. Bran*, 950 F. Supp. 2d 863, 875 (E.D. Va. 2013) (citations and quotations omitted).

The interaction of Quinn Emanuel with Dr. Dacier is peculiar. Quinn Emanuel readily injected itself as personal counsel—after over five years of no contact—when Columbia pursued him as a fact witness in 2019. Years earlier, in 2014, Norton procured Dr. Dacier as a non-employee deponent. Under the retainer agreement they placed on the record, Quinn Emanuel was retained to represent him *at Norton's expense*. (ECF No. 562.) In circumstances suggesting an "an aura of gamesmanship," *Scott*, 533 F. App'x at 262, after Quinn Emanuel asserted representation, Dr. Dacier abruptly stopped saying he would testify at all, much less happily.

And by filing an ill-founded Motion for Sanctions once Dr. Dacier resurfaced, Quinn Emanuel effectively barred any discussion between plaintiffs and Dr. Dacier. Quinn Emanuel had the peculiar power to procure and submit a declaration from Dr. Dacier in support of its motion for sanctions. And, apparently, Dr. Dacier is available enough to Quinn Emanuel that they feel able to say on his behalf that he no longer wants to testify.

But now, when Dr. Dacier is needed as a witness against it, Norton disavows control because he has not been employed there since 2014 (even though counsel for Norton attended his deposition in 2014 when he was not an employee).[5] Norton goes so far as to say that his 2014 testimony is not adverse. Even if Dr. Dacier's testimony in 2014 were ambiguous, absolutely no

---

[5] Norton similarly posits that Dr. Dacier's statements cannot be introduced as a statement against interest of a party opponent because, as a non-employee, he does not speak for Norton. But Dr. Dacier's complete turnabout on whether he would testify has the unfortunate appearance that counsel for Norton seeks to have it both ways while shielding adverse testimony.

doubt exists that his 2017–2019 statements *are* adverse with respect to the three counts at issue

here. And Norton's turnabout in describing the relationship rings hollow.

Certainly Dr. Dacier is not available to Columbia. And because the comments Columbia

seeks to introduce involve events and conversations that had not happened in 2014, the

comments' admission would not be cumulative to Dr. Dacier's earlier deposition.

### B.     Materiality

If Dr. Dacier were to testify that he was sorry about what Norton did with respect to the

'643 Patent, the testimony would have a more-than-probable "bearing on the proper

determination of the" fraudulent concealment and inventorship claims. *Neeley*, 211 S.E.2d at

107. Certainly, Dr. Dacier's 2017–2019 comments suggesting that Norton improperly omitted

the professors as inventors or co-inventors from the '643 Patent would, at the very least, serve to

"elucidate the transaction." *United States v. Bran*, 950 F. Supp. 2d at 875 (E.D. Va. 2013)

(citations and quotations omitted).

Columbia correctly argues that Dr. Dacier, given his involvement with Professor

Keromytis in the development of the decoy with DLP technology, has material information to

offer. His 2017–2019 statements speak directly, and more expansively, than his 2014 deposition

testimony, to fraudulent concealment and inventorship. They are not cumulative to statements in

his 2014 deposition. The statements at issue establish that Dr. Dacier's testimony would have

been adverse to Norton's position on fraudulent concealment and inventorship. Indeed, Dr.

Dacier's post-deposition comments would expand, supplement, and clarify his earlier deposition

testimony.

Norton's actions here clearly speak to the rationale "that the adverse inference is justified

in circumstances where it . . . appears that the witness' testimony would [be] produced but for the

16

party's apprehension about what it would reveal." *Scott*, 920 F. Supp.2d at 652 (quoting *Poland v. Potomac Family Practice,* 51 Va. Cir. 414, 2000 WL 516308 (internal citations omitted)).

And, as detailed above, Norton's failure to investigate its conflict and its falsely advising Dr. Dacier that the Court had determined that Quinn Emanuel represented him support the giving of the Missing Witness Instruction with respect to Dr. Dacier, and allowing Columbia's counsel from commenting on his absence. The evidence permits only one conclusion: that Quinn Emanuel rendered Dr. Dacier unavailable. The instruction will be given and the commentary will be allowed.

## C.    Norton VI: Residual Hearsay Exception

In addition to the missing witness instruction, Columbia seeks to introduce the content of the statements Dr. Dacier made to Dr. Keromytis, via Dr. Keromytis, under the residual hearsay exception. *See* Fed. R. Evid. 807.[6] Norton seeks to preclude introduction of those statements as untrustworthy hearsay that could not be subject to cross examination. However, this record is the rare one that supports the invocation of the residual hearsay exception.

---

[6] As identified above, the residual hearsay exception gives courts the discretion to allow hearsay not otherwise excepted if:

> (1) the statement is supported by sufficient guarantees of trustworthiness – after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a). Rule 807(b) provides that the statement is admissible only if the proponent gives an adverse party reasonable notice of the intent to offer the statement—including its substance and the declarant's name—so that the party has a fair opportunity to meet it. Fed. R. Evid. 807. Written notice of the statement and the declarant's name must occur before the trial or hearing, or in other form during the trial or hearing if the court finds good cause. Fed. R. Evid. 807.

17

F.3d at 1253) (citing *Wright*, 497 at 820)).  But exceptional circumstances are before the Court.

Quinn Emanuel asserted personal representation contrary to Dr. Dacier's belief.

Contemporaneous documentation makes this plain.  When first contacting Quinn Emanuel, Dr.

Dacier told the firm that he thought he was *not* represented by Quinn Emanuel.  He

memorialized his understanding to Norton, expressing his desire to testify, but without inviting

"any trouble." (ECF 803, Ex. PP.)  In 2019, Dr. Dacier explicitly said that he was "not asking

for [Quinn Emanuel] to represent" him, that he was asking to be *"free to go testify;"* and, that he

had "no problem" going to New York to testify *in the middle of a pandemic*.  Dr. Dacier's

expressed willingness to testify vanished after Quinn Emanuel's intercession.

Even more fundamentally, Norton cannot complain of unfair prejudice from Rule 807

hearsay when it has had years of access to Dr. Dacier in which it could have addressed these and

explored these issues with him.  Because Norton's counsel continues to assert proper

representation now, they have had access to Dr. Dacier under the guise of being his personal

attorney throughout.[7]  Quinn Emanuel has been peculiarly in control of Dr. Dacier since 2019.  It

asserted that relationship even though it had not been determined whether Dr. Dacier was or was

not represented by Norton's counsel, (ECF No. 663 n.3.), while falsely telling Dr. Dacier that

this Court had ruled that Norton's counsel *did* represent him.

While at Norton, Dr. Dacier was intimately involved in the development of the '643

Patent.  He worked with the professors when constructing it, because (as with the professors) he

was initially a named inventor.  He ended up being the only inventor named beyond that of the

Norton employee he supervised.  Dr. Dacier holds material and relevant information on the

---

[7]  Quinn Emanuel should not have been representing Dr. Dacier and Norton after 2020—
and perhaps since 2014.  As such, no later than March 16, 2022, counsel for Norton must
disclose on the record in writing any information garnered from Dr. Dacier during the period
their representation of Dr. Dacier was a conflict.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF
NEW YORK,

        Plaintiff,

                                    Civil Action No. 3:13cv808

  v.

NORTONLIFELOCK, INC.,

        Defendant.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, the Court DENIES

Norton's Motions *in Limine* V and VI, part of ECF No. 767.

The Court also ORDERS that, no later than March 16, 2022, counsel for Norton must

disclose on the record in writing any information garnered from Dr. Dacier during the period

their representation of Dr. Dacier was a conflict.

It is SO ORDERED.

Date: 3-15-2022
Richmond, Virginia

                                  M. Hannah Lauck
                                  United States District Judge

**Appx57**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF
NEW YORK,

        **Plaintiff,**

    **v.**

GEN DIGITAL INC.,
f/k/a SYMANTEC CORPORATION,
f/k/a NORTONLIFELOCK, INC.,

        **Defendant.**

**Civil Action No. 3:13cv808**
**UNDER SEAL**

## MEMORANDUM OPINION

This matter comes before the Court on the Trustees of Columbia University in the City of New York's ("Columbia") Motion for an Order to Show Cause (the "Motion"). (ECF No. 1230.) The Motion requests that the Court order NortonLifelock, Inc. ("Norton")[1] to show cause as to why Norton's initial lead counsel and counsel of record, Quinn Emanuel Urquhart & Sullivan ("Quinn" or "Quinn Emanuel"),[2] should not be held in civil contempt for failure to comply with the Court's March 15, 2022 Order, (ECF No. 890). (ECF No. 1230, at 1.) The Order required Norton's counsel to, "no later than March 16, 2022, . . . disclose on the record in writing any

---

[1] The Court previously issued a Notice explaining that it will refer to the Defendant as "Norton" on a default basis, and why. (ECF No. 1328.)

[2] Quinn Emanuel served as Norton's initial lead counsel until shortly before trial when Latham & Watkins LLP ("Latham"), Norton's second lead counsel, took over that role. On April 8, 2022, just three days before trial, Quinn attorneys moved to withdraw their *pro hac vice* appearances. (ECF No. 1093.) Based on their past egregious conduct, the Court denied that motion the same day. (ECF No. 1094.) Quinn attorneys remain counsel of record in this matter. (*See* ECF No. 1101, at 4; Apr. 8 Tr. 4:11–18 ("I am going to clarify that I'm not going to strike Quinn from the case. . . . I'm not going to strike them from the case. . . . [W]e wouldn't be able to have a trial, and as I said, we are definitely going to have a trial.").)

Quinn Emanuel, however, argues that it complied with the Court's March 15, 2022 Order

through the untimely April 8, 2022 filing,[16] which attached a Declaration from Quinn's lead

counsel for Norton.  (ECF No. 1089-2.)  Despite the assertion a few weeks earlier of an

"inability" to comply with the Court's March 15, 2022 Order based on privilege, this filing

partially discloses communications between Norton's counsel and Dr. Dacier.  But as described

above, the Declaration summarizes only a few communications between counsel and Dr. Dacier

from June 2020 to September 2021 and contains no statement that those sparse communications

constitute "all information garnered from Dr. Dacier" by Norton's counsel from 2017 through

2020.

---

[16] Quinn Emanuel describes at length its reasons for filing the Declaration twenty-two days later than the Court ordered deadline. Specifically, Quinn contends that Norton's initial refusal to comply with the Court's March 15, 2022 Order should be deemed as "Norton's [good faith] efforts to protect its client's confidences" and therefore cannot support a finding of civil contempt.  (ECF No. 1240-1, at 14.)  Although not relevant to the Court's finding that Quinn Emanuel has still not complied with the Order, the Court does not find the reasons persuasive to justify the delay.

Counsel did not request leave to delay compliance to file and receive a ruling on a Motion for Reconsideration and a Motion for Stay.  Additionally, the Motion for Stay was denied on March 22, 2022 (ECF No. 945) and "absent a stay . . . appeal is the remedy for decisions believed to be erroneous." *McLean*, 762 F.2d at 1210.

Additionally, Counsel's claim that the communications with Dr. Dacier cannot be produced due to privilege is unfounded.  Rule 1.6 of the Virginia Rules of Professional Conduct allows attorneys to reveal information protected by the attorney-client privilege "to comply with law or a *court order*."  R 1.6(b)(1) (emphasis added).  Quinn Emanuel quotes the commentary associated with this rule to imply the Court's March 15, 2022 Order was not a "final order." (ECF 1240-1, at 11.)  However, court-ordered filings are considered final for purposes of the Rules of Professional Conduct in the Eastern District of Virginia, and, as this case has shown in spades, can be filed under seal, or (more likely the case here) *in camera. See United States v. Lawson*, No. 4:99CR55-06, 2015 WL 13743435, at *2 (E.D. Va. June 23, 2015).

For these reasons, the Court concludes that good faith does not excuse Norton's conduct in refusing to comply with the Court's directive in its March 16, 2022 filing.  (ECF No. 892.)

In addition, there are "very good reasons," as Columbia noted, to question the scarcity of communications reported in Counsel for Norton's Declaration as well as the accuracy of the summaries of the few communications provided. (ECF No. 1268, at 4.) For example, the Declarant does not mention any conversations with Dr. Dacier before Norton filed its Motion for Sanctions against Columbia's counsel, a time when he should have surely been in contact with his purported "client."

These summaries also cannot constitute "any information garnered from Dr. Dacier," especially when they seem to explicitly contradict the email correspondence from Dr. Dacier already in the record.[17] Far from showing substantial compliance, these omissions render this Declaration plainly inadequate to comply with the Court's March 15, 2022 Order.

The record again conclusively establishes that Norton's counsel, Quinn, by its conduct, violated the terms of the March 15, 2022 Order and had actual (or at least constructive) knowledge of such violations.

