**Nos. 2024-1243, 2024-1244**

# United States Court of Appeals
# for the Federal Circuit

The Trustees of Columbia University in the City of New York,

*Plaintiff-Appellee*

v.

Gen Digital Inc., fka NortonLifeLock, Inc.,
fka Symantec Corporation,

*Defendant-Appellant*

Quinn Emanuel Urquhart & Sullivan, LLP,

*Sanctioned Party-Appellant*

Appeal from the District Court for the Eastern District of Virginia in
3:13-cv-00808-MHL, Judge M. Hannah Lauck

## COLUMBIA'S REPLY IN SUPPORT OF MOTION FOR
## LEAVE TO FILE A SUPPLEMENTAL APPENDIX

Garrard R. Beeney
Dustin F. Guzior
Stephen J. Elliott
Alexander N. Gross
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000

June 28, 2024

Jeffrey B. Wall
Morgan L. Ratner
Oliver Engebretson-Schooley
Sullivan & Cromwell LLP
1700 New York Avenue NW, Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500

*Counsel for Appellee The Trustees of
Columbia University in the City of
New York*

# **<u>TABLE OF CONTENTS</u>**

**Page**

ARGUMENT ......................................................................................3

I.    The Declaration Is Highly Relevant .................................................3

II.   This Court's Inherent Authority Is Broad And Flexible ......................8

III.  The Declaration Was Not Previously Available ...................................12

CONCLUSION.................................................................................13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Inc.* v. *Zipit Wireless, Inc.*,
  30 F.4th 1368 (Fed. Cir. 2022) ..........................................................10

*Cabalceta* v. *Standard Fruit Co.*,
  883 F.2d 1553 (11th Cir. 1989) ...........................................................11

*Dakota Industries, Inc.* v. *Dakota Sportswear, Inc.*,
  988 F.2d 61 (8th Cir. 1993)..............................................................9, 10

*In re Grand Jury Subpoena: Under Seal*,
  415 F.3d 333 (4th Cir. 2005)..................................................................4

*M Welles & Associates* v. *Edwell, Inc.*,
  69 F.4th 723 (10th Cir. 2023) .............................................................10

*Teamsters Local Union No. 117* v. *Washington Dept. of Corrections*,
  789 F.3d 979 (9th Cir. 2015)...............................................................11

*Turner* v. *Montgomery*,
  836 S.W.2d 848 (Tex. Ct. App. 1992)...................................................7

*United States* v. *Farrell*,
  921 F.3d 116 (4th Cir. 2019).................................................................7

*United States* v. *Hippen*,
  1998 WL 823110 (D. Kan. Oct. 14, 1998) ...........................................7

*U.S. ex rel. Minna Ree Winer Children's Class Trust* v. *Regions
  Bank of Louisiana*,
  1997 WL 119971 (5th Cir. Mar. 13, 1997)..........................................11

Quinn agrees that this Court has the authority to supplement the record in exceptional circumstances when the interests of justice warrant it. Quinn disagrees that the circumstances here are exceptional because, in its view, the recent Dacier declaration (Declaration) is simply an ordinary piece of irrelevant evidence. It is anything but. Quinn's entire appeal rests on its assertion of Dacier's supposed attorney-client privilege. Dacier himself has now confirmed—in a sworn declaration—that Quinn's representations concerning him have been false. Quinn's continuing audacity is remarkable: it wants this Court to second-guess the district court's contempt finding, on the basis of privilege, without considering *that the client himself* disavowed an attorney-client relationship with Quinn, never asserted privilege, and has disavowed any privilege.

Specifically, Quinn told this Court that Dacier wanted Quinn as his counsel in 2020, Dkt. 30 (Br.) 23; Dacier changed his mind about testifying at trial, *id.* 2, 17; and Quinn had to disobey the district court's disclosure order (Order) because Quinn was bound to protect Dacier's privilege, *id.* 3, 48-49. The Declaration confirms all three assertions are false: Dacier never wanted Quinn's representation, which Quinn thrust upon him against his wishes, Dkt. 44, Ex. A (Dacier Decl.) ¶¶9-10; Dacier never changed his mind about

testifying at trial and instead Quinn kept him "in the dark," telling Dacier that they did not want him to do anything, *id.* ¶¶11-12; and, most significantly, Quinn never informed Dacier about the Order and never asked if Dacier wanted to invoke his privilege as a basis for Quinn to disobey the Order, *id.* ¶4. Indeed, had Quinn consulted him, Dacier would have wanted Quinn to comply with the Order. *Id.* ¶5. The Declaration confirms that the district court was exactly right about Quinn's contemptible conduct.

Quinn tries to brush the Declaration aside in three ways. Quinn contends that (i) the Declaration is irrelevant, (ii) this Court lacks the authority to expand the record in the circumstances here, and (iii) the Declaration was previously available to Columbia, so this Court should not add it to the record on appeal. The first and third contentions are factually wrong. The second seeks to restrict unduly this Court's inherent equitable authority, which must be flexible for the unique facts and circumstances in any given case. The standard is admittedly demanding, but ultimately discretionary depending on the facts. On the unique and exceptional facts here, in the interests of justice, this Court should exercise its equitable authority to consider the Declaration.

# ARGUMENT

## I.    The Declaration Is Highly Relevant.

Quinn first contends that Dacier's Declaration is "irrelevant."  Dkt. 47 (Opp.) 13-18.  That is wrong.  Dacier's Declaration is not just relevant; it would resolve Quinn's appeal.

In the first paragraph of its opening brief, Quinn states that the district court's Order "vitiat[ed] *the client's* attorney-client privilege."  Br. 1.  It then goes on to the crux:  "Quinn Emanuel was well within its rights to disobey this extraordinary order; indeed, given Quinn Emanuel's longstanding attorney-client relationship with [Dacier]...*compliance* with the order would have been the real ethical breach."  *Id.* 3.  Later, Quinn argues that it ethically could not comply with the Order because it did not have Dacier's "waiver or consent." *Id.* 48-49.  Quinn's appeal thus rests on two factual premises:  (i) Quinn actually had an attorney-client relationship with Dacier, and (ii) Quinn could not comply with the Order because Dacier asserted privilege and would not waive it.

The Declaration confirms that both premises are false.  First, Quinn did not have an actual attorney-client relationship with Dacier in 2020.  According to the Declaration, Dacier did not want Quinn's representation and agreed to go along with it only because Quinn wrongly told him that he had no choice.

Dacier Decl. ¶¶9-10; *see* Appx16062.  Quinn and Norton obtained the 2020 declaration from Dacier regarding Quinn's representation of him under false pretenses—telling Dacier that he had to accept Quinn as his lawyers and demanding that he sign the declaration they wrote.  Dacier Decl. ¶¶7, 9-10. Quinn then falsely told Dacier that the *district court* had found that Quinn represented him.  Appx49.  The client, of course, controls the attorney-client relationship, and none actually existed here after April 2020 when Dacier clearly rejected Quinn's representation.  Nor could Quinn reasonably have believed that Dacier's 2020 declaration created such a relationship when Quinn procured Dacier's signature under false pretenses.

Second, even assuming Quinn could force Dacier into an attorney-client relationship he did not want, Dacier did not assert privilege, much less decline to waive it, in the face of the Order.  Indeed, Quinn now *admits*, Opp. 16, that it did not even tell Dacier about the Order, much less seek permission to invoke his privilege—which Dacier would not have wanted Quinn to assert, Dacier Decl. ¶5.  For its appeal to succeed, Quinn must "demonstrate [the] applicability" of the privilege that purportedly excuses its contempt, *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 338-39 (4th Cir. 2005), and

the Declaration confirms the existing record showing that Quinn cannot make

that demonstration.