### D.    Columbia Has Suffered Harm as a Result

Columbia alleges that it has suffered harm as the result of Quinn Emanuel's noncompliance with the Court's March 15, 2022 Order to provide the information garnered from communications with Dr. Dacier because it believes the information being withheld "likely will further support Columbia's motions under §§ 284 and 285." (ECF No. 1231, at 7; ECF No. 1229, at 7 (sealed).) Columbia points to a number of Dr. Dacier's statements to explain its position, including Dr. Dacier's written statement about a week before the 2022 trial that he was "happy to help the judicial process" as he has "continuously said so far" but that Norton's

---

[17] In addition to the discrepancies discussed herein, Columbia highlights a number of these contradictions, including Dr. Dacier's statements regarding his desire not to be represented, his willingness to attend trial and testify, and his belief that his testimony was harmful to Norton. (ECF No. 1268, at 4–6.)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

|  |  |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,<br><br>*Plaintiff*,<br><br>v.<br><br>NORTONLIFELOCK INC.,<br><br>*Defendant*. | Civil Action No. 3:13-cv-00808-MHL |

**DECLARATION OF DUSTIN F. GUZIOR IN SUPPORT OF COLUMBIA'S OPPOSITION TO NORTON'S MOTION FOR SANCTIONS**

DUSTIN F. GUZIOR hereby declares under penalty of perjury as follows:

1.      I am an attorney at the law firm Sullivan & Cromwell LLP, counsel to Plaintiff The Trustees of Columbia University in the City of New York ("Columbia") in the above-captioned action.  I am a member in good standing of the Bar of the State of New York and am admitted *pro hac vice* in the Eastern District of Virginia for purposes of this action.  I submit this declaration in support of Columbia's opposition to NortonLifeLock Inc.'s ("Norton") motion for sanctions (Dkt. 477).  I have personal knowledge of the facts set forth in this declaration, and if called as a witness, could testify competently to such facts under oath.

2.      I understand that Professor Angelos Keromytis is a former faculty member of the Department of Computer Science at Columbia.  Professor Keromytis is a named inventor of the two patents asserted in this case.

3.      Norton's counsel deposed Professor Keromytis on January 18, 2019.  Professor Keromytis submitted a deposition errata on March 17, 2019.  I spoke with Professor

Keromytis (i) to prepare for his deposition; (ii) to obtain his deposition errata; (iii) and several times thereafter regarding developments in  this case as it moved toward trial.

   4. During one of our discussions after his deposition, Professor Keromytis told me that he had had spoken with Dr. Marc Dacier in a professional capacity.  Professor Keromytis said the discussion occurred in 2019 after his deposition.  I did not learn about this discussion until after the fact, and it did not in any respect occur at my suggestion or instruction.

   5. As relayed to me by Professor Keromytis, in the course of his conversation with Dr. Dacier, Professor Keromytis commented about his deposition, and Dr. Dacier replied that he was surprised the case was still ongoing because he had not heard anything about the case since 2014.  As relayed to me by Professor Keromytis, Dr. Dacier said he still was sorry about what Norton had done with Columbia's decoy technology, was against Norton's decisions with respect to Columbia's technology, and had not wanted to be involved in Norton's actions at that time.   Professor Keromytis told me that Dr. Dacier's comments suggested he would be willing to come to trial to support Columbia's case.

   6. Although I have come to understand, in preparation of the opposition to Norton's sanctions motion, that the information Professor Keromytis shared with me was learned in two conversations—one in the 2017-2018 time period and one in 2019—Professor Keromytis did not make that distinction at the time that he relayed the information to me.  I note this for the sake of transparency and completeness.

   7. During another discussion on October 28, 2019, I told Professor Keromytis that I would need to confirm with Dr. Dacier that he was not represented by counsel before asking if he would be willing to come to trial voluntarily.

-2-

**Appx15981**

8.    On October 28, 2019, Professor Keromytis sent a short e-mail, introducing me to Dr. Dacier, and we scheduled a call for November 14, 2019.  A true and correct copy of that e-mail is attached as Exhibit 1.  Professor Keromytis had no further involvement.

9.    Based on the information available to me in October 2019, I strongly believed Dr. Dacier was not personally represented by counsel.  Limited representations of former employees, for the purpose of a deposition, are common in my experience.  Dr. Dacier told Professor Keromytis that he had not heard anything about the case since 2014, and as I understood the situation from Professor Keromytis, Dr. Dacier wanted to come to trial to support Columbia's case, strongly confirming there was no ongoing relationship.  I also knew that Dr. Dacier—at his 2014 deposition—gave testimony undercutting Norton's defenses, similar to what he had said to Professor Keromytis.  Based on the fact that Professor Keromytis provided the introduction on October 28, 2019, I also understood Dr. Dacier wanted to talk to us and was willing to discuss coming to trial voluntarily.

10.    On November 14, 2019, I had a short call with Dr. Dacier that lasted approximately 10-15 minutes.  Two colleagues from Sullivan & Cromwell joined me on that call.  I explained to Dr. Dacier that I was counsel to Columbia University in this litigation, and explained that we were contacting him in light of his statements to Professor Keromytis, but that I first needed to confirm that he was not represented by counsel in the matter because I could not speak with him if he was represented.  Dr. Dacier responded that he was not represented by counsel, and in his view, he never had been or wanted to be represented by counsel.  Dr. Dacier said there were lawyers paid by Norton (formerly, Symantec) at his 2014 deposition, and he understood he was required to meet with them, but, in his view, they never personally

-3-

represented him.  Dr. Dacier was clear that he was not represented by counsel at the time of our call, and on that basis, I continued our short discussion.

11.     I told Dr. Dacier that, notwithstanding his view that he was not represented, he strictly should not tell me anything about discussions he had in the past with Norton's in-house or external lawyers.  Dr. Dacier confirmed that he understood.

12.     I told Dr. Dacier the only question was whether he would be willing to voluntarily come to trial in Richmond, Virginia and talk about what he had told Professor Keromytis.  Dr. Dacier responded that he would be willing to come to trial, confirmed what he had told Professor Keromytis, and said that be believed what he had told Professor Keromytis was consistent with his deposition testimony.  Dr. Dacier said he would be willing to come to trial and give his testimony, but would need to refresh himself with his deposition transcript.  I told him we would be able to provide the transcript and exhibits.

13.     Dr. Dacier raised only one concern.  Dr. Dacier asked if, under his employment agreements, he would get into "trouble" with Norton if he came to trial to provide testimony and those agreements contained confidentiality provisions or other restrictions.  He asked if I had a copy of his employment agreements, or if I knew what they said, and I said I did not have the agreements and did not know what they said.  Dr. Dacier told us (i) that his daughter was an attorney at Allen & Overy, who had a U.S. law degree and had passed the New York bar exam, and he wanted to discuss the matter with her, and (ii) that he wanted to send an e-mail to Norton to let them know he was planning to come to trial, and to find out if participating in the trial was precluded by any contractual arrangement.  I encouraged Dr. Dacier to do both, and said we would be happy to speak with his daughter directly or with other counsel if he decided to be represented.  We agreed to speak again after the holidays.

-4-

**Appx15983**

14.    Between January 26 and January 29, 2020, Dr. Dacier exchanged a series of very short e-mails with us to arrange a follow-up call on February 11, 2020.  A true and correct copy of those e-mails is attached as Exhibit 2.

15.    On February 11, 2020, I spoke with Dr. Dacier for approximately 5-10 minutes.  Three of my colleagues from Sullivan & Cromwell, including Garrard Beeney, joined the call.

16.    During the call, I first asked Dr. Dacier if he had spoken to his daughter, and whether he decided to be represented by counsel.  Dr. Dacier answered that after consultation with his daughter his decision continued to be that he was not, and did not want to be, represented by counsel in this matter, that he wanted to speak with us about coming to trial, and affirmed that he was voluntarily willing to attend trial.  Dr. Dacier also told us that he had sent two e-mails to Norton to inform them that he was speaking with Columbia's counsel and that he intended to come to trial in the matter.  Dr. Dacier said he had received no responses from Norton to either email, and that he would forward those e-mails to us after the call.

17.    Dr. Dacier reiterated that he would like to refresh his recollections with his deposition transcript, and said he did not have his copy.  He asked if we would send the transcript to him, and we agreed to do so.  We then discussed that we would be in touch to coordinate a pre-trial meeting to review the deposition transcript and discuss trial logistics.

18.    Between February 11 and February 14, 2020, we exchanged a series of short e-mails with Dr. Dacier arranging a meeting to review his deposition transcript.  A true and correct copy of those e-mails is included in Exhibit 2.

19.    On February 12, 2020, Dr. Dacier forwarded to us a copy of the e-mails he had sent to Norton informing them that he was speaking with Columbia's counsel, informing

-5-

**Appx15984**

them that he was planning to come to trial, and noting expressly that he was "not asking" to be represented by Norton's counsel. A true and correct copy of that e-mail is attached as Exhibit 3. This was the first time I saw these e-mails.

20. On March 5, 2020, one of my colleagues sent Dr. Dacier a copy of his deposition transcript, as agreed during the February 11, 2020 call.

21. On March 12, we sent an e-mail to Dr. Dacier noting that, due to the pandemic, we would not be able to meet with him in France to review his deposition transcript, and we discussed a video conference instead. A true and correct copy of that e-mail is attached as Exhibit 4.

22. On March 20, 2020, Dr. Dacier sent an e-mail to us noting that his university had been locked down and that the video conference would need to be postponed. We informed Dr. Dacier that, as of that time, the trial in the case was still scheduled to start on May 19, 2020, but we would follow up as the situation developed. A true and correct copy of that e-mail is attached as Exhibit 5.

23. On March 26, 2020, S&C sent an e-mail to Dr. Dacier noting that the trial date was still set for May 19, 2020 and indicating that S&C would keep Dr. Dacier apprised of any changes to the trial date. A true and correct copy of that e-mail is included in Exhibit 5.

24. Columbia listed Dr Dacier as a witness Columbia would call at trial on its witness list, which was served on March 27, 2020. On April 10, 2020, Nathan Hamstra (Quinn Emanuel) sent an e-mail to Dr. Dacier asking whether he "had any discussions with anyone at Columbia in this case." Dr. Dacier responded, copying me and one of my colleagues, stating that he had "a few phone calls" with Columbia's counsel on which he "indicated that [he] had no problem to come repeat [his] testimony" at trial. Dr. Dacier also told Mr. Hamstra that he sent

e-mails to Norton but never heard back.  A true and correct copy of that e-mail is attached as Exhibit 6 (and the unredacted version has been filed under seal).

25.    Also on April 10, 2020—because of the potential issues Dr. Dacier had raised previously about his employment agreements—I replied to Dr. Dacier's e-mail and asked that he let us know if Norton attempted to influence his testimony or decision to come to trial. Dr. Dacier stated in response that the e-mail from Mr. Hamstra was "the very first mail I have received from them since 2014," and that he copied me on his response "in order to avoid any such possible interference."  Dr. Dacier stated "I will keep doing this, if you don't mind, if they ever come back to me."  A true and correct copy of that e-mail is attached as Exhibit 7 (and the unredacted version has been filed under seal).  I promptly informed Mr. Hamstra of that follow-on communication, and the fact that Dr. Dacier had requested to "keep Columbia's counsel apprised of any efforts by Norton and its counsel to discourage him from testifying at trial."  A true and correct copy of that e-mail is attached as Exhibit 8.

26.    I called Dr. Dacier on the morning of April 10, 2020, and spoke to him for at most 30 seconds to tell him that, especially in light of the pandemic, he should take care of himself and his family, and not worry about our case.  I said we would be in touch at a later date.

27.    Also on April 10, 2020, Norton's in-house attorney, David Majors, sent an e-mail to Dr. Dacier suggesting that Dr. Dacier was required to accept personal representation from Norton's counsel and instructing Dr. Dacier that he should refer Columbia's counsel to Quinn Emanuel.  Dr. Dacier responded to Mr. Majors, stating that Mr. Majors should speak with S&C.  A true and correct copy of that e-mail is attached as Exhibit 9.

28.    Between April 10 and April 13, 2020, I exchanged a number of e-mails with Mr. Hamstra (Quinn Emanuel).  A true and correct copy of those e-mails is included in

Exhibit 8.  In those e-mails, I was entirely transparent about all of our contacts with Dr. Dacier, as outlined in this declaration.  We made a number of requests for meet and confers, for an explanation of Mr. Majors' April 10 e-mail to Dr. Dacier, and for an explanation of Quinn Emanuel's legal and factual position that an ethical breach had occurred, but we received no response until Norton filed its motion for sanctions on May 6, 2020.

Executed on May 20, 2020 in New York, New York.

_____

Dustin F. Guzior

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW
YORK,

*Plaintiff,*

v.

NORTONLIFELOCK INC.,

*Defendant.*

Civil Action No. 3:13-cv-00808-MHL

**DECLARATION OF PROFESSOR ANGELOS KEROMYTIS IN SUPPORT OF
COLUMBIA'S OPPOSITION TO NORTON'S MOTION FOR SANCTIONS**

Professor ANGELOS KEROMYTIS hereby declares under penalty of perjury:

1.    I am a Professor at the Georgia Institute of Technology ("Georgia Tech"),
and my field of research is systems and network security, and applied cryptography.  Before
becoming a Professor at Georgia Tech, I was the Program Manager in the Information
Innovation Office of the Defense Advanced Research Projects Agency ("DARPA").  I am a
former faculty member of the Department of Computer Science at Columbia, and I am an
inventor of the two patents that I understand are asserted in this case.