Quinn asserts that it made "no 'misrepresentations or misstatements,'"

and that Dacier's Declaration does not show otherwise.  Opp. 16-18.  But

Dacier's Declaration directly contradicts statements central to Quinn's appeal:

| Quinn's Opening Brief | Dacier's Declaration |
|---|---|
| Dacier "informed [Quinn] that he had *decided* not to make the long trip to Virginia to testify at trial."  Br. 2 (emphasis added); *see* Br. 17. | "I understand that the Quinn lawyers have represented to the courts that, at some time after April 2020, I informed them that I changed my mind and was unwilling to testify at trial. That is false." Dacier Decl. ¶12. |
| Dacier "'confirmed that he wanted to continue to be represented by [Quinn],' after which [Dacier] 'signed a declaration to that effect.'" Br. 23. | Dacier's "2020 declaration does not say that I personally asked or wanted Quinn to represent me." Dacier Decl. ¶9.<br><br>"Had I been informed that I was not obligated to accept the Quinn lawyers as my personal counsel, I would not have signed the declaration."  Dacier Decl. ¶10. |
| "Dacier submitted a sworn declaration in support of Norton's [sanctions] motion." Br. 16. | "I cannot find any trace that Quinn ever consulted with me on whether to file a motion for sanctions.... Had the lawyers at Quinn consulted me, I would have told them that I did not want them to file the motion, much less use my declaration to support it." Dacier Decl. ¶8. |

| Quinn's Opening Brief | Dacier's Declaration |
|---|---|
| "[T]here was…no 'significant risk' that [Quinn's] representation of [Dacier] would be 'materially limited' by the firm's responsibilities to Norton." Br. 42. | "I believe that Quinn was purporting to 'represent' me to keep me in the dark about this case because my testimony was unhelpful to their client, [Norton]." Dacier Decl. ¶11. |

Quinn further questions the relevance of the Declaration by invoking the "record" to question the Declaration's veracity. Opp. 16-18. But the "record" Quinn cites is *Quinn's own* untested declaration, which the district court found incomplete and inaccurate, Appx92—a factual finding not challenged on appeal. The district court based its finding on Dacier's own statements in e-mails to Quinn and Latham. Appx16061-62; Appx35887-90. Quinn cannot use its own declaration, which the district court found unreliable, to call into question the veracity of Dacier's Declaration, especially when Dacier is a third-party witness who has no apparent interest in anything other than the truth.

Quinn also contends that the Declaration is irrelevant because its appeal does not depend on whether "Dacier had asserted his privilege and would not waive it," and instead "turns on whether [Quinn] *actually* represented Dacier." Opp. 13-15. As explained above, however, Dacier's Declaration confirms that Quinn did not *actually* represent Dacier in 2020 because Dacier made clear that he did not want their counsel. In any event, Dacier's privilege cannot be the excuse for Quinn's contempt when Quinn did not consult Dacier

and Dacier did not authorize Quinn to assert it. Dacier Decl. ¶¶4-5. Dacier, not Quinn, controls any privilege. *See United States* v. *Farrell*, 921 F.3d 116, 136 (4th Cir. 2019) ("[T]he privilege belong[s] to the client, not the lawyer.").[1]

Quinn does not dispute that foundational point. Instead, it offers minor quibbles, saying that the district court's compliance deadline was short and this Court should forgive Quinn's now-admitted assertion of privilege without consultation with or authorization from the "client." Opp. 15-16. That defense rings hollow. Quinn never requested an extension to the compliance deadline or took any other reasonable steps to respond or request accommodations, Appx91 n.16, and the issue here is not that Quinn was a few days late in complying. Nor did Quinn assert the privilege in a pinch and then circle up with its "client" as soon as possible. Indeed, Quinn exchanged e-mails with Dacier on March 27-29—two weeks after the Order—to inform Dacier that Quinn was withdrawing from its forced-upon representation, but said nothing

---

[1]    *See also United States* v. *Hippen*, 1998 WL 823110, at *1 (D. Kan. Oct. 14, 1998) (denying motion to quash where lawyer sought "to invoke the attorney-client privilege in order to protect himself from responding to the Show Cause Order" because "the attorney-client privilege is for the protection of the client, not the attorney"); *Turner* v. *Montgomery*, 836 S.W.2d 848, 850 (Tex. Ct. App. 1992) ("An attorney cannot claim the privilege to protect himself; he may do so 'only on behalf of the client.'").

about asserting his privilege or non-compliance with the Order. Appx35921-22. Instead, Quinn asserted—and has continued to assert—a privilege controlled by Dacier that Quinn had no authorization to assert at any time. In the district court, *three months* passed between the compliance deadline and the parties' briefing on contempt, and Quinn never asked Dacier if it could use his privilege as a defense. Dacier's Declaration now forces Quinn to admit that crucial fact. Opp. 16.

## II.     This Court's Inherent Authority Is Broad And Flexible.

Quinn next argues that this Court's authority to supplement the record does not extend to the Declaration because there are no factually analogous cases. Opp. 8-10, 18-20. That is because these are highly fact-specific issues, which is why courts have applied non-exclusive multi-factor tests. *See* Dkt. 44 (Mot.) 12-13. And the facts here are truly unique: (i) Quinn submitted a declaration purportedly to substantially comply with the Order, Appx35936-43; Appx43947-51, (ii) the district court found that Quinn's declaration was incomplete and inaccurate, Appx91-92, and (iii) Quinn chose not to appeal that factual finding, and instead *repeated* its misrepresentations to this Court, adding the further misrepresentation that Dacier's un-waived privilege prohibited Quinn from complying. There are no factually analogous

cases because no party has ever engaged in such conduct—prompting a third-party witness to blow the whistle on appeal.

Quinn also asserts that courts have "rejected similar requests to introduce a new declaration on appeal," Opp. 8 & n.2, but none of Quinn's cases involved a declaration to correct a party's misrepresentations to a court, which is a core circumstance justifying supplementation, *Dakota Indus., Inc.* v. *Dakota Sportswear, Inc.*, 988 F.2d 61, 63-64 (8th Cir. 1993). And most of Quinn's cases did not address the court's inherent equitable authority in any respect.

Quinn's attempts to distinguish Columbia's cases, Opp. 19-20, likewise fail. First, Quinn suggests that, in *Dakota*, the court did not consider the supplemental evidence on appeal, and instead merely "vacated…and remanded for further factfinding." Opp. 19. That is wrong. The court supplemented the record and considered the supplemental evidence, which was the key evidence that led to the court's decision. 988 F.2d at 64 (without considering new evidence, the court "would have no grounds for reversal").[2]

---

[2]    Quinn observes that the *Dakota* court "declin[ed] to decide whether any misrepresentation had occurred." Opp. 19. That is irrelevant because the potential misrepresentation was the basis for supplementing, not the subject of the evidence.

Second, Quinn distinguishes the facts in *M Welles & Assocs.* v. *Edwell, Inc.*, 69 F.4th 723, 729-30 (10th Cir. 2023), but Columbia did not cite that decision for its facts. *Edwell* supports the general principle that courts may supplement the record to correct misrepresentations to a court. Although *Edwell* said "misrepresentations by the prevailing party," *id.*, the outcome in the case being described (*Dakota*) did not turn on that fact.

Third, in *Apple Inc.* v. *Zipit Wireless, Inc.*, this Court granted a limited request to supplement the record, confirming this Court's authority to supplement where, as here, the evidence concerns whether a party is "misleading the [C]ourt in its opening brief on appeal." 30 F.4th 1368, 1372 n.1 (Fed. Cir. 2022). While the specific relief sought in *Apple* was supplementation to confirm the *accuracy* of assertions in a brief, this Court's authority to supplement the record to confirm the *inaccuracy* of assertions in a brief should follow *a fortiori*.[3]

---

[3]    This Court said in *Apple* that it would "not consider the substance of [the supplemental evidence] beyond th[e] limited purpose identified by Apple." *Id.* Here, Columbia also is not asking the Court to consider Dacier's Declaration beyond the limited purpose of confirming misrepresentations made by Quinn to the district court and on appeal.

Finally, Quinn asserts generally that this Court only can supplement the record with undisputed physical evidence that existed at the time of the judgment below.   Opp. 10.   None of Quinn's cases provides such a legal limitation, and as explained above, the Court's inherent equitable authority must be flexible to address exceptional facts and circumstances like the ones here.   Several courts of appeals have exercised that authority to supplement the record with a sworn statement provided for the first time on appeal.   *See Cabalceta* v. *Standard Fruit Co.*, 883 F.2d 1553, 1555 (11th Cir. 1989) ("supplementation is appropriate" to consider an "affidavit" relevant to "arguments raised by Defendants for the first time on appeal"); *see also Teamsters Local Union No. 117* v. *Washington Dept. of Corrections*, 789 F.3d 979, 986 (9th Cir. 2015); *U.S. ex rel. Minna Ree Winer Children's Class Trust* v. *Regions Bank of Louisiana*, 1997 WL 119971, at *3 (5th Cir. Mar. 13, 1997).

Moreover, even if Quinn were correct about the law, the evidence here—Dacier's memory of pre-judgment events—*existed* at the time of the district court's judgment; it was not *available* to Columbia until recently.   And the e-mail correspondence with Quinn that Dacier quotes in his Declaration is undisputed physical evidence that existed at the time of the judgment—that

evidence is not in the current record only because Quinn refused to comply with the Order.