2.    I have known Dr. Marc Dacier since approximately 2002, and we worked
together on French National Research Agency, Intelligence Advanced Research Projects
Activity, and DARPA projects between 2009 and 2013.  Dr. Dacier and I had a professional
relationship entirely independent of this litigation, and I continue to consider him a colleague and
friend.

3.    I have spoken with Dr. Dacier several times between 2014, when Dr. Dacier left Norton, and the present.  Although I cannot remember the date, to the best of my recollection, I spoke with Dr. Dacier between late 2017 and late 2018 in a professional capacity, and we spoke briefly about this case.  Dr. Dacier noted that he was surprised the case was ongoing because he had not heard anything from Norton's counsel since 2014.  Dr. Dacier told me he was sorry about what Norton had done with the decoy technology that I developed with my former colleague Professor Salvatore Stolfo, which I understand is at issue in this litigation.  Dr. Dacier also said that he was against Norton's decisions with respect to patenting our technology, and that he had not wanted to be involved because he thought what they were doing was wrong.  Dr. Dacier's comments suggested to me that Dr. Dacier would be willing to support Columbia in this litigation.

4.    I was deposed in this case in January 2019.  After my deposition, at some time in the first half of 2019, Dr. Dacier and I spoke again.  With reference to his prior comments about the case, I asked if he would be willing to support Columbia's case at trial.  Dr. Dacier again expressed surprise the case was ongoing, and indicated that he would be willing to discuss the issue of coming to trial further.

5.    I did not have either of these discussions with Dr. Dacier at the direction of Columbia's counsel, and Columbia's counsel learned of them after the fact.

6.    In connection with a 2019 case update from Dustin Guzior—who I understand is counsel to Columbia in this litigation—I told Mr. Guzior about the discussion I had with Dr. Dacier.  I relayed to Mr. Guzior what Dr. Dacier had said to me in prior discussions, and I noted that Dr. Dacier seemed willing to come to trial.  I do not recall whether I distinguished between the 2017-2018 discussion and the 2019 discussion when I shared the information with

-2-

**Appx15989**

Mr. Guzior.   Mr. Guzior told me that it appeared Dr. Dacier no longer was represented by counsel, but that he would need to confirm that with Dr. Dacier.   Without the participation of Columbia's counsel, I spoke with Dr. Dacier and confirmed he would speak to Columbia's counsel.   I then sent an e-mail on October 28, 2019 introducing Dr. Dacier and Mr. Guzior.   After that introduction, I did not have any further involvement in discussions between Columbia's counsel and Dr. Dacier.

Executed on May 20, 2020 in Atlanta, Georgia.

_____
Professor Angelos Keromytis

Appx15990

| | |
|---|---|
| **From:** | dacier <Marc.Dacier@eurecom.fr> |
| **Sent:** | Wednesday, February 12, 2020 1:17 PM |
| **To:** | dacier; Gross, Alexander N. |
| **Cc:** | Guzior, Dustin; Graham, Christopher A.; Beeney, Garrard R. |
| **Subject:** | Re: [EXTERNAL] Re: Columbia v. Symantec |

Dear Alexander, Dustin, Christopher and Garrard,

I'm sending you this note as a follow up to our phone conversation of this last Tuesday, Feb 11 2020.

Per your request, I'm forwarding you the two emails I have sent to the CTO of Symantec (at that time) to inform them that I was asked to testify as a fact witness and to make sure that this was fine with them.

I have sent a first email on Nov 19 2019 and a reminder on Nov 28 2019. Both messages have remained unanswered.

Yours sincerely,

M. Dacier


-------- Forwarded Message --------
      **Subject:** Re: Heads up regarding the lawsuit Symantec vs. Columbia University
        **Date:** Thu, 28 Nov 2019 15:54:07 +0100
       **From:** dacier
**Organization:** EURECOM
          **To:** hugh_thompson@symantec.com, dacier


Kind reminder.

Dear Hugh,

could you be so kind as to acknowledge that you have received this email? Just to make sure it has not been lost in some spam folder somewhere.

Thanks in advance,

M. Dacier


On 19-Nov-19 6:34 PM, dacier wrote:

**Appx16022**

Dear Hugh,

my name is Marc Dacier. I'm a former Symantec employee. I used to be senior director within Symantec Research. This was before your arrival within the company. I was managing teams in France, Ireland and in the US (Herndon).

I'm sending you this note regarding the lawsuit that Columbia University has filed against Symantec in 2013, the trial date of which has now been defined as end of May 2020.

This lawsuit is related to a patent filed by Darren Shou who was working for me at that time, patent filed without me knowing it.

I have been asked to depose in 2014 as a fact witness. My testimony has been recorded in Brussels, Belgium. Symantec had sent an attorney to assist me. For me this was an old story and I had almost forgot about it.

Now, I have been contacted by the lawyers from Columbia University, asking me to come in May to testify as a fact witness at the trial ; to repeat what I have already said in 2014.

They have asked me if I had a counsel representing me. I think I do not but, to avoid any problem, I prefer to reach out to you to obtain your confirmation that Symantec does not consider that the lawyer, paid by Symantec, that was present at my deposition is still representing me, since I have left the company. I am not asking for Symantec to represent me. I am just asking if Symantec considers that it does because, if yes, these lawyers are only allowed to speak to your lawyers and not to me directly.

Also, assuming Symantec lawyers are not representing me, I would like you to confirm that I'm not bound by any kind of contract or obligation with Symantec that would prevent me from responding positively to the request to attend the trial. As I said, I don't want any trouble and want to make sure that I'm not violating any rule or law that I would not be aware of.

I am sorry to ask you these questions but all the people I used to interact with such as the CEO or the past CTO(s), are now gone. Darren Shou is, as I understand it, your direct report and I suppose that you are looking into this lawsuit and its consequences. This is why I choose to write to you.

Thank you very much for taking the time to respond to me. In the absence of any reply, I will consider that you implicitly replied negatively to my both requests, ie Symantec is not representing me and I'm free to go testify.

All the best

M. Dacier

| | |
|---|---|
| **From:** | Guzior, Dustin |
| **Sent:** | Friday, April 10, 2020 3:24 PM |
| **To:** | Gross, Alexander N. |
| **Subject:** | FW: [EXTERNAL] Re: Columbia v. Symantec - deposition errata |

Modified archive version.

---

**From:** Guzior, Dustin <guziord@sullcrom.com>
**Sent:** Friday, April 10, 2020 2:06 AM
**To:** dacier <Marc.Dacier@eurecom.fr>
**Cc:** Gross, Alexander N. <grossa@sullcrom.com>
**Subject:** RE: [EXTERNAL] Re: Columbia v. Symantec - deposition errata

That's perfect. Thank you, Marc.

Dustin

---

**From:** dacier <Marc.Dacier@eurecom.fr>
**Date:** Friday, Apr 10, 2020, 2:05 AM
**To:** Guzior, Dustin <guziord@sullcrom.com>, dacier <Marc.Dacier@eurecom.fr>
**Cc:** Gross, Alexander N. <grossa@sullcrom.com>
**Subject:** Re: [EXTERNAL] Re: Columbia v. Symantec - deposition errata

Hi Dustin,

all is well here, thanks for asking.

I hope it is the same for you, your family, close ones and colleagues.

I won't say that they have tried to discourage or direct my participation so far. It is the very first mail I have received from them since 2014. Nevertheless, I did cc you and Alexander in order to avoid any possible such interference. I will keep doing this, if you don't mind, if they ever come back to me.

All the best

Stay safe, stay healthy

M. Dacier

On 10-Apr-20 7:59 AM, Guzior, Dustin wrote:

    Hi, Marc:

1

**Appx16060**

Hope all is still well. I do not blame you for not having NYC as #1 on your travel list. If Norton (f/k/a Symantec) or their counsel at Quinn Emanuel contact you again, please let us know. It is not legally proper for them to discourage or direct your participation in this case in any respect (frankly, they should know better).

Stay safe and thank you,

Dustin

**From:** dacier <dacier@eurecom.fr>
**Date:** Friday, Apr 10, 2020, 1:39 AM
**To:** Nathan Hamstra <nathanhamstra@quinnemanuel.com>, 'Marc Dacier' <marc.c.dacier@gmail.com>
**Cc:** Dave Nelson <davenelson@quinnemanuel.com>, Gross, Alexander N. <grossa@sullcrom.com>, Guzior, Dustin <guziord@sullcrom.com>
**Subject:** [EXTERNAL] Re: Columbia v. Symantec - deposition errata

Dear Nathan and Dave,

I have indeed been contacted by the law firm representing Columbia (Sullivan & Cromwell LLP; D. Guzior and A. Gross are in cc) at the end of last year. I have then sent an email to the, then, CTO of Symantec, Hugh Thompson (to whom Darren Shou was directly reporting at the time), asking for instructions before talking to them. You can find my email included here below. I have sent it on Nov 19, with a reminder on the 28th. I have never received any feedback.

As a follow up, I had indicated that I had no problem to come repeat my testimony, if needed.

A coronavirus pandemic and a travel ban later, things are on hold and I have no idea how things will unfold. As of now, clearly, New York would not be my favorite travel destination but, hopefully, things will soon get better...

Please reach out to M. Guzior and Gross if you need more precise input on the few phone calls we have had so far.

I hope this helps

M. Dacier

====== Message sent to Hugh Thompson on Nov 28, as a reminder for the one sent on Nov 19 =====

Kind reminder.

Dear Hugh,

could you be so kind as to acknowledge that you have received this email? Just to make sure it has not been lost in some spam folder somewhere.

Thanks in advance,

M. Dacier

On 19-Nov-19 6:34 PM, dacier wrote:

Dear Hugh,

my name is Marc Dacier. I'm a former Symantec employee. I used to be senior director within Symantec Research. This was before your arrival within the company. I was managing teams in France, Ireland and in the US (Herndon).

I'm sending you this note regarding the lawsuit that Columbia University has filed against Symantec in 2013, the trial date of which has now been defined as end of May 2020.

This lawsuit is related to a patent filed by Darren Shou who was working for me at that time, patent filed without me knowing it.

I have been asked to depose in 2014 as a fact witness. My testimony has been recorded in Brussels, Belgium. Symantec had sent an attorney to assist me.  For me this was an old story and I had almost forgot about it.

Now, I have been contacted by the lawyers from Columbia University, asking me to come in May to testify as a fact witness at the trial ; to repeat what I have already said in 2014.

They have asked me if I had a counsel representing me.  I think I do not but, to avoid any problem, I prefer to reach out to you to obtain your confirmation that Symantec does not consider that the lawyer, paid by Symantec, that was present at my deposition is still representing me, since I have left the company.  I am not asking for Symantec to represent me. I am just asking if Symantec considers that it does because, if yes, these lawyers are only allowed to speak to your lawyers and not to me directly.

Also, assuming Symantec lawyers are not representing me, I would like you to confirm that I'm not bound by any kind of contract or obligation with Symantec that would prevent me from responding positively to the request to attend the trial.  As I said, I don't want any trouble and want to make sure that I'm not violating any rule or law that I would not be aware of.

I am sorry to ask you these questions but all the people I used to interact with such as the CEO or the past CTO(s), are now gone. Darren Shou is, as I understand it, your direct report and I suppose that you are looking into  this lawsuit and its consequences. This is why I choose to write to you.

Thank you very much for taking the time to respond to me. In the absence of any reply, I will consider that you implicitly replied negatively to my both requests, ie Symantec is not representing me and I'm free to go testify.

All the best

M. Dacier


On 10-Apr-20 12:18 AM, Nathan Hamstra wrote:

3

CONFIDENTIAL MATERIAL OMITTED



Regards,
Nate
**Nathan Hamstra**
**Quinn Emanuel Urquhart & Sullivan, LLP**
312.705.7417
191 North Wacker Drive, Suite 2700 | Chicago, IL 60606

---

**This is an external message from: dacier@eurecom.fr **

---

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

<dmcdaniel@spottsfain.com>; *ColumbiaSymantecTeam <ColumbiaSymantecTeam@sullcrom.com>; 'Nina Tallon'
<nina@ninatallonlaw.com>
**Subject:** RE: [EXTERNAL] Re: Columbia v. Symantec - deposition errata

Dustin,

We previously pointed out the numerous times you were informed Dr. Dacier was represented by Norton's counsel prior
to your contact with him.

At that point, for any topic arguably related to the lawsuit, you are obligated to contact only us regarding any desire to
obtain information from Dr. Dacier and either obtain permission to contact him or get confirmation that he is no longer
being represented.  Any direct contact with the witness concerning a lawsuit after being informed that witness is
represented by counsel is a serious ethical violation.

Your direct contact with Dr. Dacier (numerous times by your own admission) is therefore a serious ethical breach.