## III.    The Declaration Was Not Previously Available To Columbia.

Quinn argues that the Declaration was previously available because Dacier briefly communicated with Columbia's counsel post-trial.  Opp. 21. That communication actually shows why the evidence in the Declaration was *not* available to Columbia.  In June 2022, Dacier said that he was not willing to discuss with Columbia his interactions with Quinn because he feared that Norton and Quinn would "come…after" him with a "frivolous lawsuit." Appx47475.  Dacier resided in Saudi Arabia, which has not signed the Hague Convention on the Taking of Evidence Abroad.[4]  Thus, Columbia depended on Dacier's willingness to provide information, and he was unwilling to provide it because of possible retaliation by his supposed "counsel."

Given Dacier's centrality to Quinn's arguments on appeal, Columbia contacted Dacier to see if he would reconsider, and he did.  Columbia then promptly shared the Declaration with Quinn and Norton and filed this motion after receiving advice from ethics counsel—to which Quinn has no response—

---

[4]    *See*    https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/SaudiArabia.html.

that Columbia had a duty to disclose the Declaration to this Court.  Dkt. 44, Ex. B ¶17.

## CONCLUSION

Columbia respectfully requests that this Court grant its motion.

Dated: New York, New York
     June 28, 2024

*/s/ Garrard R. Beeney*

GARRARD R. BEENEY
DUSTIN F. GUZIOR
STEPHEN J. ELLIOTT
ALEXANDER N. GROSS
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000

JEFFREY B. WALL
MORGAN L. RATNER
OLIVER ENGEBRETSON-SCHOOLEY
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW, Suite 700
Washington, D.C. 20006
Telephone:  (202) 956-7500

*Counsel for Appellee The Trustees of Columbia University in the City of New York*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 2,598 words.

This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in 14-point font using a proportionally spaced typeface.

Dated: New York, New York
      June 28, 2024

                /s/ Garrard R. Beeney
                GARRARD R. BEENEY

                *Counsel for Appellee The Trustees of*
                *Columbia University in the City of*
                *New York*

# Addendum

# Table of Contents

| Date | ECF No. | Description | Appx. No. |
|------|---------|-------------|-----------|
| 3/15/2022 | 889 | Memorandum Opinion on Defendant's Motions *in Limine* Nos. 5 and 6 | Appx37 |
| 9/30/2023 | 1331 | Memorandum Opinion on Motion for an Order to Show Cause | Appx58 |
| 6/1/2020 | 542 | Exhibit 7: April 10, 2020, email from Marc Dacier to Nathan Hamstra | Appx15944 |
| 4/8/2022 | 1084 | Exhibit A: April 5-7, 2022, emails between Marc Dacier and David Callahan | Appx35884 |
| 4/8/2022 | 1088 | Exhibit B: March 27-29, 2022, emails between Marc Dacier and Nathan Hamstra | Appx35904 |
| 4/8/2022 | 1089 | Exhibit B: Declaration of David A. Nelson | Appx35923 |
| 6/3/2022 | 1240 | Quinn Emanuel Urquhart & Sullivan, LLP's Opposition to Columbia's Motion for an Order to Show Cause | Appx43937 |
| 07/22/2022 | 1294 | Exhibit Q: June 14-20, 2022, emails between Marc Dacier and Dustin Guzior | Appx47438 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF
NEW YORK,**

        **Plaintiff,**

    **v.**

**NORTONLIFELOCK, INC.,**

        **Defendant.**

                              **Civil Action No. 3:13cv808**
                                    **UNDER SEAL**

### MEMORANDUM OPINION

This matter comes before the Court on two of Defendant NortonLifeLock, Inc.'s ("Norton") Motions *in Limine*: **Norton V** and **Norton VI**, part of ECF No. 768, at 20-25. **Norton V** seeks to exclude any arguments and comments regarding the absence from trial of Dr. Marc Dacier. (ECF No. 768.) **Norton VI** seeks to exclude any out-of-court statements, described below, made by Dr. Dacier to Dr. Keromytis at a time well beyond his 2014 deposition and 2014 departure from Norton's employ.

### Introduction

Norton seeks to exclude statements made by Dr. Marc Dacier in 2017-2019 that he was sorry about how Norton handled Dr. Keromytis' and Dr. Stolfo's (the "professors") decoy technology when applying for a provisional patent in 2010, and, ultimately, the '643 Patent in 2011. (ECF 803, Ex. OO; *see* Patent number 8,549,643.) The '643 Patent—listing Mr. Shou and Dr. Dacier as inventors (but listing the professors nowhere)— issued on April 4, 2011. (ECF 803, Ex. OO.) It was entitled "INTEGRATING DECOYS AND DATA LOSS

said so directly on this record. (ECF No. 801, Ex. QQ.) Nothing shows that Dr. Dacier knew he

could disengage Quinn Emanuel. Indeed, the record is bereft of *any* document (absent bald

assertions by Quinn Emanuel) showing that no conflict existed or that Norton confirmed whether

one existed. That Quinn Emanuel has not offered evidence of a non-conflict shows that it has no

such evidence. It is evident that, at least in 2017 through 2020, Quinn Emanuel developed a

conflict in representing both Norton and Dr. Dacier.

    In addition to constituting a conflict, Norton's assertion in 2020 of representation of Dr.

Dacier is, at best, questionably timed. Only after it learned that Dr. Dacier would testify against

Norton's position on inventorship of the '643 Patent, and only after Dr. Dacier was brought into

this litigation, did Quinn Emanuel resurrect its communication with him. This was after more

than five years of silence. Once Quinn Emanuel entered the conversation, Columbia and the

Court were told by Norton's counsel that Dr. Dacier reversed his previously unequivocal and oft-

expressed willingness to testify, and communication with Columbia or Dr. Keromytis ceased.

And Columbia had to scurry to respond to a virtually meritless motion for sanctions. This timing

does not inure to the benefit of finding Quinn Emanuel acted fully in Dr. Dacier, and not

Norton's, interest.

    More than any conflict or strategically obstructive conduct, however, the Court is most

disturbed by counsel for Norton *misrepresenting* to Dr. Dacier in 2021, "that the Court

concluded he is represented by Norton's Counsel." (ECF 803-31, Ex. QQ.) This is manifestly

untrue. This conclusion could not have been more clearly left *open*. (ECF No. 663, n.3 ("It

remains undetermined whether Dr. Dacier was or was not represented by Norton's attorneys in

October 2019.").) This is direct evidence that Quinn Emanuel has exerted improper control over

Dr. Dacier since at least that time in 2021. Circumstantial evidence since 2020 also bespeaks

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF
NEW YORK,

        Plaintiff,

v.

GEN DIGITAL INC.,
f/k/a SYMANTEC CORPORATION,
f/k/a NORTONLIFELOCK, INC.,

        Defendant.

                                     Civil Action No. 3:13cv808
                                            <u>UNDER SEAL</u>

## MEMORANDUM OPINION

This matter comes before the Court on the Trustees of Columbia University in the City of New York's ("Columbia") Motion for an Order to Show Cause (the "Motion"). (ECF No. 1230.) The Motion requests that the Court order NortonLifelock, Inc. ("Norton")[1] to show cause as to why Norton's initial lead counsel and counsel of record, Quinn Emanuel Urquhart & Sullivan ("Quinn" or "Quinn Emanuel"),[2] should not be held in civil contempt for failure to comply with the Court's March 15, 2022 Order, (ECF No. 890). (ECF No. 1230, at 1.) The Order required Norton's counsel to, "no later than March 16, 2022, . . . disclose on the record in writing any

---

[1] The Court previously issued a Notice explaining that it will refer to the Defendant as "Norton" on a default basis, and why. (ECF No. 1328.)

[2] Quinn Emanuel served as Norton's initial lead counsel until shortly before trial when Latham & Watkins LLP ("Latham"), Norton's second lead counsel, took over that role. On April 8, 2022, just three days before trial, Quinn attorneys moved to withdraw their *pro hac vice* appearances. (ECF No. 1093.) Based on their past egregious conduct, the Court denied that motion the same day. (ECF No. 1094.) Quinn attorneys remain counsel of record in this matter. (*See* ECF No. 1101, at 4; Apr. 8 Tr. 4:11–18 ("I am going to clarify that I'm not going to strike Quinn from the case. . . . I'm not going to strike them from the case. . . . [W]e wouldn't be able to have a trial, and as I said, we are definitely going to have a trial.").)

Quinn Emanuel, however, argues that it complied with the Court's March 15, 2022 Order

through the untimely April 8, 2022 filing,[16] which attached a Declaration from Quinn's lead

counsel for Norton. (ECF No. 1089-2.)  Despite the assertion a few weeks earlier of an

"inability" to comply with the Court's March 15, 2022 Order based on privilege, this filing

partially discloses communications between Norton's counsel and Dr. Dacier.  But as described

above, the Declaration summarizes only a few communications between counsel and Dr. Dacier

from June 2020 to September 2021 and contains no statement that those sparse communications

constitute "all information garnered from Dr. Dacier" by Norton's counsel from 2017 through

2020.