In order to determine our course of action to remedy this breach, we need to know exactly on what dates Dr. Dacier was
contacted (including via email) and who was a party to each of those contacts.

Regards,


Nathan Hamstra
Quinn Emanuel Urquhart & Sullivan, LLP
312.705.7417
191 North Wacker Drive, Suite 2700 | Chicago, IL 60606

---

**From:** Guzior, Dustin [mailto:guziord@sullcrom.com]
**Sent:** Friday, April 10, 2020 2:04 PM
**To:** Nathan Hamstra <nathanhamstra@quinnemanuel.com>
**Cc:** Beeney, Garrard R. <Beeneyg@sullcrom.com>; Gross, Alexander N. <grossa@sullcrom.com>; 'Carr, Dabney J.'
<dabney.carr@troutman.com>; 'John Erbach' <jerbach@spottsfain.com>; Richard Erwine
<richarderwine@quinnemanuel.com>; Alexander Rudis <alexanderrudis@quinnemanuel.com>; Stephen Swedlow
<stephenswedlow@quinnemanuel.com>; Dave Nelson <davenelson@quinnemanuel.com>; Dana McDaniel
<dmcdaniel@spottsfain.com>; *ColumbiaSymantecTeam <ColumbiaSymantecTeam@sullcrom.com>
**Subject:** RE: [EXTERNAL] Re: Columbia v. Symantec - deposition errata

**[EXTERNAL EMAIL]**

---

Dear Nate,

As an initial matter, to avoid a dispute and without agreeing to your characterizations, we confirm that we will delete all
of the 2014 portions of the e-mail chain Dr. Dacier sent to us last night.  Although Norton was not the "producing party,"
and thus cannot invoke Section 21 of the Protective Order, we want to avoid an unnecessary dispute regarding the 2014
e-mails.  We do not, however, see any basis for a claim of privilege over "all portions" of the e-mail chain prior to my
1:55am ET e-mail to you and Mr. Nelson.  Setting aside for the moment the question of whether any 2019 portion of the
e-mail chain is privileged (we do not believe it is), you cannot reasonably assert privilege over an e-mail from Dr. Dacier
that was in part addressed to me for the purpose of communicating with me.  We should discuss this issue during the
meet and confer I proposed last night.  Dr. Dacier also copied us on a response to an e-mail from David Majors this
morning—purporting to instruct Dr. Dacier that he (i) was represented by counsel and (ii) must direct inquiries to Quinn
Emanuel—and we similarly do not see any basis to assert privilege over that communication.

4

**Appx16068**

| | |
|---|---|
| **From:** | dacier <dacier@eurecom.fr> |
| **Sent:** | Friday, April 10, 2020 10:57 AM |
| **To:** | David Majors; dacier@eurecom.fr; marc.c.dacier@gmail.com.; Guzior, Dustin; Gross, Alexander N. |
| **Subject:** | [EXTERNAL] Re: Columbia Univ. v. Symantec Corporation |

Hi David,

if that is the case, I guess you need to talk directly with D. Guzior and A. Gross, both cc'ed.

M. Dacier


On 10-Apr-20 4:13 PM, David Majors wrote:

> Marc,
>
> My name is David Majors.  As you may recall, I am in-house litigation counsel at NortonLifeLock Inc. (f/k/a Symantec Corporation).  We spoke several times in the 2014 timeframe.  I recently learned that you sent some emails to Hugh Thompson regarding whether NortonLifeLock counsel at Quinn Emanuel continues to represent you in this matter.  I want to confirm that they do in fact continue to represent you related to this matter.  Please let me know if you have any questions, and if contacted by anyone in connection with this matter (including counsel for Columbia), please direct them to Dave Nelson and Nate Hamstra at Quinn Emanuel.
>
> Thank you,
> David
>
>
> **David Majors**
> Sr. Corporate Counsel, Litigation
> **O:** 650 527 5116 **M:** 408 218 6408
> david.majors@nortonlifelock.com
> NortonLifeLock.com [nortonlifelock.com]



*NortonLifeLock Inc. is a standalone company dedicated to consumer Cyber Safety.*

This message (including any attachments) is intended only for the use of the individual or entity to which it is addressed and may contain information that is non-public, proprietary, privileged, confidential, and exempt from disclosure under applicable law or may constitute attorney work product. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, notify us immediately by telephone and (i) destroy this message if a facsimile or (ii) delete this message immediately if this is an electronic communication.

**\*\*This is an external message from: dacier@eurecom.fr \*\***

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, | Civil Action No. 3:13-cv-00808-MHL |
| *Plaintiff* | |
| v. | |
| NORTONLIFELOCK INC. f/k/a SYMANTEC CORPORATION, | |
| *Defendant* | |

## DECLARATION OF DR. MARC DACIER

Dr. Marc Dacier hereby declares under penalty of perjury:

1.  My name is Marc Dacier.  I am a professor at Eurecom in Sophia Antipolis, France.

2.  On August 19, 2014, I was deposed in Brussels, Belgium, in the case of Columbia University versus what used to be known as Symantec Corporation.

3.  Quinn Emanuel has represented me since June 18, 2014, and continues to represent me, in connection with the Columbia case.

Executed on June 17, 2020 in Sophia Antipolis, France.

Dr. Marc Dacier

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF
NEW YORK,

        Plaintiff,

                                              **UNDER SEAL**

v.                                         **Civil Action No. 3:13cv808**

NORTONLIFELOCK, INC.,

        Defendant.

## <u>MEMORANDUM ORDER</u>

This matter comes before the Court on the following:

(1)    Plaintiff the Trustees of Columbia University in the City of New York's ("Columbia") Motion for Leave to File Sur-Reply, (ECF No. 580);

(2)    Defendant NortonLifeLock, Inc.'s ("Norton") Motion for Sanctions (ECF No. 477);

(3)    Columbia's Motions to Seal Exhibits, (ECF Nos. 543, 626);

(4)    Columbia's First Omnibus Motion *in Limine*, (ECF No. 489), and Second Omnibus Motion *in Limine*, (ECF No. 491) (collectively, the "Omnibus Motions");

(5)    Norton's Motions *in Limine*, (ECF Nos. 493, 595), (collectively, with the Omnibus Motions, the "Motions *in Limine*");

(6)    Columbia's Motion for Leave to File a Cross Motion for Partial Summary Judgment, (ECF No. 630); and,

(7)    Columbia's Motions for Leave to File Supplemental Authority, (ECF Nos. 648, 651), (collectively, with the previous motions, the "Pending Motions").

The Parties have either responded to the Pending Motions or the time to do so has

expired. These matters are ripe for disposition. The Court dispenses with oral argument because

witness for Columbia.  Norton then claimed representation.  (Pl. Mem. Opp. Def's Mot. Sanctions Ex. 6, ECF No. 546-1.)

In February 2020, while his emails remained unanswered, Dr. Dacier stated on a phone call with Columbia's attorneys that his daughter confirmed he was not represented by counsel, that he did not want to be represented by counsel, and that he wanted to continue speaking with Columbia's attorneys.  (Pl. Mem. Opp. Def's Mot. Sanctions 14, ECF No. 546.)  On March 27, 2020, Columbia served its witness list, including that they were planning on calling Dr. Dacier. Only after that, on April 10, 2020, did Norton's attorneys contact Dr. Dacier to advise him about how to respond to the request to testify.  (*Id.* 11.)

Because Columbia reasonably believed that Dr. Dacier was not represented by defense counsel, the Court will deny the Motion for Sanctions.  (ECF No. 477.)  Virginia Rule of Professional Conduct 4.2 applies when counsel "communicates about the substance of a representation" with a person "the lawyer knows to be represented."  Va. Code of Pro. Conduct r. 4.2.  Dr. Dacier informed plaintiff's counsel at the time of the communications that he was not represented by counsel, and Dr. Dacier's own email to Norton personnel confirms this assumption.  Further, Dr. Dacier's email supports Columbia's argument that counsel asked Dr. Dacier to confirm whether he was represented by counsel, which he believed he was not. Columbia attorneys' contact with Dr. Dacier was therefore in good faith and is not sanctionable.[3] For these reasons, the Court will deny the Motion for Sanctions, including Norton's requests to exclude information obtained by Dr. Dacier and the request to exclude him from trial.

---

[3] It remains undetermined whether Dr. Dacier was or was not represented by Norton's attorneys in October 2019.

5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW
YORK,

*Plaintiff*

v.

NORTONLIFELOCK INC. f/k/a
SYMANTEC CORPORATION,

*Defendant*

Civil Action No. 3:13-cv-00808-MHL

**NORTONLIFELOCK INC.'S MEMORANDUM
IN SUPPORT OF MOTIONS *IN LIMINE***

**CONFIDENTIAL MATERIAL OMITTED**

**CONFIDENTIAL MATERIAL OMITTED**

**CONFIDENTIAL MATERIAL OMITTED**

**CONFIDENTIAL MATERIAL OMITTED**

**CONFIDENTIAL MATERIAL OMITTED**



| | |
|---|---|
| **From:** | Nathan Hamstra |
| **Sent:** | Friday, January 21, 2022 9:40 AM |
| **To:** | *ColumbiaSymantecTeam; Guzior, Dustin; 'Ecker, Jessica R.' |
| **Cc:** | Symantec-Columbia; 'Carr, Dabney J.'; 'Dana McDaniel'; 'John Erbach' |
| **Subject:** | Columbia' witness list |

Counsel,

We have a couple questions about Plaintiff's witness list.

First, Plaintiff's witness lists Marc Dacier as "Live/Video."  As we earlier noted, Dr. Dacier has decided not to travel to the United States to attend the trial. Please confirm that Columbia's "Live" indication in its witness list is merely in the event that Dr. Dacier has a change of heart and decides to attend trial.

Second, Darren Shou and Dermot Wall appear on Columbia's witness list as "Live/Video."  Please confirm that the "Live" indication merely indicates that Columbia intends to cross-examine those witnesses if they testify in Norton's rebuttal case, and that Columbia does not intend to attempt to call those witnesses adversely during Columbia's case in chief.

Regards,

**Nathan Hamstra**
**Quinn Emanuel Urquhart & Sullivan, LLP**
312.705.7417
191 North Wacker Drive, Suite 2700 | Chicago, IL 60606

| | |
|---|---|
| **From:** | Beeney, Garrard R. |
| **Sent:** | Thursday, November 18, 2021 12:16 PM |
| **To:** | Richard Erwine |
| **Cc:** | Dave Nelson; Nina Tallon; Nathan Hamstra |
| **Subject:** | RE: [EXTERNAL] RE: Columbia v. Norton |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Thanks, although I should add we disagree with your reading of the order.

---

**From:** Richard Erwine
**Sent:** Thursday, November 18, 2021 12:05 PM
**To:** Beeney, Garrard R.
**Cc:** Dave Nelson ; Nina Tallon ; Nathan Hamstra
**Subject:** RE: [EXTERNAL] RE: Columbia v. Norton

Yes, Dr. Dacier has been informed of the order, including that the Court concluded he is represented by Norton's counsel.

Richard W. Erwine
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 24th Floor
New York, NY 10010
Direct: (212) 849-7135
Main Fax: (212) 849-7100
E-mail: richarderwine@quinnemanuel.com
Web: www.quinnemanuel.com [quinnemanuel.com]

PRIVILEGED & CONFIDENTIAL

---

**From:** Beeney, Garrard R. <Beeneyg@sullcrom.com>
**Sent:** Thursday, November 18, 2021 11:45 AM
**To:** Richard Erwine <richarderwine@quinnemanuel.com>
**Cc:** Dave Nelson <davenelson@quinnemanuel.com>; Nina Tallon <ninatallon@quinnemanuel.com>; Nathan Hamstra <nathanhamstra@quinnemanuel.com>
**Subject:** RE: [EXTERNAL] RE: Columbia v. Norton

**[EXTERNAL EMAIL from beeneyg@sullcrom.com]**

---

The question in my email of 11/15: has Dr. Dacier been informed of the contents of the Court's order resolving Norton's motion ? thanks Rich

1

Garrard:

Thanks for the email.

With respect to Dr. Dacier, we disagree with your statement that Dr. Dacier agreed to come to trial, and also disagree with your characterization of the relief our sanctions motions requested. Our communications with Dr. Dacier continue to be protected by attorney-client privilege; we understand that Dr. Dacier does not intend to appear at trial. We will let you know if that changes.

With respect to your remaining points, although we note that we have not received a *Daubert* or summary judgment order to date and therefore the issues for trial have not been narrowed since the last exchange, please see below:

- Witness List: we are happy to take another look at the witness list and participate in another exchange on Nov. 22.
- Exhibits: we are happy to take another look at our proposed exhibits and participate in another exchange on Dec. 6
- Deposition Designations: we see no reason to narrow deposition designations at this time
- Uncontested facts: rather than exchanging drafts, we suggest that the parties meet and confer first to determine if any headway can be made. The parties engaged in extensive meet and confers on this issue the last time around. We would be happy to do so at some point in late November.
- Other issues: we are happy to meet and confer on the issues that you raised. Let's figure out a date/time once we get into November.