---

[16] Quinn Emanuel describes at length its reasons for filing the Declaration twenty-two
days later than the Court ordered deadline. Specifically, Quinn contends that Norton's initial
refusal to comply with the Court's March 15, 2022 Order should be deemed as "Norton's [good
faith] efforts to protect its client's confidences" and therefore cannot support a finding of civil
contempt. (ECF No. 1240-1, at 14.) Although not relevant to the Court's finding that Quinn
Emanuel has still not complied with the Order, the Court does not find the reasons persuasive to
justify the delay.

Counsel did not request leave to delay compliance to file and receive a ruling on a
Motion for Reconsideration and a Motion for Stay. Additionally, the Motion for Stay was
denied on March 22, 2022 (ECF No. 945) and "absent a stay . . . appeal is the remedy for
decisions believed to be erroneous." *McLean*, 762 F.2d at 1210.

Additionally, Counsel's claim that the communications with Dr. Dacier cannot be
produced due to privilege is unfounded. Rule 1.6 of the Virginia Rules of Professional Conduct
allows attorneys to reveal information protected by the attorney-client privilege "to comply with
law or a *court order.*" R 1.6(b)(1) (emphasis added). Quinn Emanuel quotes the commentary
associated with this rule to imply the Court's March 15, 2022 Order was not a "final order."
(ECF 1240-1, at 11.) However, court-ordered filings are considered final for purposes of the
Rules of Professional Conduct in the Eastern District of Virginia, and, as this case has shown in
spades, can be filed under seal, or (more likely the case here) *in camera. See United States v.
Lawson*, No. 4:99CR55-06, 2015 WL 13743435, at *2 (E.D. Va. June 23, 2015).

For these reasons, the Court concludes that good faith does not excuse Norton's conduct
in refusing to comply with the Court's directive in its March 16, 2022 filing. (ECF No. 892.)

In addition, there are "very good reasons," as Columbia noted, to question the scarcity of communications reported in Counsel for Norton's Declaration as well as the accuracy of the summaries of the few communications provided. (ECF No. 1268, at 4.)   For example, the Declarant does not mention any conversations with Dr. Dacier before Norton filed its Motion for Sanctions against Columbia's counsel, a time when he should have surely been in contact with his purported "client."

These summaries also cannot constitute "any information garnered from Dr. Dacier," especially when they seem to explicitly contradict the email correspondence from Dr. Dacier already in the record.[17] Far from showing substantial compliance, these omissions render this Declaration plainly inadequate to comply with the Court's March 15, 2022 Order.

The record again conclusively establishes that Norton's counsel, Quinn, by its conduct, violated the terms of the March 15, 2022 Order and had actual (or at least constructive) knowledge of such violations.

### D.     Columbia Has Suffered Harm as a Result

Columbia alleges that it has suffered harm as the result of Quinn Emanuel's noncompliance with the Court's March 15, 2022 Order to provide the information garnered from communications with Dr. Dacier because it believes the information being withheld "likely will further support Columbia's motions under §§ 284 and 285." (ECF No. 1231, at 7; ECF No. 1229, at 7 (sealed).)  Columbia points to a number of Dr. Dacier's statements to explain its position, including Dr. Dacier's written statement about a week before the 2022 trial that he was "happy to help the judicial process" as he has "continuously said so far" but that Norton's

---

[17] In addition to the discrepancies discussed herein, Columbia highlights a number of these contradictions, including Dr. Dacier's statements regarding his desire not to be represented, his willingness to attend trial and testify, and his belief that his testimony was harmful to Norton. (ECF No. 1268, at 4–6.)

Hope all is still well. I do not blame you for not having NYC as #1 on your travel list. If Norton (f/k/a Symantec) or their counsel at Quinn Emanuel contact you again, please let us know. It is not legally proper for them to discourage or direct your participation in this case in any respect (frankly, they should know better).

Stay safe and thank you,

Dustin

---

**From:** dacier <dacier@eurecom.fr>
**Date:** Friday, Apr 10, 2020, 1:39 AM
**To:** Nathan Hamstra <nathanhamstra@quinnemanuel.com>, 'Marc Dacier' <marc.c.dacier@gmail.com>
**Cc:** Dave Nelson <davenelson@quinnemanuel.com>, Gross, Alexander N. <grossa@sullcrom.com>, Guzior, Dustin <guziord@sullcrom.com>
**Subject:** [EXTERNAL] Re: Columbia v. Symantec - deposition errata

Dear Nathan and Dave,

I have indeed been contacted by the law firm representing Columbia (Sullivan & Cromwell LLP; D. Guzior and A. Gross are in cc) at the end of last year. I have then sent an email to the, then, CTO of Symantec, Hugh Thompson (to whom Darren Shou was directly reporting at the time), asking for instructions before talking to them. You can find my email included here below. I have sent it on Nov 19, with a reminder on the 28th. I have never received any feedback.

As a follow up, I had indicated that I had no problem to come repeat my testimony, if needed.

A coronavirus pandemic and a travel ban later, things are on hold and I have no idea how things will unfold. As of now, clearly, New York would not be my favorite travel destination but, hopefully, things will soon get better...

Please reach out to M. Guzior and Gross if you need more precise input on the few phone calls we have had so far.

I hope this helps

M. Dacier

====== Message sent to Hugh Thompson on Nov 28, as a reminder for the one sent on Nov 19 =====

Kind reminder.

Dear Hugh,

could you be so kind as to acknowledge that you have received this email? Just to make sure it has not been lost in some spam folder somewhere.

Thanks in advance,

M. Dacier

On 19-Nov-19 6:34 PM, dacier wrote:

Dear Hugh,

my name is Marc Dacier. I'm a former Symantec employee. I used to be senior director within Symantec Research. This was before your arrival within the company. I was managing teams in France, Ireland and in the US (Herndon).

I'm sending you this note regarding the lawsuit that Columbia University has filed against Symantec in 2013, the trial date of which has now been defined as end of May 2020.

This lawsuit is related to a patent filed by Darren Shou who was working for me at that time, patent filed without me knowing it.

I have been asked to depose in 2014 as a fact witness. My testimony has been recorded in Brussels, Belgium. Symantec had sent an attorney to assist me.  For me this was an old story and I had almost forgot about it.

Now, I have been contacted by the lawyers from Columbia University, asking me to come in May to testify as a fact witness at the trial ; to repeat what I have already said in 2014.

They have asked me if I had a counsel representing me.  I think I do not but, to avoid any problem, I prefer to reach out to you to obtain your confirmation that Symantec does not consider that the lawyer, paid by Symantec, that was present at my deposition is still representing me, since I have left the company.  I am not asking for Symantec to represent me. I am just asking if Symantec considers that it does because, if yes, these lawyers are only allowed to speak to your lawyers and not to me directly.

Also, assuming Symantec lawyers are not representing me, I would like you to confirm that I'm not bound by any kind of contract or obligation with Symantec that would prevent me from responding positively to the request to attend the trial.  As I said, I don't want any trouble and want to make sure that I'm not violating any rule or law that I would not be aware of.

I am sorry to ask you these questions but all the people I used to interact with such as the CEO or the past CTO(s), are now gone. Darren Shou is, as I understand it, your direct report and I suppose that you are looking into  this lawsuit and its consequences. This is why I choose to write to you.

Thank you very much for taking the time to respond to me. In the absence of any reply, I will consider that you implicitly replied negatively to my both requests, ie Symantec is not representing me and I'm free to go testify.

All the best

M. Dacier

On 10-Apr-20 12:18 AM, Nathan Hamstra wrote:

| | |
|---|---|
| **From:** | Marc Dacier <marc.c.dacier@gmail.com> |
| **Sent:** | Thursday, April 7, 2022 1:00 AM |
| **To:** | Callahan, David (CH) |
| **Subject:** | Re: Columbia v. NortonLifeLock -- |

David,
Since you have been brought into the case a week and a half ago, you may not have had time to read my testimony. I have nothing against Norton, per se, but the facts, stated in my testimony are, indeed, in my opinion, harmful for Norton's case. I am no fool and I can see now why the Quinn team has done what they have done over the years, while pretending to "represent" me.  Having me repeating the facts once more is not going to change them.

M. Dacier

**From:** <david.callahan@lw.com>
**Date:** Thursday, April 7, 2022 at 1:54 AM
**To:** <marc.c.dacier@gmail.com>
**Subject:** RE: Columbia v. NortonLifeLock --

Marc:

I very much understand your frustration with the timing, and sincerely hope that you didn't take my requests as insensitive to your work and personal obligations.  We were just brought into the case a week and a half ago, and are doing the best we can to make sure that Norton receives a fair trial.  The issue of whether you can attend trial has become a significant issue in the case, with Columbia seeking an instruction from the judge to the jury that because you are not testifying at the trial, the jury can infer that it is because you have something harmful to say about Norton's case.  For obvious reasons, we would like to avoid this, and would you to testify because we have nothing to hide.