Regards,
Rich


Richard W. Erwine
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 24th Floor
New York, NY 10010
Direct: (212) 849-7135
Main Fax: (212) 849-7100
E-mail: richarderwine@quinnemanuel.com
Web: www.quinnemanuel.com [quinnemanuel.com]
PRIVILEGED & CONFIDENTIAL

---

**From:** Beeney, Garrard R. <Beeneyg@sullcrom.com>
**Sent:** Monday, October 18, 2021 4:45 PM
**To:** Richard Erwine <richarderwine@quinnemanuel.com>
**Subject:** Columbia v. Norton

**[EXTERNAL EMAIL from beeneyg@sullcrom.com]**

---

Rich: I hope you and your family are well.
I'm writing to suggest a few things which I think will make both parties' trial preparation a bit more manageable in light of the PTO we submitted in June of 2020 and the Court's September 29, 2021 order.
First, with regard to Dr. Dacier, you'll recall that he had agreed to come to trial prior to Norton's contact with him in connection with the motion the Court recently denied. Would you confirm that you have informed Dr. Dacier that the

4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF
NEW YORK,

        Plaintiff,

    v.                            Civil Action No. 3:13cv808

NORTONLIFELOCK, INC.,

        Defendant.

**MEMORANDUM ORDER**

       This matter comes before the Court on Norton Lifelock, Inc.'s ("Norton") Motion for

Reconsideration of Certain of the Court's *Daubert* Orders, (ECF No. 922), and Motion to

Reconsider Norton's Motions *in Limine* Nos. 5 and 6 and for an Immediate Stay of the

Proceedings, (ECF No. 928) (collectively, the "Motions for Reconsideration"). In its Motions,

Norton seeks reconsideration of several *Daubert* and Motion *in Limine* decisions issued by this

Court. Norton also seeks an immediate stay. The Motions will be denied.

       *First*, Counsel for Norton seeks a stay because, it says, it had no opportunity to respond

to Columbia's contention that a conflict existed as to representing Dr. Dacier and Norton. This is

not true. For the reasons stated in ECF Nos. 889 and 900, and those below, the Court DENIES

the Motion to Stay.

       Columbia raised the issue of a conflict in briefing, and Norton had a full and fair

opportunity to respond to that briefing. Norton filed its brief in response. No party disputed then

or disputes now that Norton's counsel represented Dr. Dacier in 2014. But when deciding

Norton's Motion for Sanctions, the Court explicitly said, and said why, "[it] remains

*and* Dr. Dacier.  The Court found that representing *both* was a conflict.  Seemingly, Quinn

Emanuel could represent one or the other with an appropriate waiver.  Indeed, Norton was long

ago told how to do this by Columbia expert Leslie Haley in her declaration.  Ms. Haley said

Virginia Rule of Professional Conduct 1.7(b) *"provides that if a concurrent conflict of interest*

*exists, but the lawyer believes he or she can provide competent and diligent representation to*

*each affected client, then the lawyer may ask for each client's informed consent to continue the*

*representation."*  (ECF No. 574-3, at 5.)  The Court, in its discretion, would readily have

permitted Quinn Emanuel to continue to represent Norton in this case given an appropriate

waiver and would do so now.

     Dr. Dacier's testimony is different.  The peculiar circumstance of his unavailability—

after the earlier finding that his 2019–20 statements could be adverse to Norton thereby creating

questions about concurrent representation—counseled a different outcome.  This was

compounded by a third and perhaps more serious complication:  the Court learned in the Motions

*in Limine* that, apparently, Norton incorrectly told Dr. Dacier the Court deemed Quinn Emanuel

his lawyer.  The statement of Dr. Dacier's unavailability and consent to representation in its

Motions *in Limine* were made only by Quinn Emanuel (not Dr. Dacier) in the face of an

uncorrected and substantial record questioning concurrent representation.  The Court concluded

that Dr. Dacier is unavailable in the practical sense because Norton and Columbia have no time

to expand the record before trial.

     Allowing Norton to delay trial to correct its omission, as it seeks to do now, would create

undue prejudice to Columbia and would unnecessarily impede a just and efficient trial.  Delaying

trial now (as Norton now asks) when Norton had months to create the record is not warranted.

Because we are on the eve of trial, the Court allowed Dr. Dacier's statements to be admitted as

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, <br><br>          *Plaintiff*, <br><br>    v. <br><br> NORTONLIFELOCK INC., <br><br>          *Defendant*. | Civil Action No. 3:13-cv-00808-MHL |

## COLUMBIA'S NOTICE OF NORTON'S COMMUNICATIONS WITH DR. DACIER ON APRIL 5-7, 2022

Plaintiff, The Trustees of Columbia University in the City of New York ("Columbia"), by counsel, hereby notifies the Court of relevant evidence of Norton's undisclosed communications with Dr. Dacier, as recently as the morning of yesterday's hearing, regarding the issues that were argued yesterday and remain pending before the Court. Columbia believes that these communications (provided by Norton to Columbia only last night at 9:39 p.m. Eastern Time) should be provided to the Court as soon as possible as the Court considers the remedy issues discussed yesterday. The new evidence is attached as Exhibit A and Columbia's subsequent request that Norton provide this evidence to the Court promptly (particularly in light of the Court marking exhibits at yesterday's hearing) is attached as Exhibit B. As noted in Exhibit B, a number of the statements in Exhibit A directly contradict arguments and express and implied representations that Norton has made regarding Dr. Dacier.

For example, Dr. Dacier stated early in the morning on April 7, 2022:

> [T]he facts stated in my testimony are, indeed, in my opinion, harmful for Norton's case. I am no fool and I can see now why the Quinn team has done what they have done over the years, while pretending to 'represent' me."

On April 5, Dr. Dacier also stated:

I must admit to be a bit surprised by this sudden rush after years of inaction and the several calls with the Quinn team in which they <u>repeatedly told me that there was no need for me to do anything, that they did not want me to do anything, that my testimony in Brussels was all that was needed</u>.  I'm happy to help the judicial process though, I have continuously said so far.  (emphasis added).

Again, Columbia does not want to burden the Court, but we understood that the issue of remedy was actively being considered by the Court and we thought that this evidence, which we believe is relevant to the Court's consideration, should be provided as soon as possible.

Dated:  April 8, 2022                                   Respectfully submitted,

                                                       */s/ John M. Erbach*
                                                       Dana D. McDaniel (VSB No. 25419)
                                                       John M. Erbach (VSB No. 76695)
                                                       SPOTTS FAIN, P.C.
                                                       411 East Franklin Street, Suite 600
                                                       Richmond, Virginia  23219
                                                       Tel.: (804) 697-2065
                                                       Fax:  (804) 697-2165
                                                       dmcdaniel@spottsfain.com
                                                       jerbach@spottsfain.com
                                                       chester@spottsfain.com

                                                       Garrard R. Beeney (*pro hac vice*)
                                                       Dustin F. Guzior (*pro hac vice*)
                                                       Stephen J. Elliott (*pro hac vice*)
                                                       SULLIVAN & CROMWELL LLP
                                                       125 Broad Street
                                                       New York, New York  10004
                                                       Tel.: (212) 558-4000
                                                       Fax: (212) 558-3588
                                                       beeneyg@sullcrom.com
                                                       guziord@sullcrom.com
                                                       elliotts@sullcrom.com

                                                       *Counsel for Plaintiff The Trustees of
                                                       Columbia University in the City of New
                                                       York*

2

**Appx35885**

| | |
|---|---|
| **From:** | Marc Dacier <marc.c.dacier@gmail.com> |
| **Sent:** | Thursday, April 7, 2022 1:00 AM |
| **To:** | Callahan, David (CH) |
| **Subject:** | Re: Columbia v. NortonLifeLock -- |

David,
Since you have been brought into the case a week and a half ago, you may not have had time to read my testimony. I have nothing against Norton, per se, but the facts, stated in my testimony are, indeed, in my opinion, harmful for Norton's case. I am no fool and I can see now why the Quinn team has done what they have done over the years, while pretending to "represent" me.  Having me repeating the facts once more is not going to change them.

M. Dacier

**From:** <david.callahan@lw.com>
**Date:** Thursday, April 7, 2022 at 1:54 AM
**To:** <marc.c.dacier@gmail.com>
**Subject:** RE: Columbia v. NortonLifeLock --

Marc:

I very much understand your frustration with the timing, and sincerely hope that you didn't take my requests as insensitive to your work and personal obligations.  We were just brought into the case a week and a half ago, and are doing the best we can to make sure that Norton receives a fair trial.  The issue of whether you can attend trial has become a significant issue in the case, with Columbia seeking an instruction from the judge to the jury that because you are not testifying at the trial, the jury can infer that it is because you have something harmful to say about Norton's case.  For obvious reasons, we would like to avoid this, and would you to testify because we have nothing to hide.

Regarding the video testimony, are there any time periods in which you could make yourself available, even for a few hours?  Understood regarding the religious holiday, which of course takes priority, but even if that cannot happen during normal business hours, we might be able to convince the Court to allow your testimony to be recorded and then played back at trial, so even if the video testimony needed to take place at, let's say, midnight Richmond time, it might still be workable (depending on what the judge says).  We've done this before with overseas witnesses, starting testimony, for example, at 3 am Washington time.

Again, we are extremely aware that we are asking a lot on short notice, but would like to do everything we can to be able to present the full and complete facts at trial.  We'd greatly appreciate any help you could give in this regard.  Many thanks.


**David K. Callahan**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7694
Email: david.callahan@lw.com
https://www.lw.com

1

**Appx35887**

**From:** Marc Dacier <marc.c.dacier@gmail.com>
**Sent:** Wednesday, April 6, 2022 11:14 AM
**To:** Callahan, David (CH) <david.callahan@lw.com>
**Subject:** Re: Columbia v. NortonLifeLock --

Dear David,
Would you be able to free 4 consecutive days (2 days in court and 2 days for the trip, at least) in your agenda next week or the week after? I guess not. It is the same for me. Remote testimony, due to the 7 hours time difference, would have to take place in the late afternoons which are quite busy for me  with unmovable meetings already and the evenings, because of the ongoing Ramadan, is devoted to traditional dinners to which my presence is expected, by courtesy when invited.

Had you warned me months ago when you, most probably, had been given the trial dates, I could have frozen some days to make myself available. As it is, you will have to use my Brussels testimony to which, anyway, I do not have anything to add.

All the best,
M. Dacier

**From:** <david.callahan@lw.com>
**Date:** Wednesday, April 6, 2022 at 4:10 PM
**To:** <marc.c.dacier@gmail.com>
**Subject:** RE: Columbia v. NortonLifeLock --

Thanks very much for the quick response, Marc.  I very much appreciate it.  We understand that this is short notice, but it would be really helpful if you could come.  We need to talk to the Court, but you could likely testify early to the middle of the second week of trial (in the April 18-20 timeframe) if that might help, giving you closer to 2 weeks before you would need to be in Richmond.  Might that work?

One other possibility might be you testifying remotely, by video.  Would you be willing to do that?  Please note that the Court would need to agree to this approach, and might say that your testimony would only be accepted live, but we could at least ask if you'd be willing to give remote testimony.  Thanks for your consideration.

Dave

**David K. Callahan**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7694
Email: david.callahan@lw.com
https://www.lw.com

**From:** Marc Dacier <marc.c.dacier@gmail.com>
**Sent:** Wednesday, April 6, 2022 12:23 AM

**To:** Callahan, David (CH) <david.callahan@lw.com>
**Subject:** Re: Columbia v. NortonLifeLock --

Dear David,
I am more than willing to help but such an extremely short notice (6 days?) makes it impossible for me to come.

Marc

**From:** <david.callahan@lw.com>
**Date:** Wednesday, April 6, 2022 at 1:20 AM
**To:** <marc.c.dacier@gmail.com>
**Subject:** RE: Columbia v. NortonLifeLock --

Thanks Marc.  Let's plan to talk at 9 am Sunday, I will send a calendar invite.  This invitation will have numbers for whatever country you might be in; if you don't see the right one, let me know and we can sort it.

But in terms of why we're reaching out, Norton would very much like you to come testify at the upcoming trial in Richmond, which will be from April 12-22.  The plaintiff, Columbia, has made a significant issue out of the fact that you're presently not slated to testify live in Court.  As counsel for Norton, we would welcome your testimony at the trial to tell the truthful facts as you see them, and would make it as convenient as reasonably possible for you, including covering your reasonable out of pocket expenses to attend.  You should only need to be in Richmond 1-2 days, and we can provide you a quiet place to work or relax while you're not in Court.

While we are fine waiting until Sunday to chat, we have a hearing with the Court on Thursday (day after tomorrow, our time), and it would be great if we could tell the Court that you're willing and able to attend trial.  If you could let us know your willingness to attend by tomorrow, it would be much appreciated.