Regarding the video testimony, are there any time periods in which you could make yourself available, even for a few hours?  Understood regarding the religious holiday, which of course takes priority, but even if that cannot happen during normal business hours, we might be able to convince the Court to allow your testimony to be recorded and then played back at trial, so even if the video testimony needed to take place at, let's say, midnight Richmond time, it might still be workable (depending on what the judge says).  We've done this before with overseas witnesses, starting testimony, for example, at 3 am Washington time.

Again, we are extremely aware that we are asking a lot on short notice, but would like to do everything we can to be able to present the full and complete facts at trial.  We'd greatly appreciate any help you could give in this regard.  Many thanks.

**David K. Callahan**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7694
Email: david.callahan@lw.com
https://www.lw.com

1

**From:** Marc Dacier <marc.c.dacier@gmail.com>
**Sent:** Wednesday, April 6, 2022 11:14 AM
**To:** Callahan, David (CH) <david.callahan@lw.com>
**Subject:** Re: Columbia v. NortonLifeLock --

Dear David,
Would you be able to free 4 consecutive days (2 days in court and 2 days for the trip, at least) in your agenda next week or the week after? I guess not. It is the same for me. Remote testimony, due to the 7 hours time difference, would have to take place in the late afternoons which are quite busy for me with unmovable meetings already and the evenings, because of the ongoing Ramadan, is devoted to traditional dinners to which my presence is expected, by courtesy when invited.

Had you warned me months ago when you, most probably, had been given the trial dates, I could have frozen some days to make myself available. As it is, you will have to use my Brussels testimony to which, anyway, I do not have anything to add.

All the best,
M. Dacier

**From:** <david.callahan@lw.com>
**Date:** Wednesday, April 6, 2022 at 4:10 PM
**To:** <marc.c.dacier@gmail.com>
**Subject:** RE: Columbia v. NortonLifeLock --

Thanks very much for the quick response, Marc. I very much appreciate it. We understand that this is short notice, but it would be really helpful if you could come. We need to talk to the Court, but you could likely testify early to the middle of the second week of trial (in the April 18-20 timeframe) if that might help, giving you closer to 2 weeks before you would need to be in Richmond. Might that work?

One other possibility might be you testifying remotely, by video. Would you be willing to do that? Please note that the Court would need to agree to this approach, and might say that your testimony would only be accepted live, but we could at least ask if you'd be willing to give remote testimony. Thanks for your consideration.

Dave

**David K. Callahan**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7694
Email: david.callahan@lw.com
https://www.lw.com

**From:** Marc Dacier <marc.c.dacier@gmail.com>
**Sent:** Wednesday, April 6, 2022 12:23 AM

**To:** Callahan, David (CH) <david.callahan@lw.com>
**Subject:** Re: Columbia v. NortonLifeLock --

Dear David,
I am more than willing to help but such an extremely short notice (6 days?) makes it impossible for me to come.

Marc

---

**From:** <david.callahan@lw.com>
**Date:** Wednesday, April 6, 2022 at 1:20 AM
**To:** <marc.c.dacier@gmail.com>
**Subject:** RE: Columbia v. NortonLifeLock --

Thanks Marc.  Let's plan to talk at 9 am Sunday, I will send a calendar invite.  This invitation will have numbers for whatever country you might be in; if you don't see the right one, let me know and we can sort it.

But in terms of why we're reaching out, Norton would very much like you to come testify at the upcoming trial in Richmond, which will be from April 12-22.  The plaintiff, Columbia, has made a significant issue out of the fact that you're presently not slated to testify live in Court.  As counsel for Norton, we would welcome your testimony at the trial to tell the truthful facts as you see them, and would make it as convenient as reasonably possible for you, including covering your reasonable out of pocket expenses to attend.  You should only need to be in Richmond 1-2 days, and we can provide you a quiet place to work or relax while you're not in Court.

While we are fine waiting until Sunday to chat, we have a hearing with the Court on Thursday (day after tomorrow, our time), and it would be great if we could tell the Court that you're willing and able to attend trial.  If you could let us know your willingness to attend by tomorrow, it would be much appreciated.

**David K. Callahan**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7694
Email: david.callahan@lw.com
https://www.lw.com

---

**From:** Marc Dacier <marc.c.dacier@gmail.com>
**Sent:** Tuesday, April 5, 2022 2:46 AM
**To:** Callahan, David (CH) <david.callahan@lw.com>
**Cc:** Marc Dacier <marc.c.dacier@gmail.com>
**Subject:** Re: Columbia v. NortonLifeLock --

Dear David,
I'm fully booked for the rest of the week but could offer you to chat on Sunday, April 10 at 9.00am in Chicago or Tuesday April 12 at 9.00am in Chicago.    Let me know if either of these two time slots work for you. If not, please exchange by email what it is that you expect from me.

I must admit to be a bit surprised by this sudden rush after years of inaction and the several calls with the Quinn team in which they repeatedly told me that there was no need for me to do anything, that they did not want me to do anything, that my testimony in Brussels was all that was needed. I'm happy to help the judicial process though, as I have continuously said so far.

I hope this helps,

M. Dacier

---

**From:** <david.callahan@lw.com>
**Date:** Tuesday, April 5, 2022 at 6:32 AM
**To:** <marc.c.dacier@gmail.com>
**Subject:** Columbia v. NortonLifeLock --

Hi Marc:

I'm a lawyer at Latham & Watkins, we're working with the Quinn team on this case, representing Norton.  I'm following up on earlier communications from the Quinn team.  I know you've been at conference and travelling, but I'm hopeful I can get 15 minutes of your time over the next day or two to chat about this case.  We're about to conduct the trial in this case and for reasons I'd love to explain, there's been some confusion about your availability or willingness to testify.  We'd very much like to see you testify at trial and expect we will have some flexibility in terms of timing.  This is an important case for Norton, and we'd very much appreciate your cooperation.  Please let me know if you might have a moment to talk.  Anytime, at your convenience.  Regards.


**David K. Callahan**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.7694
Email: david.callahan@lw.com
https://www.lw.com

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

| From: | Marc Dacier <marc.c.dacier@gmail.com> |
|---|---|
| Sent: | Tuesday, March 29, 2022 12:30 AM |
| To: | Nathan Hamstra |
| Cc: | Dave Nelson |
| Subject: | Re: Columbia/Norton |

**[EXTERNAL EMAIL from marc.c.dacier@gmail.com]**

I'm sorry Nathan but I have a packed agenda today with visitors which I have to attend to. Tomorrow I am traveling for meetings to Abu Dhabi. This thing between Columbia and Symantec has been ongoing for years and I fail to see what could be so urgent for me to change my scheduled meetings at the very last minute. If there is indeed some important and urgent information that you must communicate to me and for which you need my speedy feedback, please send them to me by email and I'll read them in the course of the day or in the plane while flying.

I hope this helps
Marc

**From:** Nathan Hamstra <nathanhamstra@quinnemanuel.com>
**Date:** Tuesday, 29 March 2022 at 7:16 AM
**To:** Marc Dacier <marc.c.dacier@gmail.com>
**Cc:** Dave Nelson <davenelson@quinnemanuel.com>
**Subject:** RE: Columbia/Norton

Marc, unfortunately we would really like a chance to talk before then. Any chance you can spare five minutes Tuesday or Wednesday afternoon/evening your time?

**From:** Marc Dacier <marc.c.dacier@gmail.com>
**Sent:** Monday, March 28, 2022 5:17 AM
**To:** Nathan Hamstra <nathanhamstra@quinnemanuel.com>
**Cc:** Dave Nelson <davenelson@quinnemanuel.com>
**Subject:** Re: Columbia/Norton

**[EXTERNAL EMAIL from marc.c.dacier@gmail.com]**

Dear Nathan,
This week is absolutely horrible for me with meetings packed whole day long every day and a 3 days trip to Abu Dhabi. Next week is much better, yet sub optimal. I could offer you April 7 or 8, in my late afternoon/evening (ie day time for you). If that does not work for you, let us shoot for the week after that which is much more open for the time being.

M. Dacier

**From:** Nathan Hamstra <nathanhamstra@quinnemanuel.com>
**Date:** Monday, March 28, 2022 at 3:23 AM
**To:** 'Marc Dacier' <marc.c.dacier@gmail.com>
**Cc:** Dave Nelson <davenelson@quinnemanuel.com>
**Subject:** RE: Columbia/Norton

Dr. Dacier, do you have a free time Monday (today) or Tuesday afternoon your time so I can further explain?  Let me know what works and I will send a zoom link.