**David K. Callahan**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7694
Email: david.callahan@lw.com
https://www.lw.com

**From:** Marc Dacier <marc.c.dacier@gmail.com>
**Sent:** Tuesday, April 5, 2022 2:46 AM
**To:** Callahan, David (CH) <david.callahan@lw.com>
**Cc:** Marc Dacier <marc.c.dacier@gmail.com>
**Subject:** Re: Columbia v. NortonLifeLock --

Dear David,
I'm fully booked for the rest of the week but could offer you to chat on Sunday, April 10 at 9.00am in Chicago or Tuesday April 12 at 9.00am in Chicago.   Let me know if either of these two time slots work for you. If not, please exchange by email what it is that you expect from me.

I must admit to be a bit surprised by this sudden rush after years of inaction and the several calls with the Quinn team in which they repeatedly told me that there was no need for me to do anything, that they did not want me to do anything, that my testimony in Brussels was all that was needed. I'm happy to help the judicial process though, as I have continuously said so far.

I hope this helps,

M. Dacier

---

**From:** <david.callahan@lw.com>
**Date:** Tuesday, April 5, 2022 at 6:32 AM
**To:** <marc.c.dacier@gmail.com>
**Subject:** Columbia v. NortonLifeLock --

Hi Marc:

I'm a lawyer at Latham & Watkins, we're working with the Quinn team on this case, representing Norton.  I'm following up on earlier communications from the Quinn team.  I know you've been at conference and travelling, but I'm hopeful I can get 15 minutes of your time over the next day or two to chat about this case.  We're about to conduct the trial in this case and for reasons I'd love to explain, there's been some confusion about your availability or willingness to testify.  We'd very much like to see you testify at trial and expect we will have some flexibility in terms of timing.  This is an important case for Norton, and we'd very much appreciate your cooperation.  Please let me know if you might have a moment to talk.  Anytime, at your convenience.  Regards.


**David K. Callahan**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7694
Email: david.callahan@lw.com
https://www.lw.com


_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, | |
| *Plaintiff* | |
| v. | Civil Action No. 3:13-cv-00808-MHL |
| NORTONLIFELOCK INC., | |
| *Defendant* | |

**<u>DECLARATION OF DAVID A. NELSON</u>**

1

Appx35936

I, David A. Nelson, declare as follows:

1.      I am an attorney with the law firm of Quinn Emanuel Urquhart & Sullivan, LLP.  I am licensed to practice law in the State of Illinois and admitted *pro hac vice* to the United States District Court for the Eastern District of Virginia in the above-captioned case.  Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration, and if called as a witness I could and would testify competently to the same.

2.      I have been practicing law for 30 years.  My ethical record is unblemished.  I have tried dozens of cases before Courts all over this country and I am quite certain that a poll of those Courts would indicate that I have always handled myself and my cases with the highest level of honor and respect for the judicial system and the process.

3.      I have represented Norton LifeLock Inc. (and previously Symantec Corp.) (collectively, "Norton") in the above-captioned litigation since Columbia filed suit in December 2013.

4.      During fact discovery, Columbia requested an opportunity to take the deposition of Dr. Marc Dacier, who was then residing in France.  That meant that Dr. Dacier could only be deposed voluntarily.  We consulted with Dr. Dacier and arranged for him to appear for the deposition requested by Columbia to provide full and truthful testimony.  At no point did we, or would I ever, ask Dr. Dacier to provide anything other than full and truthful testimony, much less to conceal any facts.  I am a lawyer.  I don't make the facts and never attempt to do so.  I advocate for my clients based upon the facts as they are.  Any suggestions by Columbia or Latham & Watkins that I or my firm would do otherwise are categorically false.

5.      On June 18, 2014, Quinn Emanuel entered into an Engagement Agreement with Dr. Dacier.  Dkt. 562-4.  As stated in the Engagement Agreement, among other things, Quinn

2

**Appx35937**

Emanuel agreed to represent Dr. Dacier "in connection with . . . any deposition in connection with this litigation." *Id.* Quinn Emanuel also agreed more broadly to represent Dr. Dacier "in connection with litigation between Symantec and the Trustees of Columbia University . . . pending in the Eastern District of Virginia" (*see* Dkt. 562-4).

6.    On August 19, 2014, Dr. Dacier voluntarily provided deposition testimony in Brussels. I represented Dr. Dacier at his deposition. *See* Dkt. 478-3, Dacier Dep. Tr. at 8:19-20 ("Dave Nelson from Quinn Emanuel on behalf of Symantec and the witness.").

7.    As is common practice, I did not terminate my firm's representation of Dr. Dacier after his deposition, nor did Dr. Dacier ever communicate to anyone at my firm that he desired the representation to be terminated  Although his deposition was completed in 2014, the above-captioned litigation (including discovery) has continued into 2022, mainly as a result of an appeal of earlier proceedings where summary judgment was granted on all asserted patents against Columbia and an IPR where the majority of claims were invalidated  Quinn Emanuel's representation of Dr. Dacier thus continued throughout this litigation until recently, when we terminated it upon the Court's finding that a conflict existed

8.    In October 2019, Columbia's counsel, Dustin Guzior, contacted Dr. Dacier to discuss this litigation without my (or anyone at Quinn Emanuel's) knowledge or consent. *See* Dkt. 478 at 1-2.

9.    After learning of Mr. Guzior's improper *ex parte* communications with Dr. Dacier, Norton filed a Motion for Sanctions seeking relief for ethical violations, including Virginia Rule of Professional Conduct 4.2. Dkt. 478 (Motion for Sanctions dated May 6, 2020).

10.    Virginia Rule of Professional Conduct 4.2 codifies the longstanding rule that an attorney may not contact a person directly who is represented by counsel. Under this "no contact

3

rule"—which exists in all U.S. jurisdictions—an attorney is forbidden from contacting an individual represented by his opponent to discuss the litigation.  One reason for this rule is the "need to protect uncounseled persons against being taken advantage of by opposing counsel." Virginia Rule of Professional Conduct 4.2 cmt. 8.

11.    In spite of this no contact rule, Columbia's counsel repeatedly spoke with Dr. Dacier about the above-captioned litigation, even though Columbia had been informed during Dr. Dacier's deposition and otherwise in discovery that Quinn Emanuel represented him.  This was particularly disappointing because if Columbia desired a further deposition of Dr. Dacier, we would have arranged for such a deposition, assuming that Dr. Dacier consented.  No such request was, or ever has been, made.

12.    On June 1, 2020, Columbia filed a brief and supporting declarations in opposition to the Motion for Sanctions.  Dkt. 547.  In a declaration attached to the Motion, Mr. Guzior presented his version of a conversation he had with Dr. Dacier ("Guzior Declaration").  Dkt. 547-1.

13.    After reviewing the Guzior Declaration, my Quinn Emanuel partner, Nathan Hamstra, and I contacted Dr. Dacier to discuss the topics described in the Guzior declaration, including Mr. Guzior's claim that Dr. Dacier was not represented by counsel.

14.    In our conversation with Dr. Dacier on June 17, 2020, he informed us that Columbia's counsel had claimed to him that the recording of his 2014 deposition could not be used at trial, so he had to attend the trial in person.  According to Dr. Dacier, Columbia's counsel had also informed him that he was no longer represented by Quinn Emanuel.

15.    Consistent with the basic tenets of the Federal Rules of Civil Procedure, we stated to Dr. Dacier the fact that the deposition testimony he voluntarily provided in 2014 in Brussels

4

could be used at trial.  We also informed Dr. Dacier that the decision of whether to attend was completely his own – neither Norton, Quinn Emanuel, Sullivan Cromwell, nor Columbia could compel him to attend trial.

16.    During this conversation, Dr. Dacier stated that he never intended to terminate Quinn Emanuel's representation, confirmed that he wanted to continue to be represented by Quinn Emanuel in the above-captioned action, and stated that he was willing to sign a declaration attesting to that fact.  He then voluntarily signed a declaration to that effect.  Dkt. 562-1 (Dacier Decl.).

17.    Also during that conversation, Dr. Dacier stated that he did not have anything to add to his 2014 deposition testimony, and if called to testify at trial, would merely repeat what he had previously testified during his deposition.  I understand that he has consistently stated that to others who have inquired.  Dr. Dacier stated that he did not want to travel to the United States for trial, and would prefer to end his involvement in the litigation if his deposition testimony could be used.

18.    Dr. Dacier also stated that he never expressed an opinion that any person at Columbia should be named as an inventor on U.S. Patent No. 8,549,643—rather, he had only expressed regret that the parties' dispute was ongoing.  As Dr. Dacier stated at his deposition, he had not read the patent and had no opinion on who the inventors should be.  Dkt. 566-1, Dacier Dep. Tr. at 203:1-11 ("I cannot comment on this patent, I haven't read it"); *id.* 196:2-6.

19.    On September 29, 2021, the Court issued a Memorandum Order on the Motion for Sanctions.  Dkt. 663.  In a footnote to this Order, the Court stated "[i]t remains undetermined whether Dr. Dacier was or was not represented by Norton's attorneys *in October 2019*."  Dkt. 663 at 5 n.3 (emphasis added).

20.     In September 2021, I believed in good faith that Quinn Emanuel continued to represent Dr. Dacier.  Dr. Dacier had told me and Mr. Hamstra after the events of October, 2019 through April, 2020 that he wished to continue to be represented by Quinn Emanuel.  At this point in time, nothing from either the Court or Dr. Dacier indicated to me that Dr. Dacier was no longer a client of Quinn Emanuel.

21.     After reviewing the Court's Memorandum Order, Mr. Hamstra and I contacted Dr. Dacier to inform him of the Court's ruling.  We again informed Dr. Dacier that the decision of whether to attend the trial was his alone.  If he wished to attend, he was welcome to do so.  If he did not so desire, no one could compel him to do so.

22.     Dr. Dacier reiterated his previous statements that he would prefer not to be involved in the litigation, and further confirmed that he did not have anything to say beyond what had already been discussed at his 2014 deposition.

23.     Given Dr. Dacier's expressed preference not to attend trial, there was no need to inform Dr. Dacier of further schedule developments in the case prior to the Court's rulings regarding the purported conflict, as none were relevant.  After the Court's order denying Norton's motion for reconsideration of its order regarding Norton's Motion *in Limine* Nos. 5 and 6 on March 22, my co-counsel informed the Court that Quinn Emanuel would be withdrawing from its representation of Dr. Dacier on March 25, and completed that on March 27, 2022.  Although Mr. Hamstra reached out to Dr. Dacier afterwards to attempt to speak to him and explain the withdrawal, we were unable to find a time that worked, because Dr. Dacier indicated that he was very busy with work, was traveling for a period of time and simply did not have time.  At that time, Latham & Watkins replaced us as counsel for Norton and we have had no further contact with Dr. Dacier.

6

**Appx35941**

24.      At no point did Dr. Dacier ever inform me that he felt his deposition testimony was in conflict with Norton's interests and my attendance at the deposition and review of the transcript do not leave me with the belief that there is any such conflict.  I understand that counsel for Columbia has alleged there is such a conflict, but I am not aware of anything Columbia's counsel has pointed to in that transcript that creates such a conflict.  Instead, my understanding is that Columbia's position is based on a notion that Dr. Dacier "has more to say" beyond the deposition.  My conversations with Dr. Dacier indicated exactly the opposite, repeatedly saying that he had nothing to add beyond what he said in his deposition.  When I was counsel for Norton, I would have been more than happy for Dr. Dacier to take the stand at trial and repeat the substance of his deposition testimony.  My understanding is that Norton had the same belief.  But, given the Federal Rules of Civil Procedure and the ability to use the deposition at trial with exactly the same force and effect as live testimony, it did seem an incredible imposition on Dr. Dacier to ask him to come and repeat that testimony.  Regardless, Dr. Dacier was always told that it was his choice whether to come to trial.

25.      I also saw only this morning the e-mail Mr. Lumish sent to counsel for Columbia attaching recent communications between Latham & Watkins and Dr. Dacier.  I saw where Dr. Dacier stated that Norton's counsel was "pretending" to represent him.  I can assure the Court that at no point were we pretending anything.  I am sorry that Dr. Dacier now apparently feels that way and because I was not a party to any of Latham's communications with Dr. Dacier, I cannot speculate as to what prompted that response.  I can say that Dr. Dacier never expressed such a concern to me or anyone else at Quinn Emanuel.  If he had, I would have inquired as to why he had that concern and either tried to remedy that if I felt possible, or withdraw from the representation with notice to Dr. Dacier.  As stated above, if Columbia's counsel had ever asked

7

for a further deposition of Dr. Dacier, we would have facilitated that request, assuming Dr. Dacier would have agreed to such a request.  Such a request was never made.

26.    Quinn Emanuel acted in good faith throughout its representation of Dr. Dacier and never attempted to hide him from Columbia or anyone else.  Indeed, it was Quinn Emanuel and Symantec (now Norton) who arranged for his voluntary deposition in the first place.  Without such arrangement, Dr. Dacier could not have been deposed.  This conduct is completely inconsistent with the current allegations that we somehow hid this witness.  We did not, and never would do such a thing.