---

**From:** Nathan Hamstra
**Sent:** Sunday, March 27, 2022 7:02 PM
**To:** 'Marc Dacier' <marc.c.dacier@gmail.com>
**Cc:** Dave Nelson <davenelson@quinnemanuel.com>
**Subject:** Columbia/Norton

Dr. Dacier,

The June 16, 2014 engagement letter by which you engaged Quinn Emanuel to represent you in connection with the Columbia/Norton litigation noted that "[i]n the future, should we become aware of some reason why it would no longer be appropriate for our firm to represent you in these matters, we will so inform you and withdraw from representing you."   A copy of that letter is attached for your convenience.

The Court issued the attached opinion finding that Quinn Emanuel's representation of both you and Norton created a conflict.  Accordingly, we must withdraw from representing you, effective immediately.

If you would like assistance in finding replacement counsel to retain for this matter, I am happy to discuss.

Regards,

**Nathan Hamstra**
**Quinn Emanuel Urquhart & Sullivan, LLP**
312.705.7417
191 North Wacker Drive, Suite 2700 | Chicago, IL 60606

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW
YORK,

        *Plaintiff*

   v.

NORTONLIFELOCK INC.,

        *Defendant*

Civil Action No. 3:13-cv-00808-MHL

## <u>DECLARATION OF DAVID A. NELSON</u>

1

I, David A. Nelson, declare as follows:

1.      I am an attorney with the law firm of Quinn Emanuel Urquhart & Sullivan, LLP.  I am licensed to practice law in the State of Illinois and admitted *pro hac vice* to the United States District Court for the Eastern District of Virginia in the above-captioned case.  Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration, and if called as a witness I could and would testify competently to the same.

2.      I have been practicing law for 30 years.  My ethical record is unblemished.  I have tried dozens of cases before Courts all over this country and I am quite certain that a poll of those Courts would indicate that I have always handled myself and my cases with the highest level of honor and respect for the judicial system and the process.

3.      I have represented Norton LifeLock Inc. (and previously Symantec Corp.) (collectively, "Norton") in the above-captioned litigation since Columbia filed suit in December 2013.

4.      During fact discovery, Columbia requested an opportunity to take the deposition of Dr. Marc Dacier, who was then residing in France.  That meant that Dr. Dacier could only be deposed voluntarily.  We consulted with Dr. Dacier and arranged for him to appear for the deposition requested by Columbia to provide full and truthful testimony.  At no point did we, or would I ever, ask Dr. Dacier to provide anything other than full and truthful testimony, much less to conceal any facts.  I am a lawyer.  I don't make the facts and never attempt to do so.  I advocate for my clients based upon the facts as they are.  Any suggestions by Columbia or Latham & Watkins that I or my firm would do otherwise are categorically false.

5.      On June 18, 2014, Quinn Emanuel entered into an Engagement Agreement with Dr. Dacier.  Dkt. 562-4.  As stated in the Engagement Agreement, among other things, Quinn

2

Emanuel agreed to represent Dr. Dacier "in connection with . . . any deposition in connection with this litigation." *Id.* Quinn Emanuel also agreed more broadly to represent Dr. Dacier "in connection with litigation between Symantec and the Trustees of Columbia University . . . pending in the Eastern District of Virginia" (*see* Dkt. 562-4).

6.      On August 19, 2014, Dr. Dacier voluntarily provided deposition testimony in Brussels. I represented Dr. Dacier at his deposition. *See* Dkt. 478-3, Dacier Dep. Tr. at 8:19-20 ("Dave Nelson from Quinn Emanuel on behalf of Symantec and the witness.").

7.      As is common practice, I did not terminate my firm's representation of Dr. Dacier after his deposition, nor did Dr. Dacier ever communicate to anyone at my firm that he desired the representation to be terminated  Although his deposition was completed in 2014, the above-captioned litigation (including discovery) has continued into 2022, mainly as a result of an appeal of earlier proceedings where summary judgment was granted on all asserted patents against Columbia and an IPR where the majority of claims were invalidated  Quinn Emanuel's representation of Dr. Dacier thus continued throughout this litigation until recently, when we terminated it upon the Court's finding that a conflict existed

8.      In October 2019, Columbia's counsel, Dustin Guzior, contacted Dr. Dacier to discuss this litigation without my (or anyone at Quinn Emanuel's) knowledge or consent. *See* Dkt. 478 at 1-2.

9.      After learning of Mr. Guzior's improper *ex parte* communications with Dr. Dacier, Norton filed a Motion for Sanctions seeking relief for ethical violations, including Virginia Rule of Professional Conduct 4.2. Dkt. 478 (Motion for Sanctions dated May 6, 2020).

10.     Virginia Rule of Professional Conduct 4.2 codifies the longstanding rule that an attorney may not contact a person directly who is represented by counsel. Under this "no contact

rule"—which exists in all U.S. jurisdictions—an attorney is forbidden from contacting an individual represented by his opponent to discuss the litigation.  One reason for this rule is the "need to protect uncounseled persons against being taken advantage of by opposing counsel." Virginia Rule of Professional Conduct 4.2 cmt. 8.

11.    In spite of this no contact rule, Columbia's counsel repeatedly spoke with Dr. Dacier about the above-captioned litigation, even though Columbia had been informed during Dr. Dacier's deposition and otherwise in discovery that Quinn Emanuel represented him.  This was particularly disappointing because if Columbia desired a further deposition of Dr. Dacier, we would have arranged for such a deposition, assuming that Dr. Dacier consented.  No such request was, or ever has been, made.

12.    On June 1, 2020, Columbia filed a brief and supporting declarations in opposition to the Motion for Sanctions.  Dkt. 547.  In a declaration attached to the Motion, Mr. Guzior presented his version of a conversation he had with Dr. Dacier ("Guzior Declaration").  Dkt. 547-1.

13.    After reviewing the Guzior Declaration, my Quinn Emanuel partner, Nathan Hamstra, and I contacted Dr. Dacier to discuss the topics described in the Guzior declaration, including Mr. Guzior's claim that Dr. Dacier was not represented by counsel.

14.    In our conversation with Dr. Dacier on June 17, 2020, he informed us that Columbia's counsel had claimed to him that the recording of his 2014 deposition could not be used at trial, so he had to attend the trial in person.  According to Dr. Dacier, Columbia's counsel had also informed him that he was no longer represented by Quinn Emanuel.

15.    Consistent with the basic tenets of the Federal Rules of Civil Procedure, we stated to Dr. Dacier the fact that the deposition testimony he voluntarily provided in 2014 in Brussels

could be used at trial.  We also informed Dr. Dacier that the decision of whether to attend was completely his own – neither Norton, Quinn Emanuel, Sullivan Cromwell, nor Columbia could compel him to attend trial.

16.     During this conversation, Dr. Dacier stated that he never intended to terminate Quinn Emanuel's representation, confirmed that he wanted to continue to be represented by Quinn Emanuel in the above-captioned action, and stated that he was willing to sign a declaration attesting to that fact.  He then voluntarily signed a declaration to that effect.  Dkt. 562-1 (Dacier Decl.).

17.     Also during that conversation, Dr. Dacier stated that he did not have anything to add to his 2014 deposition testimony, and if called to testify at trial, would merely repeat what he had previously testified during his deposition.  I understand that he has consistently stated that to others who have inquired.  Dr. Dacier stated that he did not want to travel to the United States for trial, and would prefer to end his involvement in the litigation if his deposition testimony could be used.

18.     Dr. Dacier also stated that he never expressed an opinion that any person at Columbia should be named as an inventor on U.S. Patent No. 8,549,643—rather, he had only expressed regret that the parties' dispute was ongoing.  As Dr. Dacier stated at his deposition, he had not read the patent and had no opinion on who the inventors should be.  Dkt. 566-1, Dacier Dep. Tr. at 203:1-11 ("I cannot comment on this patent, I haven't read it"); *id.* 196:2-6.

19.     On September 29, 2021, the Court issued a Memorandum Order on the Motion for Sanctions.  Dkt. 663.  In a footnote to this Order, the Court stated "[i]t remains undetermined whether Dr. Dacier was or was not represented by Norton's attorneys *in October 2019*."  Dkt. 663 at 5 n.3 (emphasis added).

5

20.    In September 2021, I believed in good faith that Quinn Emanuel continued to represent Dr. Dacier. Dr. Dacier had told me and Mr. Hamstra after the events of October, 2019 through April, 2020 that he wished to continue to be represented by Quinn Emanuel. At this point in time, nothing from either the Court or Dr. Dacier indicated to me that Dr. Dacier was no longer a client of Quinn Emanuel.