27.    I am presently in Chicago and cannot make it to Richmond in time for the 3 p.m. ET hearing today on less than five hours' notice.  I also have a post-wedding celebration trip planned beginning Saturday now that I have been replaced by Latham & Watkins as Norton's counsel in this case.  I would be happy to answer any of this Court's questions regarding this matter within the constraints of those obligations.  I have nothing to hide and neither does anyone at Quinn Emanuel.

I declare under penalty of perjury that the foregoing is true and correct.

Executed April 8, 2022 at Chicago, Illinois.

By: _____

David A. Nelson

8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, <br><br> *Plaintiff* <br><br> v. <br><br> NORTONLIFELOCK INC., <br><br> *Defendant* | Civil Action No. 3:13-cv-00808-MHL |

**NORTONLIFELOCK'S RESPONSE TO THE COURT'S**
**APRIL 15, 2022 ORDER (DKT. 1130)**

Defendant NortonLifeLock Inc. submits this response to the Court's order (Dkt. 1130) requesting briefing on the requirements for application of the forfeiture-by-wrongdoing hearsay exception under Federal Rule of Evidence 804(b)(6).

That Rule provides: "A statement offered against a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(6).  The Rule requires the court to find, by a preponderance of the evidence, that "(1) the [party] engaged or acquiesced in wrongdoing (2) that was intended to render the declarant unavailable as a witness and (3) that did, in fact, render the declarant unavailable as a witness." *United States v. Dinkins*, 691 F.3d 358, 383 (4th Cir. 2012) (citation omitted).  As the proponent of the hearsay, Columbia bears the burden of establishing all three elements. *See, e.g.*, *United States v. Jefferson*, 2009 WL 2447845, at *1 & n.5 (E.D. Va. Aug. 8, 2009).  It cannot do so here.

### A.    Norton Has Not Engaged or Acquiesced In Anything Close to the "Wrongdoing" Contemplated By The Rule

The Rule's most fundamental requirement is that the party against whom the hearsay statement is offered must have "wrongfully caused . . . the declarant's unavailability as a witness." Columbia implies that this Court, by concluding that a missing witness instruction should be given,[1] has found that Norton committed the type of wrongdoing contemplated by Rule 804(b)(6). But that conclusion does not follow from the Court's finding.  While Norton recognizes the Court's "finding that Quinn Emanuel LLP rendered Dr. Dacier unavailable" (Dkt. 1083; Dkt. 889 at 17), such conduct does not rise to the level of "wrongdoing" commensurate with Rule 804(b)(6).

---

[1] Norton maintains its objections to the finding that it rendered Dr. Dacier unavailable.

1

**Appx37278**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF
NEW YORK,

       **Plaintiff,**

  **v.**                              Civil Action No. 3:13cv808

NORTONLIFELOCK, INC.,

       **Defendant.**

## MEMORANDUM ORDER

This matter comes before the Court on the issue of the missing witness instruction. The parties have engaged in multiple rounds of briefing on this issue, (ECF Nos. 1096–97, 1102–03, 1123–24, 1126–27, 1143–44, 1147–48), and have also presented in-court arguments speaking to it, (*see, e.g.*, Apr. 7 Trial Tr. 44:7-12, 72:12-17). For the reasons that follow, the Court will provide a missing witness instruction to the jury, but it will not admit the emails between Dr. Dacier and Norton's counsel at Latham & Watkins LLP as evidence.

### I. Factual Background and Procedural History

**1.**     **Factual Background**

Dr. Marc Dacier was an employee of Norton at the time of its filing of the '643 Patent at the center of Columbia's Fraudulent Concealment and Inventorship Claims. Dr. Dacier served as the senior director of Norton Research and supervisor of Darren Shou, the Norton employee listed as the first named inventor of the '643 Patent. During that timeframe, Dr. Dacier also collaborated with Dr. Keromytis on a government grant proposal regarding decoy technology.

relationship with Dr. Dacier in a way allowing Columbia to impeach his testimony on cross examination with the Dacier emails.  (ECF No. 1148, at 3.)  Of course, if Columbia were to attempt to impeach Mr. Shou, it would have to first establish all the foundational requirements of Rule 613(b).

## II.  The Court Will Provide a Missing Witness Instruction to the Jury

Having considered all briefing, argument, and testimony before it, the Court confirms its earlier finding that it will issue a missing witness instruction as part of the "Evidence" instruction in this case.  A proposed instruction including it has been sent to the parties.

In doing so, the Court recognizes that the missing witness instruction is unusual.  But this is an uncommon factual and procedural scenario that merits its inclusion in the jury instructions here.  Norton's repeated emphasis that Virginia's model missing witness instruction includes commentary that the instruction should rarely be given has been heard.  However, the Court has repeatedly found that numerous remarkably atypical events have occurred in this case.

It is true that the missing witness instruction cases discuss factually distinct circumstances. There is no doubt that this case does not involve a plaintiff who made himself unavailable, or a witness rendered unavailable through threats or murder.  But it is also true that the lengthy and abnormal procedural and factual unfolding as to whether Dr. Dacier would be a live witness at trial, and how Norton – through counsel – caused Dr. Dacier's practical unavailability, is utterly distinct from anything this Court has seen.  The Court sees no other remedy beyond one delaying this case even longer.  A delay might procure Dr. Dacier's presence, but it would require navigating the complicated process of obtaining testimony of a witness in Saudi Arabia under the necessary international treaty or convention allowing one to do so.  Such a delay would be untenably and unpredictably long.

13

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, | Civil Action No. 3:13-cv-00808-MHL |
| *Plaintiff* | |
| v. | |
| NORTONLIFELOCK INC. f/k/a SYMANTEC CORPORATION, | |
| *Defendant* | |

**QUINN EMANUEL'S OPPOSITION TO COLUMBIA'S MOTION FOR
AN ORDER TO SHOW CAUSE**

fully complied with the Court's March 15 Order through its April 8 response and Mr. Nelson's declaration.

### B.     The Standard for Civil Contempt Has Not Been Met

The Court should also deny Columbia's Motion for an Order to Show Cause because Columbia has not—and cannot—justify its request to hold Quinn Emanuel in civil contempt. "Holding a party in civil contempt is intended to coerce that party into complying with a court order or to compensate the moving party for sustained losses." *Certain Underwriters at Lloyd's, London v. AdvanFort Co.*, 2020 WL 878298, at *2 (E.D. Va. Feb. 3, 2020), *report and recommendation adopted,* No. 1:18-CV-1421, 2020 WL 877981 (E.D. Va. Feb. 21, 2020). In this Circuit, "the moving party must establish the following elements by clear and convincing evidence: (1) the existence of valid court order of which the alleged contemnor had actual or constructive knowledge; (2) the order was in the movant's favor; (3) the nonmovant knowingly failed to comply with the order; and (4) the movant suffered harm as a result." *Id citing Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 617 (4th Cir. 2018) (internal punctuation omitted).

Columbia has not established that Norton "knowingly failed to comply" with a valid court order. As discussed above, Quinn Emanuel has complied with the Court's March 15, 2022 Order. Quinn Emanuel produced a detailed summary of its communications with Dr. Dacier soon after its Motion to Reconsider was denied.

Columbia asserts in its Motion that Norton's initial response to the Court's March 15, 2022 Order was insufficient. But, as already described herein, Norton took appropriate steps to initially protect its client's attorney-client privilege, test the validity of the Court's conflict of interest finding, and ultimately comply with the requested Order. "A good faith attempt to comply, even if such attempt proves ineffective, is a defense to a civil contempt order." *Chesapeake Bank v. Berger*, No.

4:14CV66, 2014 WL 5500872, at *3 (E.D. Va. Oct. 30, 2014). "Other defenses include substantial compliance[.]" *Id.* Norton's efforts to protect its client's confidences were undertaken in good faith, and cannot support a finding of civil contempt.

Columbia also has not established that it "suffered harm as a result" of any alleged non-compliance with the March 15, 2022 Order. Columbia was aware of Quinn Emanuel's communications with Dr. Dacier as a result of Mr. Nelson's declaration submitted on April 8, 2022 (*see* Dkt. 1089-2). Columbia also had extensive communications with Dr. Dacier in 2019 and 2020. Columbia asserts in its Motion that "additional measures" beyond the monetary sanctions it plans to seek under 35 U.S.C. § 284 and 285 are required "for Norton's involvement in Dr. Dacier's failure to appear at trial[.]" Mot. at 4. But the Court has already considered extensive briefing and argument on this topic, and determined that a missing witness instruction was an appropriate remedy.

Even if the Court credits Columbia's suggestion that Quinn Emanuel did not comply with the March 15, 2022 Order, no further sanctions would be warranted because Quinn Emanuel subsequently provided the requested information on April 8. Sanctions for civil contempt "may be imposed either to enforce a court order or to compensate the other party for any losses sustained as a result of the contempt." *Tattoo Art, Inc. v. Tat Int'l, LLC*, No. 2:10CV323, 2012 WL 3912572, at *2 (E.D. Va. Sept. 7, 2012). Sanctions intended to either "vindicate the authority of the court" or 'punish[ ] . . . and deter[ ] future litigants' misconduct" are not available as a remedy for civil contempt sanctions. *JTH Tax, Inc. v. Noor*, No. 2:11CV22, 2012 WL 4473252, at *2 (E.D. Va. Sept. 26, 2012). "A contempt fine is considered civil when the fine is remedial (i.e., either paid to the complainant or, when payable the court, avoidable by the contemnor by simply performing the affirmative act required by the court's order)." *Chesapeake Bank v. Berger*, No. 4:14CV66, 2014 WL 5500872, at *4 (E.D. Va. Oct. 30, 2014). "In other words, a fine that is payable to the court but

not conditioned on compliance with a court order is punitive and therefore, not civil." *Id.*  Because Norton has fully complied with the Court's March 15, 2022 Order, no fines or sanctions are warranted "to coerce compliance."  Columbia has not suffered any harm, and is therefore not entitled to any monetary compensation "for losses [ ] sustained."

## III.    CONCLUSION

For the foregoing reasons, Quinn Emanuel respectfully requests that the Court deny Columbia's Motion for an Order to Show Cause.

| | |
|---|---|
| **From:** | Marc Dacier <marc.c.dacier@gmail.com> |
| **Sent:** | Tuesday, June 21, 2022 2:40 AM |
| **To:** | Guzior, Dustin; Angelos D. Keromytis |
| **Subject:** | Re: [EXTERNAL] intro |

Dear Dustin,
My understanding is that my email from April 10 2020 to Nathan Hamstra and Dave Nelson, cc'ing you and A. Gross, has all the answers to your questions.

As for the date of the NDA, my bad, it is indeed from June 16, 2014

I hope this helps
Marc

**From:** "Guzior, Dustin" <guziord@sullcrom.com>
**Date:** Monday, 20 June 2022 at 6:50 PM
**To:** Marc Dacier <marc.c.dacier@gmail.com>, "Angelos D. Keromytis" <angelos@keromytis.com>
**Subject:** RE: [EXTERNAL] intro

Hi, Marc:

Very sorry to hear you are ill.  I caught COVID in mid-May when I came back to NYC after the trial.  Despite 3x vaccination, I also got quite sick.  Take care of yourself and I hope you are feeling better soon.

I regret that you think there is a risk they would threaten to file a claim against you, but I certainly understand your personal decision to avoid any such risk and move on from this situation.  We are in a strange position because Quinn has not actually produced all of their communications with you from 2020 forward, despite the Court order.  We have only a couple e-mails e.g. from 2022 that I sent you earlier in this email chain.  We asked the Court to take further steps to compel production (in filings as recent as last Friday), but there is a risk that Quinn still will not produce the emails even after a further Court order.

Although Quinn has not produced all of their emails with you, they are making representations to the Court about what you allegedly said orally to them.  For example, Quinn is saying that you told them that when you spoke with us (Columbia's lawyers) in 2019 about potentially coming to trial, we did **not ask** you if you were represented by counsel and instead we **instructed** you that you were no longer represented by counsel.  That is a serious accusation that we firmly believe is inaccurate.  They also are saying that when they spoke to you in 2020, you came to them saying that you **wanted** to be represented by Quinn and had always wanted to be represented by them.  That is inconsistent with several written documents in our view.  These are some of the things we wanted to clarify because Quinn is purporting to speak for you in submissions to the Court.

Finally, in your e-mail below, you mention a 2018 NDA, which is a bit confusing to me.  Do you mean 2014 or perhaps 2020?

Again, I wish you a speedy recovery and perhaps we will meet some day in different and more pleasant circumstances.

All my best,

Dustin

---

**From:** Marc Dacier <marc.c.dacier@gmail.com>
**Sent:** Monday, June 20, 2022 5:46 AM
**To:** Guzior, Dustin <guziord@sullcrom.com>; Angelos D. Keromytis <angelos@keromytis.com>
**Subject:** Re: [EXTERNAL] intro

Dear Dustin,
Apologies for the delayed reply. I have been tested positive for COVID last Friday and have felt pretty bad since mid of last week.  It is getting better today but with a remaining heavy soar throat. I'm really glad that I did get my 3 shots of vaccine. I wonder in which state I would be without them ….