21.    After reviewing the Court's Memorandum Order, Mr. Hamstra and I contacted Dr. Dacier to inform him of the Court's ruling. We again informed Dr. Dacier that the decision of whether to attend the trial was his alone. If he wished to attend, he was welcome to do so. If he did not so desire, no one could compel him to do so.

22.    Dr. Dacier reiterated his previous statements that he would prefer not to be involved in the litigation, and further confirmed that he did not have anything to say beyond what had already been discussed at his 2014 deposition.

23.    Given Dr. Dacier's expressed preference not to attend trial, there was no need to inform Dr. Dacier of further schedule developments in the case prior to the Court's rulings regarding the purported conflict, as none were relevant. After the Court's order denying Norton's motion for reconsideration of its order regarding Norton's Motion *in Limine* Nos. 5 and 6 on March 22, my co-counsel informed the Court that Quinn Emanuel would be withdrawing from its representation of Dr. Dacier on March 25, and completed that on March 27, 2022. Although Mr. Hamstra reached out to Dr. Dacier afterwards to attempt to speak to him and explain the withdrawal, we were unable to find a time that worked, because Dr. Dacier indicated that he was very busy with work, was traveling for a period of time and simply did not have time. At that time, Latham & Watkins replaced us as counsel for Norton and we have had no further contact with Dr. Dacier.

6

24.    At no point did Dr. Dacier ever inform me that he felt his deposition testimony was in conflict with Norton's interests and my attendance at the deposition and review of the transcript do not leave me with the belief that there is any such conflict.  I understand that counsel for Columbia has alleged there is such a conflict, but I am not aware of anything Columbia's counsel has pointed to in that transcript that creates such a conflict.  Instead, my understanding is that Columbia's position is based on a notion that Dr. Dacier "has more to say" beyond the deposition. My conversations with Dr. Dacier indicated exactly the opposite, repeatedly saying that he had nothing to add beyond what he said in his deposition.  When I was counsel for Norton, I would have been more than happy for Dr. Dacier to take the stand at trial and repeat the substance of his deposition testimony.  My understanding is that Norton had the same belief.  But, given the Federal Rules of Civil Procedure and the ability to use the deposition at trial with exactly the same force and effect as live testimony, it did seem an incredible imposition on Dr. Dacier to ask him to come and repeat that testimony.  Regardless, Dr. Dacier was always told that it was his choice whether to come to trial.

25.    I also saw only this morning the e-mail Mr. Lumish sent to counsel for Columbia attaching recent communications between Latham & Watkins and Dr. Dacier.  I saw where Dr. Dacier stated that Norton's counsel was "pretending" to represent him.  I can assure the Court that at no point were we pretending anything.  I am sorry that Dr. Dacier now apparently feels that way and because I was not a party to any of Latham's communications with Dr. Dacier, I cannot speculate as to what prompted that response.  I can say that Dr. Dacier never expressed such a concern to me or anyone else at Quinn Emanuel.  If he had, I would have inquired as to why he had that concern and either tried to remedy that if I felt possible, or withdraw from the representation with notice to Dr. Dacier.  As stated above, if Columbia's counsel had ever asked

7

**Appx35942**

for a further deposition of Dr. Dacier, we would have facilitated that request, assuming Dr. Dacier would have agreed to such a request. Such a request was never made.

26.     Quinn Emanuel acted in good faith throughout its representation of Dr. Dacier and never attempted to hide him from Columbia or anyone else. Indeed, it was Quinn Emanuel and Symantec (now Norton) who arranged for his voluntary deposition in the first place. Without such arrangement, Dr. Dacier could not have been deposed. This conduct is completely inconsistent with the current allegations that we somehow hid this witness. We did not, and never would do such a thing.

27.     I am presently in Chicago and cannot make it to Richmond in time for the 3 p.m. ET hearing today on less than five hours' notice. I also have a post-wedding celebration trip planned beginning Saturday now that I have been replaced by Latham & Watkins as Norton's counsel in this case. I would be happy to answer any of this Court's questions regarding this matter within the constraints of those obligations. I have nothing to hide and neither does anyone at Quinn Emanuel.

I declare under penalty of perjury that the foregoing is true and correct.

Executed April 8, 2022 at Chicago, Illinois.


By: _____

        David A. Nelson

8

**Appx35943**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, | |
| *Plaintiff* | |
| v. | Civil Action No. 3:13-cv-00808-MHL |
| NORTONLIFELOCK INC., | |
| *Defendant* | |

**QUINN EMANUEL URQUHART & SULLIVAN, LLP'S OPPOSITION TO COLUMBIA'S MOTION FOR AN ORDER TO SHOW CAUSE [DKT. 1230]**

Attached hereto is the Opposition of Quinn Emanuel Urquhart & Sullivan, LLP to the

Motion for an Order to Show Cause [Dkt. 1230] filed by Plaintiff The Trustees of Columbia

University in the City of New York.

June 3, 2022                          NORTONLIFELOCK INC.


By: _____/s/_____
            Of Counsel

Dabney J. Carr, IV, VSB #28679
Robert A. Angle, VSB #37691
Laura Anne Kuykendall, VSB #82318
TROUTMAN PEPPER
HAMILTON SANDERS LLP
P. O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
dabney.carr@troutman.com
robert.angle@troutman.com
la.kuykendall@troutman.com

ATTORNEYS FOR DEFENDANT
NORTONLIFELOCK INC.

The parties subsequently submitted several rounds of briefing and argument about remedies for the purported conflict of interest, including Dr. Dacier's decision not to provide live testimony at trial. *See* Dkt. 1083, 1096-97, 1102-03, 1123-24, 1126-27, 1143-44, and 1147-48. Quinn Emanuel was not involved in that briefing. The Court then issued a missing witness instruction which states in part that jurors "may, but are not required to, infer that [Dr. Dacier's] testimony" about identifying inventors on the application for the '643 Patent "would have been unfavorable to Norton." Dkt. 1167 at 14-15.

The jury watched a video of Dr. Dacier's deposition at trial, (Ex. B, Trial Tr. at 765:8-766:5) and heard testimony from several live witnesses about the inventorship of the '643 patent, including Norton employee Darren Shou (Ex. B, Trial Tr. at 2282:15-23) and Columbia Professors Keromytis and Stolfo (*Id.* at 817:23-825:12 and 614:9-618:23). The jury's verdict was partially in Columbia's favor on the correction of inventorship, finding that Columbia Professors Keromytis and Stolfo were joint inventors of the '643 patent. Dkt. 1206 at 5-6. But the jury found against Columbia on Columbia's fraudulent concealment claim, and also found against Columbia on Columbia's request for Professors Keromytis and Stolfo to be named the sole inventors of the '643 patent. *Id.* at 6.

## II. ARGUMENT

### A. Quinn Emanuel Has Complied With the Court's March 15 Order

The Court should deny Columbia's Motion for an Order to Show Cause because Quinn Emanuel has fully complied with the March 15 Order. In particular, Quinn Emanuel fully responded to the Court's Order Regarding Dr. Dacier (Dkt. 1083) and provided Mr. Nelson's declaration, which summarized Quinn Emanuel's communications with Dr. Dacier, including during the period from 2020 to the present during which the Court determined that a conflict of interest existed. Dkt. 1089-2. That alone provided the information sought by the Court in the March 15 Order,

specifically that Norton "disclose on the record in writing any information garnered from Dr. Dacier

during the period their representation of Dr. Dacier was a conflict."

Any minor delay in producing this information was justified by Quinn Emanuel's obligation

to protect the attorney-client privilege.  Counsel has "a basic duty . . . to protect the [client's]

attorney-client privilege." *Courtade v. United States*, 243 F. Supp. 3d 699, 703 (E.D. Va. 2017).

Under the professional and ethical obligations that apply in this Court, it is prohibited to "disclos[e]

information protected by the attorney-client privilege except in limited circumstances." *Id. citing*

Va. R. of Prof. Conduct 1.6(a).  Disclosure of information protected by the attorney-client privilege

is permitted to comply with "the *final* orders of a court or other tribunal of competent jurisdiction

requiring the lawyer to give information about the client." *United States v. Lawson*, No. 4:99-CR-

55-06, 2015 WL 13743435, at *2 (E.D. Va. June 23, 2015) *citing* Va. R. of Prof. Conduct 1.6, Cmt.

11 (emphasis added).  The ethical rules specifically permit counsel to take steps to "test the validity"

of a ruling before disclosing information protected by the attorney-client privilege.  *United States v.*

*Lawson*, No. 4:99-CR-55-06, 2015 WL 13743435, at *2 (E.D. Va. June 23, 2015) *citing* Va. R. of

Prof. Conduct 3.4(d).[1]

Quinn Emanuel acted properly here by initially asserting the attorney-client privilege in its

March 16, 2022 response to the Court's March 15, 2022 order, and then filing a Motion to

Reconsider on March 22, 2022.  Further, any confidentiality of these communications with Dr.