Long story short, I have unearthed the initial document that I had been asked to sign in 2018 with Quinn which is, basically a NDA, that explicitly mentions things like "You agree to hold in strict confidence your communications with us. »

I understand that one could probably argue that this NDA is now void since the judge's decision but we have seen first hand that lack of any strong argument isn't a reason for them to keep pushing their losing legal strategies. I do not want to give them any reason to come back after me and drag me into yet another endless legal fight for an invented NDA breach, as I'm sure you perfectly understand.  I do not have Symantec or Columbia deep pockets to fight a very expensive frivolous lawsuit against me …. I'm not saying that they would but I do not want to take the risk that they could.

For this reason, I would prefer not to discuss with you any exchange I have had with them. The judge gave you access to my emails. They are the gist of it, anyway, and I hope this will help you in making sure that justice prevails.

M. Dacier

---

**From:** "Guzior, Dustin" <guziord@sullcrom.com>
**Date:** Tuesday, 14 June 2022 at 2:24 PM
**To:** Marc Dacier <marc.c.dacier@gmail.com>, "Angelos D. Keromytis" <angelos@keromytis.com>
**Subject:** RE: [EXTERNAL] intro

Thank you, Marc. If you are able to speak sometime next week that would still be helpful.

Let me know when might be possible.

Thanks,

Dustin

---

**From:** Marc Dacier <marc.c.dacier@gmail.com>
**Date:** Tuesday, Jun 14, 2022, 2:33 AM
**To:** Guzior, Dustin <guziord@sullcrom.com>, Angelos D. Keromytis <angelos@keromytis.com>
**Subject:** Re: [EXTERNAL] intro

Dear Dustin,

I did not realize that you were on such short deadline.  I'm unfortunately caught up in meetings all afternoons and evenings today and tomorrow. It won't be possible to organize a call with you so quickly. Having said that, I am not quite sure what I could have told you that you would not already know since my exchanges with Quinn have mostly been by email and you have already obtained them from the judge, apparently.  We have had very few calls, a long time ago. I remember there were short but I can't recall their exact content.

I hope this helps
M. Dacier

---

**From:** "Guzior, Dustin" <guziord@sullcrom.com>
**Date:** Monday, June 13, 2022 at 8:31 PM
**To:** Marc Dacier <marc.c.dacier@gmail.com>, "Angelos D. Keromytis" <angelos@keromytis.com>
**Subject:** RE: [EXTERNAL] intro

Hi, Marc:

Hope you had a nice weekend.  Our submission is due on Friday, June 17, and I will be in Court on June 16; is there any chance we can schedule a call for tomorrow (June 14) or Wednesday (June 15)?

Thank you,

Dustin

---

**From:** Guzior, Dustin <guziord@sullcrom.com>
**Sent:** Thursday, June 09, 2022 7:26 AM
**To:** Marc Dacier <marc.c.dacier@gmail.com>; Angelos D. Keromytis <angelos@keromytis.com>
**Subject:** RE: [EXTERNAL] intro

Thank you, Marc.

Dustin

---

**From:** Marc Dacier <marc.c.dacier@gmail.com>
**Date:** Thursday, Jun 09, 2022, 4:19 AM
**To:** Guzior, Dustin <guziord@sullcrom.com>, Angelos D. Keromytis <angelos@keromytis.com>
**Subject:** Re: [EXTERNAL] intro

Dear Dustin,
I see no reason not to talk to you, assuming I'm allowed to do so and do not violate any law/rule/agreement/... The documents you provide seem to say so indeed and, just to be on the safe side, I have asked my daughter, who is a lawyer (NY and Paris bar), to confirm to me that it was ok for us to exchange verbally.  As soon as I get her feedback, I will come back to you.

All the best,
M. Dacier

On 6/8/22, 7:41 PM, "Guzior, Dustin" <guziord@sullcrom.com> wrote:

   Thank you, Angelos.

   Hi, Marc:  I think we last spoke at the very beginning of the pandemic.  I understand you accepted a professorship at KAUST during that time.  I hope that has been professionally rewarding and you and your family are well.

3

**Appx47476**

I appreciate your willingness to speak with us.  If we were to speak, we would not want to discuss anything about your time at Norton/Symantec; we would be focused exclusively on 2020 forward, after we were in touch with you about testifying at trial.  I have attached an Order of the Court regarding Quinn's claim to have represented you during that period.  I will let the document speak for itself, but the Court ordered Norton to disclose "any information" that you provided during a period when Quinn could not have represented you personally because of a conflict of interest (covering the period from 2020 and later).  Norton asked the Court to reconsider that decision, and the Court declined to reconsider the conclusion in the second attached document.  I also attach two emails that Quinn and Norton produced in the case that were filed on the Court public docket.

Let me know if you are willing to discuss these 2020-2022 events.  We and the Court are still trying to figure it all out.

All the best, and I do sincerely apologize that a rather simple request--that you testify at trial--became such a burden for you.

Dustin

-----Original Message-----
From: Angelos D. Keromytis <angelos@keromytis.com>
Sent: Wednesday, June 08, 2022 11:59 AM
To: Marc Dacier <marc.c.dacier@gmail.com>; Guzior, Dustin <guziord@sullcrom.com>
Subject: [EXTERNAL] intro

Marc, Dustin, you are now in contact.

Marc, I believe Dustin has a document from the Court that will address your concern,
Thanks,
-Angelos

========================================================
**This is an external message from: angelos@keromytis.com **

_____
This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

408

```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF VIRGINIA
 2                    RICHMOND DIVISION


 3   _____
                                       )
 4   THE TRUSTEES OF COLUMBIA          )
     UNIVERSITY IN THE CITY OF         )
 5   NEW YORK                          )
                                       )
 6   v.                                )    Civil Action No.:
                                       )    3:13 CV 00808
 7   NORTONLIFELOCK INC.               )
     f/k/a SYMANTEC CORPORATION        )
 8   _____)

                                            April 13, 2022
 9
                              DAY 2
10                EXPEDITED OVERNIGHT TRANSCRIPT

11            COMPLETE TRANSCRIPT OF JURY TRIAL
              BEFORE THE HONORABLE M. HANNAH LAUCK
12              UNITED STATES DISTRICT COURT JUDGE

13   APPEARANCES:

14   John Erbach, Esquire
     Dana D. McDaniel, Esquire
15   SPOTTS FAIN
     411 E. Franklin Street
16   Suite 600
     Richmond, Virginia 23218
17

18   Garrard Beeney, Esquire
     Dustin Guzior, Esquire
19   Alexander N. Gross, Esquire
     Jessica R. Ecker, Esquire
20   Sullivan & Cromwell
     125 Broad Street
21   New York, New York 10004

22            Counsel on behalf of the Plaintiff

23

24              KRISTA L. HARDING, RMR
                OFFICIAL COURT REPORTER
25            UNITED STATES DISTRICT COURT
```

Appx52057

409

```
 1  APPEARANCES (CONTINUED):

 2  Dabney J. Carr, IV, Esquire
    TROUTMAN SANDERS LLP
 3  1001 Haxall Point
    Richmond, Virginia 23219
 4
    Michael A. Morin, Esquire
 5  LATHAM & WATKINS LLP
    555 Eleventh Street N.W.
 6  Suite 1000
    Washington, DC 20004
 7
    Douglas E. Lumish, Esquire
 8  LATHAM & WATKINS LLP
    140 Scott Drive
 9  Menlo Park, California 94025

10
                Counsel on behalf of the Defendant
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 3:13-cv-00808-MHL   Document 1210   Filed 05/10/22   Page 210 of 313 PageID# 55624

Salvatore Stolfo – Direct                        617

1   on March 31st lists you, and Professor Stolfo, and

2   Keromytis as inventors?

3   A    Yes.

4   Q    And the one that Symantec filed four days later takes

5   your names off the application?

6   A    They expunged the Columbia people.

7   Q    Did you know that they were doing that?

8   A    No.

9   Q    No one ever told you?

10  A    No.

11  Q    So after telling you that you would be named an

12  inventor, you were never told that Symantec was filing an

13  application without you being named as an inventor; is

14  that correct?

15  A    That's correct.

16  Q    So, Professor Stolfo, you told us a few moments ago

17  that after these events, you ran into or met Dr. Dacier of

18  Symantec.  Do you recall saying that?

19  A    Yes.

20  Q    Do you remember about when that was?

21  A    May-ish, I think.  Springtime, I think.  2017.

22  Q    Of 2017?

23  A    Yes.

24  Q    And was this at a professional conference?

25  A    Yes.

Salvatore Stolfo – Direct                    618

1  Q    Did Dr. Dacier raise with you the subject of Symantec

2  patenting the '643 patent?

3  A    Yes.

4  Q    And tell us what he said.

5  A    He expressed regret for what had happened, also

6  expressed that he did everything he could to stop it, and

7  he felt bad.  And that was the extent of the conversation,

8  but he was crystal clear.

9  Q    Did he characterize Symantec's conduct in any way?

10  A    They were wrong.

11  Q    Professor Stolfo, you've come here to testify I know

12  at least in part because Columbia has asked you to, but is

13  there another reason you're testifying today?

14  A    I'm being very polite.  Ten years waiting for my day

15  in court to have somebody come and wish to collaborate so

16  we can do good things together and then take my

17  inventions, claim it's theirs and put their own name on

18  it, it's outrageous.  It's not just once, apparently.  It

19  was twice.  And this is my opportunity to express my

20  outrage by it, and this should not stand.  This should not

21  be allowed.  This is not their property.  This is my

22  livelihood.  This is my life.  This is what I do, and it's

23  really galling that this happened.

24            MR. BEENEY:  Thank you, Professor.

25            THE COURT:  Any cross?

721

```
1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF VIRGINIA
2                   RICHMOND DIVISION


3    _____


4    THE TRUSTEES OF COLUMBIA          )
     UNIVERSITY IN THE CITY OF         )
5    NEW YORK                          )
                                       )
6    v.                                )    Civil Action No.:
                                       )    3:13 CV 00808
7    NORTONLIFELOCK INC.               )
     f/k/a SYMANTEC CORPORATION        )
8    _____)
                                            April 14, 2022
9
                           DAY 3
10              EXPEDITED OVERNIGHT TRANSCRIPT

11           COMPLETE TRANSCRIPT OF JURY TRIAL
             BEFORE THE HONORABLE M. HANNAH LAUCK
12              UNITED STATES DISTRICT COURT JUDGE

13   APPEARANCES:

14   John Erbach, Esquire
     Dana D. McDaniel, Esquire
15   SPOTTS FAIN
     411 E. Franklin Street
16   Suite 600
     Richmond, Virginia 23218
17

18   Garrard Beeney, Esquire
     Dustin Guzior, Esquire
19   Alexander N. Gross, Esquire
     Jessica R. Ecker, Esquire
20   Alexander N. Gross, Esquire
     Stephen J. Elliott, Esquire
21   Sullivan & Cromwell
     125 Broad Street
22   New York, New York 10004

23           Counsel on behalf of the Plaintiff

24              KRISTA L. HARDING, RMR
                OFFICIAL COURT REPORTER
25            UNITED STATES DISTRICT COURT
```

722

```
 1 │ APPEARANCES (CONTINUED):
   │
 2 │ Dabney J. Carr, IV, Esquire
   │ TROUTMAN PEPPER HAMILTON SANDERS LLP
 3 │ 1001 Haxall Point, Suite 1500
   │ Richmond, Virginia 23219
 4 │
   │
 5 │ Douglas E. Lumish, Esquire
   │ Ryan T. Banks, Esquire
 6 │ LATHAM & WATKINS LLP
   │ 140 Scott Drive
 7 │ Menlo Park, California 94025
   │
 8 │            Counsel on behalf of the Defendant
   │
 9 │
   │
10 │
   │
11 │
   │
12 │
   │
13 │
   │
14 │
   │
15 │
   │
16 │
   │
17 │
   │
18 │
   │
19 │
   │
20 │
   │
21 │
   │
22 │
   │
23 │
   │
24 │
   │
25 │
```

1    A    So, as I recall, in late 2017, we had a

2    conversation with Marc having to do with initially

3    he's moved from one job location to the other.  So

4    since we were friends and had worked together, I

5    called to inquire what was going on.

6        And in the process of that discussion, I mentioned

7    that this patent dispute had been still ongoing to

8    which he expressed surprise that this was still going

9    on.  He said he hadn't heard anything in a few years

10   about the matter.

11       And then he told me he was very sorry that --

12   about everything that had happened, including that

13   Symantec had filed for a patent without Sal and me on

14   them as co-inventors because this was our work and

15   that he had tried to make it not happen, but he didn't

16   prevail on that.

17       So I got the impression that he sort of thought

18   along the same lines as I was in terms of what had

19   happened.

20   Q    Was it just you and Dr. Dacier in that

21   conversation?

22   A    Yes.

23   Q    Did you believe Dr. Dacier when he said he was

24   sorry about what happened?

25   A    Yes.