Dacier was waived when Dr. Dacier disclosed his version of this information to Latham & Watkins

in a series of emails, which were shared with opposing counsel and eventually posted on the public

docket.  *See* Dkt. 1084, 1084-1, 1084-2, 1088-2, and 1088-3.  After taking appropriate steps to test

---

[1]  Virginia Rule of Professional Conduct 3.4, Comment 3a states that Rule 3.4(d) "allows a lawyer
to take measures necessary to test the validity of a rule or ruling, including open disobedience."

the validity of the Court's ruling and protect client confidences, Quinn Emanuel subsequently provided a detailed summary of its communications with Dr. Dacier on April 8, 2022.

Columbia asserts that Norton should have taken different measures to protect the attorney-client privilege. For example, Columbia asserted that Norton could have "moved for reconsideration adding whatever 'facts' they deemed appropriate to assert[.]" Mot. at 4. Norton did, in fact, move for reconsideration of the Court's March 15, 2022 Order on March 22, 2022. Dkt. 932. Columbia also suggests that Norton could have "sought a stay from the Court pending appellate review[.]" Mot. at 4. Norton did, in fact, request a stay of litigation as well as a full evidentiary hearing on the alleged ethical issues raised by counsel's representation of both Dr. Dacier and Norton. *See* Dkt. 932 at 19-20 ("the court should immediately stay the case until the issues are resolved . . . Counsel cannot proceed with the litigation without first resolving the conflict found by the Court in its MIL Opinion."). Columbia also suggests that Norton could have produced communications between Quinn Emanuel and Dr. Dacier that "did not involve legal advice and provide a privilege log for the rest[.]" Mot. at 4. This overlooks the fact that the parties agreed not to produce privilege logs for communications dated after this lawsuit was filed. Dkt. 66 at 18 ("The parties are not required to include on their privilege logs any protected documents that came into existence after the filing date of the complaint.").

Norton took appropriate steps to protect the attorney-client privilege, including filing a motion for reconsideration, a motion to stay, and a request for an evidentiary hearing. None of the specific measures suggested by Columbia are required by law, and counsel cannot be held in contempt for "testing the validity" of the Court's privilege ruling in good faith as specifically contemplated by Virginia Rule of Professional Conduct 1.6 and 3.4(d). In any case, Quinn Emanuel

fully complied with the Court's March 15 Order through its April 8 response and Mr. Nelson's declaration.

### B.    The Standard for Civil Contempt Has Not Been Met

The Court should also deny Columbia's Motion for an Order to Show Cause because Columbia has not—and cannot—justify its request to hold Quinn Emanuel in civil contempt. "Holding a party in civil contempt is intended to coerce that party into complying with a court order or to compensate the moving party for sustained losses." *Certain Underwriters at Lloyd's, London v. AdvanFort Co.*, 2020 WL 878298, at *2 (E.D. Va. Feb. 3, 2020), *report and recommendation adopted,* No. 1:18-CV-1421, 2020 WL 877981 (E.D. Va. Feb. 21, 2020). In this Circuit, "the moving party must establish the following elements by clear and convincing evidence: (1) the existence of valid court order of which the alleged contemnor had actual or constructive knowledge; (2) the order was in the movant's favor; (3) the nonmovant knowingly failed to comply with the order; and (4) the movant suffered harm as a result." *Id citing Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 617 (4th Cir. 2018) (internal punctuation omitted).

Columbia has not established that Norton "knowingly failed to comply" with a valid court order. As discussed above, Quinn Emanuel has complied with the Court's March 15, 2022 Order. Quinn Emanuel produced a detailed summary of its communications with Dr. Dacier soon after its Motion to Reconsider was denied.

Columbia asserts in its Motion that Norton's initial response to the Court's March 15, 2022 Order was insufficient. But, as already described herein, Norton took appropriate steps to initially protect its client's attorney-client privilege, test the validity of the Court's conflict of interest finding, and ultimately comply with the requested Order. "A good faith attempt to comply, even if such attempt proves ineffective, is a defense to a civil contempt order." *Chesapeake Bank v. Berger*, No.

4:14CV66, 2014 WL 5500872, at *3 (E.D. Va. Oct. 30, 2014).  "Other defenses include substantial compliance[.]"  *Id.*  Norton's efforts to protect its client's confidences were undertaken in good faith, and cannot support a finding of civil contempt.

Columbia also has not established that it "suffered harm as a result" of any alleged non-compliance with the March 15, 2022 Order. Columbia was aware of Quinn Emanuel's communications with Dr. Dacier as a result of Mr. Nelson's declaration submitted on April 8, 2022 (*see* Dkt. 1089-2).  Columbia also had extensive communications with Dr. Dacier in 2019 and 2020. Columbia asserts in its Motion that "additional measures" beyond the monetary sanctions it plans to seek under 35 U.S.C. § 284 and 285 are required "for Norton's involvement in Dr. Dacier's failure to appear at trial[.]" Mot. at 4.  But the Court has already considered extensive briefing and argument on this topic, and determined that a missing witness instruction was an appropriate remedy.

Even if the Court credits Columbia's suggestion that Quinn Emanuel did not comply with the March 15, 2022 Order, no further sanctions would be warranted because Quinn Emanuel subsequently provided the requested information on April 8.  Sanctions for civil contempt "may be imposed either to enforce a court order or to compensate the other party for any losses sustained as a result of the contempt." *Tattoo Art, Inc. v. Tat Int'l, LLC*, No. 2:10CV323, 2012 WL 3912572, at *2 (E.D. Va. Sept. 7, 2012).   Sanctions intended to either "vindicate the authority of the court" or 'punish[ ] . . . and deter[ ] future litigants' misconduct" are not available as a remedy for civil contempt sanctions. *JTH Tax, Inc. v. Noor*, No. 2:11CV22, 2012 WL 4473252, at *2 (E.D. Va. Sept. 26, 2012).  "A contempt fine is considered civil when the fine is remedial (i.e., either paid to the complainant or, when payable the court, avoidable by the contemnor by simply performing the affirmative act required by the court's order)." *Chesapeake Bank v. Berger*, No. 4:14CV66, 2014 WL 5500872, at *4 (E.D. Va. Oct. 30, 2014).  "In other words, a fine that is payable to the court but

Dustin

---

**From:** Marc Dacier <marc.c.dacier@gmail.com>
**Sent:** Monday, June 20, 2022 5:46 AM
**To:** Guzior, Dustin <guziord@sullcrom.com>; Angelos D. Keromytis <angelos@keromytis.com>
**Subject:** Re: [EXTERNAL] intro

Dear Dustin,
Apologies for the delayed reply. I have been tested positive for COVID last Friday and have felt pretty bad since mid of last week.  It is getting better today but with a remaining heavy soar throat. I'm really glad that I did get my 3 shots of vaccine. I wonder in which state I would be without them ….

Long story short, I have unearthed the initial document that I had been asked to sign in 2018 with Quinn which is, basically a NDA, that explicitly mentions things like "You agree to hold in strict confidence your communications with us. »

I understand that one could probably argue that this NDA is now void since the judge's decision but we have seen first hand that lack of any strong argument isn't a reason for them to keep pushing their losing legal strategies. I do not want to give them any reason to come back after me and drag me into yet another endless legal fight for an invented NDA breach, as I'm sure you perfectly understand.  I do not have Symantec or Columbia deep pockets to fight a very expensive frivolous lawsuit against me …. I'm not saying that they would but I do not want to take the risk that they could.

For this reason, I would prefer not to discuss with you any exchange I have had with them. The judge gave you access to my emails. They are the gist of it, anyway, and I hope this will help you in making sure that justice prevails.

M. Dacier

---

**From:** "Guzior, Dustin" <guziord@sullcrom.com>
**Date:** Tuesday, 14 June 2022 at 2:24 PM
**To:** Marc Dacier <marc.c.dacier@gmail.com>, "Angelos D. Keromytis" <angelos@keromytis.com>
**Subject:** RE: [EXTERNAL] intro

Thank you, Marc. If you are able to speak sometime next week that would still be helpful.

Let me know when might be possible.

Thanks,

Dustin

---

**From:** Marc Dacier <marc.c.dacier@gmail.com>
**Date:** Tuesday, Jun 14, 2022, 2:33 AM
**To:** Guzior, Dustin <guziord@sullcrom.com>, Angelos D. Keromytis <angelos@keromytis.com>
**Subject:** Re: [EXTERNAL] intro

Dear Dustin,